D. EDWARD HAYS, #162507
ehays@marshackhays.com
CHAD V. HAES, #267221
chaes@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee
ROBERT S. WHITMORE

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>MCKENNA GENERAL ENGINEERING, INC.,<br><br>Debtor. | Case No. 6:18-bk-18036-SY<br><br>Chapter 7<br><br>MOTION TO APPROVE COMPROMISE WITH BERNARDS BROS. UNDER FRBP 9019; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT S. WHITMORE IN SUPPORT<br><br>[NO HEARING REQUIRED UNDER LBR 9013-1(o)] |

TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Robert S. Whitmore, Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of McKenna General Engineering, Inc. ("Debtor"), has reached a settlement agreement ("Agreement") with Bernards Bros., Inc., a California corporation ("Bernards") for the release of final payment to the Estate in exchange for releases to Bernards. The Trustee now seeks approval of the Agreement.

/ / /

/ / /

/ / /

MOTION TO APPROVE COMPROMISE WITH BERNARDS
4849-4764-4328, v. 1

## 1.     Summary of Argument

A bankruptcy court can approve reasonable settlements and compromises of claims. Under the Agreement, the Estate will receive final payment of $95,000 at minimal administrative cost for work that was completed prepetition by the Debtor. The Trustee believes that the final payment amount is a fair and reasonable settlement of the mutual claims between the Estate and Bernards. Thus, the Trustee respectfully requests that the Court approve the Agreement, a true and correct copy of which is attached to the Declaration of Robert S. Whitmore ("Whitmore Declaration") as Exhibit "1."

## 2.     Statement of Facts

On September 21, 2018, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 6:18-bk-18036-SY. On the same day, Robert S. Whitmore (previously defined as "Trustee") was appointed as the Chapter 7 Trustee.

In its Schedule A/B, Debtor lists a series of outstanding accounts receivable in the total valued amount of $2,081,409.46.

In particular, Debtor listed an outstanding account receivable owed to Debtor by Bernards in the total amount of $97,161.63. According to the Debtor's books and records, the Account was due for earthwork, demolition, clearing, and grubbing work on the Palm Springs Unified School District, District Administration Center, subcontract dated November 10, 2016 ("Project"). A true and correct copy of the subcontract for the Project is attached to the Whitmore Declaration as Exhibit "2."

The Debtor completed all work on the Project prior to the Petition Date and was indisputably owed $101,263.09 by Bernards ("Account"). However, the Trustee was unable to provide Bernards with certain documentation, such as certified payrolls signed under penalty of perjury, that all workers were paid a prevailing wage for work on the Project.

Under the Agreement, Bernards agrees to pay $95,000 to the Estate ("Payment") in full satisfaction of the Account in exchange for releases from the Estate upon receipt of the Payment.

MOTION TO APPROVE COMPROMISE WITH BERNARDS

Bernards also provides certain releases to the Estate on account of the Project. Interested parties may refer to the full text of the Agreement for the details related to the Payment.

## 3.    Legal Argument

### A.    Approval of the Agreement is in the best interest of the Estate.

Under Rule 9019, the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. Proc. 9019. It is well-established that a compromise should be approved if it is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); *ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (B.A.P. 9th Cir. 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate.") The standards to be applied to the approval of a settlement include:

1)    the probability of success of the litigation on its merits;

2)    the difficulties in collection on a judgment;

3)    the complexity of the litigation involved; and

4)    the expense, inconvenience or delay occasioned by the litigation, and the interest of creditors.

*In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den., *Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189 (1989).

The Agreement provides for the release of $95,000 to the Estate at minimal administrative expense, and without any need for litigation, a difference of only $6,263.09 from the amount owed to the Debtor according to Bernards' records. As explained below, the Agreement is reasonable and should be approved.

### i.    Probability of success

The Trustee is not aware of any additional claims that the Estate would have against Bernards other than for nonpayment of the amounts held in retention, which may be approximately $22,436.99. While the Trustee may be able to assert some claim for unreasonable withholding of retention money under Cal. Civ. Code § 7107, Debtor's bankruptcy filing and the failure of the Debtor to provide Bernards with final paperwork, including certified payrolls, may justify Bernards'

MOTION TO APPROVE COMPROMISE WITH BERNARDS
4849-4764-4328, v. 1

withholding of the retention amounts. The Trustee is informed that the penalties for failing to pay a prevailing wage are stiff. Understandably, Bernards may have been reluctant to release final payment or retention funds to the Estate. Thus, the probability of success in litigation to collect the Account is uncertain, but it is likely that the Estate would recover some amount (although it may not be able to recover statutory penalties and costs of collection).

### ii.    Difficulties in collection

The Agreement dispenses with the necessity of filing a lawsuit to recover the balance due on the Account. Collection costs, with the limited exception of the fees to negotiate and seek approval of the Agreement and the preparation of demand letters to Bernards, are much lower with the Agreement than with litigation.

### iii.    Complexity

Litigation between the Estate and Bernards (in the event that such litigation would be necessary) might necessitate expert witnesses and expert testimony to establish the standard of care for a construction company and the normal billing practices for construction accounts, and whether the charges against the Account were reasonable. The Trustee is unaware of any disputes between Bernards and the Debtor for work done on the Project, but in the event of litigation to collect the Account, Bernards may raise issues with the work done by the Debtor.

### iv.    Expense, inconvenience or delay

It would not be a sound business decision to litigate a dispute over approximately $6,000, the difference between the settlement payment and the agreed-upon amount of the Account. Litigation costs, including and especially expert witness fees, would exceed the potential recovery in litigation, especially because there is likely no basis to recover costs of litigation from Bernards. Moreover, such a lawsuit would cause significant delays in payment to the Estate. Thus, the Agreement is in the best interest of all creditors, because it provides the maximum net recovery to the Estate, at minimal expense and delay.

MOTION TO APPROVE COMPROMISE WITH BERNARDS
4849-4764-4328, v. 1

1

## 4.    Conclusion

2          Because approval of the Agreement provides the maximum net recovery to the Estate, and

3  litigation costs to recover the account receivable with Bernards would far exceed the potential

4  additional recovery from Bernards, the Trustee respectfully requests that this Court enter an order:

5          1.   Granting the Motion;

6          2.   Approving the Agreement attached as Exhibit "1" to the Whitmore Declaration;

7          3.   Authorizing the Trustee to execute any other documents which may be necessary to

8              consummate the Agreement; and

9          4.   For such other relief as the Court deems just and proper.

10

11  DATED:  October 9, 2019                    MARSHACK HAYS LLP

12

13                                   By:    /s/ Tinho Mang
                                          D. EDWARD HAYS
14                                         CHAD V. HAES
                                          TINHO MANG
15                                         Attorneys for ROBERT S. WHITMORE,
                                          Chapter 7 Trustee
16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO APPROVE COMPROMISE WITH BERNARDS
4849-4764-4328, v. 1

# Declaration of Robert S. Whitmore

I, ROBERT S. WHITMORE, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I am the duly appointed Chapter 7 Trustee of the bankruptcy estate of McKenna General Engineering, Inc. ("Debtor").

4.      The facts set forth below are true of my personal knowledge.

5.      I seek approval of an agreement ("Agreement") between myself and Bernards Bros., Inc., a California corporation ("Bernards"). A true and correct copy of the Agreement is attached as Exhibit "1."

6.      In its Schedule A/B, Debtor lists a series of outstanding accounts receivables, in the total valued amount of $2,081,409.46.

7.      In particular, the Debtor listed an outstanding account receivable owed to Debtor by Bernards  in the total amount of $97,161.63 for work done on a subcontract between the Debtor and Bernards for earthwork, demolition, clearing, and grubbing work on the Palm Springs Unified School District, District Administration Center, subcontract dated November 10, 2016 ("Project"). A true and correct copy of the contract for the Project is attached as Exhibit "2."

8.      I am informed that the Debtor satisfactorily completed all work on the Project, but had failed to provide Bernards with all documentation which may have been required under the subcontract, such as a certified payroll.

9.      Bernards has informed me that the total amount due to the Debtor on account of the Project is $101,263.09 ("Account").

10.      Under the Agreement, Bernards agrees to pay $95,000 to the Estate ("Payment") in full satisfaction of the Account and will provide certain releases to the Estate, in exchange for a release from the Estate.

11.      Approval of the Agreement will minimize administrative costs and provide the

4849-4764-4328, v. 1

1  maximum possible recovery to the Estate. While I am informed that a portion of the unpaid

2  Account is retention money, I am uncertain whether the failure to pay the retention was

3  unjustified, given the Debtor's failure to provide a certified payroll to Bernards and the possible

4  consequences of not paying a prevailing wage.

5      12.   I am unaware of any disputes between Bernards and the Debtor for work done on

6  the Project, but in the event of litigation to collect the Account, Bernards may raise issues with

7  the work done by the Debtor. To resolve such issues, I would likely need to engage an expert to

8  analyze the issues.

9      13.   Therefore, litigation costs to recover the difference between the scheduled

10  account receivable and the amount offered by Bernards would far exceed the potential recovery

11  over the Payment.

12      14.   Because the Agreement provides that the maximum net benefit to the Estate, at

13  minimal administrative cost, I believe that approval of the Agreement is in the best interest of

14  creditors and the Estate.

15      I declare under penalty of perjury that the foregoing is true and correct. Executed on October

16  9, 2019.

17

18  _____
ROBERT S. WHITMORE

19

20

21

22

23

24

25

26

27

28

4

DECLARATION OF ROBERT S. WHITMORE

4849-4764-4328. v. 1

Exhibit "1"

## SETTLEMENT AGREEMENT AND CONDITIONAL RELEASE

This Settlement Agreement and Conditional Release ("Agreement") is entered into by and between Robert S. Whitmore, solely in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of McKenna General Engineering, Inc. ("Debtor"), on the one hand, and Bernards Bros., Inc., a California corporation ("Bernards"), on the other hand. Trustee and Bernards (together, the "Parties") agree and stipulate to the following:

### RECITALS

A.      On September 21, 2018 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 6:18-bk-18036-SY. On the same day, Robert S. Whitmore (previously defined as "Trustee") was appointed as the Chapter 7 Trustee.

B.      Upon the filing of the bankruptcy petition, all assets of the prepetition debtor became property of the bankruptcy estate. The Trustee is charged with marshaling the assets of the bankruptcy estate and administering them for the benefit of creditors.

C.      In its Schedule A/B, Debtor listed a series of outstanding accounts receivable in the total valued amount of $2,081,409.46.

D.      In particular, Debtor scheduled an outstanding account receivable owed to Debtor by Bernards in the scheduled amount of $97,161.63 for earthwork, demolition, clearing, and grubbing work on the Palm Springs Unified School District, District Administration Center, subcontract dated November 10, 2016 ("Project").

E.      The Debtor completed all work on the Project prior to the Petition Date to the satisfaction of Bernards.

F.      The final amount due to the Debtor for its work on the Project was $101,263.09 ("Account"), which amount includes no less than $22,436.99 in retention payments.

G.      Bernards has agreed to pay, and the Trustee has agreed to accept on account of the Estate, the sum of $95,000 ("Payment") in full satisfaction of the Account.

H.      Bernards is not aware of any existing liens recorded or claims filed by Debtor against it, or its properties, or its projects, related to the Project.

### TERMS OF AGREEMENT

NOW, THEREFORE, in consideration of the mutual agreements, covenants, and releases set forth in this Agreement, without any admission or concession as to liability, and for other good and valuable consideration, the sufficiency and adequacy of which are acknowledged, the Parties agree as follows:

1.      <u>Incorporation of Recitals.</u> Recitals A-H are hereby agreed upon by both Parties and are, by this reference, incorporated and made a part of this Agreement.

Page 2 of 5

2.    <u>Statement of Intent.</u> This Agreement is intended by the Parties to operate as a conditional waiver and release on final payment, subject to approval by the Bankruptcy Court.

3.    <u>Approval by Bankruptcy Court Required.</u> The Parties acknowledge and agree that this Agreement is binding and effective subject only to the Trustee obtaining Bankruptcy Court approval of the Agreement. If such approval is not obtained, the Agreement shall be null and void. The Trustee shall be responsible for preparing, filing, and serving the pleadings and notices necessary to obtain approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

4.    <u>Time is of the Essence.</u> The Parties agree and mutually acknowledge that, for all provisions of this Agreement, time is of the essence, and the timely receipt of the Payment by the Estate is a material term of this Agreement.

5.    <u>Terms of Payment.</u> Bernards shall transmit the full value of the Payment in the form of a check payable to "Robert S. Whitmore, Chapter 7 Trustee" within 21 days after entry of the order by the Bankruptcy Court approving this Agreement. If the Payment is transmitted or postmarked on or before the 21st day after entry of the order approving the Agreement, it shall be deemed timely.

6.    <u>Waiver by the Parties.</u> Upon timely receipt of the Payment by the Estate from Bernards, the Trustee, on behalf of the Estate, agrees that Bernards will have satisfied its obligations to the Debtor for the Project, and the Trustee on behalf of the Estate waives all other rights to payment, reimbursement, or recovery related to the Project, including any right to file, record, or foreclose any mechanic's liens or stop notices, and any right to recovery under Civil Code § 7107. Bernards agrees, upon transmission of the Payment, that it has waived any claims, rights to recovery, reimbursement, or causes of action related to the Project as against the Debtor and the Trustee, as well as the Trustee's respective past and present agents, servants, employees, attorneys, insurers, representatives, assigns, successors, and predecessors in interest.

7.    <u>All Subsequent Claims Against the Estate.</u> Upon receipt by the Trustee of the Payment, any claim by any party arising out of the Debtor's work on the Project may only be asserted against the Estate, and not against Bernards, and the sole source of recovery from those claims shall be out of the Estate through the proof of claim process, and not from Bernards.

8.    <u>Waiver under Civil Code § 1542.</u> The Parties acknowledge that they are releasing unknown claims related to the Project and any other claims, defenses, or causes of action related to the Project, and after reviewing and comprehending the scope of Civil Code § 1542, reproduced in full below, expressly waive all rights under California Civil Code section 1542 which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

4828-6368-1700, v. 1

9.    <u>Trustee's Liability.</u> The Trustee is signing this Agreement solely in his capacity as the Chapter 7 Trustee of the Estate. Nothing contained in this Agreement shall in any way impute liability to Robert S. Whitmore individually, his counsel of record, his accountants, agents, or anyone acting on his or their behalf.

10.    <u>Execution of Additional Documents.</u> The Parties agree that they will execute any and all additional documents and take all additional steps which may be necessary to consummate this Agreement and accomplish the purposes thereof.

11.    <u>General Provisions.</u>

a.    <u>Representation as to Authority to Enter into the Agreement</u>. The undersigned Parties represent and warrant that they have authority to enter into this Agreement and agree to the terms and conditions set forth in this document. The Trustee represents and warrants that he has authority to enter into the Agreement only upon approval by the Bankruptcy Court.

b.    <u>Severability</u>. The provisions of this Agreement are severable. If any part of this Agreement is found to be illegal, invalid, or unenforceable for any reasons whatsoever, the other parts shall remain fully valid and enforceable to the extent permitted by law, so long as the consideration and benefits being received under this Agreement by any Party affected by such determination are not materially limited, reduced or impaired.

c.    <u>Voluntary Nature</u>. The Parties acknowledge that they have entered into this Agreement voluntarily, on the basis of their own judgment and without coercion, duress or undue influence of any Party, and not in reliance on any promises, representations, or statements made by the other Parties other than those contained in this Agreement. Each of the Parties expressly waives any right it might have to claim that this Agreement was in any way induced by fraud.

d.    <u>Informed Consent</u>. Each Party to this Agreement acknowledges being represented by independent counsel of its own choice or given the opportunity to consult with independent or in-house counsel throughout all negotiations which proceeded the execution of this Agreement, and that such Party has read this entire Agreement, and been advised or been given full opportunity to be advised by such independent counsel as to the meaning of this Agreement and its legal effect, and executed it after due consideration each Party's own due diligence, without any reliance on the countersigning Party or its counsel.

e.    <u>Execution</u>. This Agreement may be executed and signatures delivered via facsimile or e-mail, in multiple counterpart copies, each of which shall be deemed an original.

f.    <u>Amendment</u>. This Agreement may not be amended or modified in whole or in part except through an agreement in writing that is signed by both Parties.

g.    <u>Joint Agreement</u>. Each Party cooperated in the drafting and preparation of this Agreement and therefore any construction of the intent of the Parties to be made by a court of law shall not be presumptively construed against any of the Parties.

Page 4 of 5

h.   <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding between the Parties with respect to the subject matter of this Agreement and supersedes and replaces all prior discussions, negotiations, and agreements between the Parties, or any of them, whether written or oral, related thereto. Each of the Parties acknowledges that no other Party, nor agent or attorney of any other Party, has made any promise, representation, or warranty whatsoever, express or implied, not contained herein, concerning the subject matter of this Agreement to induce the other Party to execute this instrument, and each Party acknowledges that it has not executed this Agreement in reliance upon any promise, representation, or warranty not contained herein.

i.   <u>Binding Agreement</u>. This Agreement shall be binding upon and for the benefit of the Parties and their respective successors, devisees, executors, affiliates, representatives, assigns, officers, directors, partners, agents and employees.

j.   <u>Governing Law</u>. This Agreement is made and entered into under the laws of the State of California and Title 11 of the United States Code, and shall be interpreted, applied, and enforced under those laws. The Parties agree that this Agreement shall be governed by the laws of the State of California and Title 11 of the United States Code, and any litigation concerning this Agreement shall be held in the venue of the United States Bankruptcy Court for the Central District of California, Riverside Division.

k.   <u>Legal Fees and Costs</u>. Each Party shall bear its own attorneys' fees, costs, and expense in connection with this Agreement, including without limitation, any and all legal fees and costs incurred in connection with the preparation and negotiation of this Agreement. This provision, however, does not extend to the Trustee or his retained professionals seeking allowance of administrative claims to be paid from assets of the Estate.

IN WITNESS WHEREOF, the undersigned have executed this Agreement on the date affixed by their signature.

Dated: ~~September~~ Oct. 1, 2019

By: _ROBERT S. WHITMORE_
ROBERT S. WHITMORE
Chapter 7 Trustee for the Bankruptcy Estate of
MCKENNA GENERAL ENGINEERING, INC.

Dated: September 30, 2019

BERNARDS BROS., INC.

By: _____
Title: _Chief Financial Officer_

4828-6368-1700, v. 1

Exhibit "2"



BERNARDS
BUILDERS · MANAGEMENT SERVICES

**SUBCONTRACT AGREEMENT**
**LUMP SUM**

This Subcontract Agreement (hereinafter "Agreement"), made and entered into at San Fernando, California on November 10, 2016, by and between Bernards Bros., Inc. (hereinafter "Contractor"), located at 555 First Street, San Fernando, CA 91340 and McKenna General Engineering, Inc (hereinafter "Subcontractor"), located at 1632 Railroad St, Corona, CA 92880.

**RECITALS**

On or about , Contractor entered into a Prime Contract with Palm Springs Unified School District (hereinafter "Owner"), located at 980 E Tahquitz Canyon Way, Ste 202, Palm Springs, CA 62262 to perform the following construction work: PSUSD District Administration Center. Said work is to be performed in accordance with the Prime Contract and the plans and specifications. Said plans and specifications have been prepared by or on behalf of Ruhnau Ruhnau Clarke.

## SECTION 1 - ENTIRE CONTRACT

Subcontractor certifies and agrees that he is fully familiar with all of the terms, conditions and obligations of the Prime Contract and Contract Documents, the location of the job site, and the conditions under which the work is to be performed, and that he enters into this Agreement based upon his investigation of all of such matters and is in no way relying upon any opinions or representations of Contractor. Subcontractor assumes all risks or rewards for the effects of cost escalation or de-escalation for the duration of the project. It is agreed that this Agreement represents the entire agreement. It is further agreed that the Prime Contract and Contract Documents are incorporated in this Agreement by this reference, with the same force and effect as if the same were set forth at length herein, and that Subcontractor and his subcontractors will be and are bound by any and all of said Prime Contract and Contract Documents insofar, as they relate in any part or in any way, directly or indirectly to the work covered by this Agreement. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Prime Contract and Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Prime Contract and Contract Documents reference is made to Contractor and the work or specification therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor. The term "Contract Documents" is defined to mean and include those items listed in Attachment A, which is an integral part of this Agreement.

## SECTION 2 - SCOPE

Grading and Demolition as described in Attachment C.

## SECTION 3 - CONTRACT PRICE

Contractor agrees to pay Subcontractor for the strict performance of this work, the sum of:

**Five Hundred Forty-Six Thousand Seven Hundred Fifty-Nine Dollars -------**                    **$546,759**

subject to additions and deductions for changes in the work as may be agreed upon.

## SECTION 4 - SUBCONTRACT PROVISIONS

General Subcontract Provisions are included and are an integral part of this Agreement.

## SECTION 5 - SPECIAL PROVISIONS

Attachments A, B, C, and D are an integral part of this Subcontract. Progress payment retention shall be 5% as further described in Attachment B.

**Contractors are required by law to be licensed and regulated by the Contractors State License Board. Any questions concerning a contractor may be referred to the registrar of the board whose address is:**

**Contractors State License Board - 9821 Business Park Drive, Sacramento, California 95827.**

**IN WITNESS WHEREOF:** The parties hereto have executed this Agreement for themselves, their heirs, executors, successors, administrators, and assignees on the day and year first above written.

McKenna General Engineering, Inc

By _____  VP_____

     Name             Title

☑ Corporation ☐ Partnership ☐ Proprietorship

Subcontractor's State License No. A848064

Bernards Bros., Inc.

By _____

    Rick Fochtman     Senior Vice President

Contractor's State License No. 302007

1 of 5

Project No. 1629                                                                                   Subcontract No. 1629-008

**Exhibit "2"**
**Page 12**

**GENERAL SUBCONTRACT PROVISIONS**

**A.  INSURANCE** - Before Subcontractor performs any work at, or prepares or delivers materials to, the site of construction, Subcontractor shall furnish certificates of insurance evidencing the insurance coverages required by this Agreement and such certificates shall provide that the insurance is in force and will not be canceled without ten days written notice to Contractor.  Subcontractor shall maintain all of the insurance coverages in force until the work under this Agreement is fully completed.  The requirement for carrying insurance shall not derogate from the provisions for indemnification of Contractor by Subcontractor under paragraph B of these General Subcontract Provisions.  Subcontractor shall require its Subcontractors of any tier performing work at the jobsite to maintain insurance of the type and in minimum limits as shown in Attachment D. Supplementary insurance requirements are included in Attachment D which is an integral part of this Agreement.

**B.  INDEMNITY** - Subcontractor shall, to the fullest extent permitted by law, and as it relates to all work covered by this  Agreement, done at the site of construction or in preparing or delivering materials or equipment, or any or all of them, to the site, indemnify, defend and hold Contractor and any subsidiary, parent or affiliate corporations and companies of Contractor, and all of their directors, officers, agents and employees (collectively, "Contractor") harmless from all claims, liability, losses, damages, costs, expenses, awards, fines or judgments arising by reason of (i) the death or bodily injury to persons, (ii) injury to property, (iii) design defects (for design within Subcontractor's scope), or (iv) any other loss, damage, claim or expense of any nature or kind whatsoever asserted against Contractor by any entity or individual; including any of the same resulting from Contractor's alleged or actual passive negligent act or omission; however, Subcontractor shall not be obligated under this  Agreement to indemnify Contractor with respect to the active or sole negligence, or willful misconduct, of Contractor.  Subcontractor's duty to defend is separate and distinct from the duty to indemnify and shall arise immediately upon the date when Contractor tenders in writing a claim to Subcontractor in accordance with the requirements of California Civil code Section 2782(e) and/or 2782.05(e), as applicable, when a claim is asserted against Contractor in connection with the performance of Subcontractor, or those for whom Subcontractor is responsible, relative to this  Agreement, and regardless of whether others may owe Contractor a duty of defense and/or indemnity.

With the exception that this Section B of the Agreement shall in no event be construed to require indemnification by Subcontractor to a greater extent than permitted under the statutes or public policy of the State within which the construction work as described in the Recitals of this Agreement will be performed, Subcontractor shall defend, indemnify, and save harmless  Owner, including its officers, directors, partners, joint venturers, agents, employees, affiliates, parents and subsidiaries, and each of them, as well as any other persons that Contractor is required to indemnify and defend under the Contract Documents, of and from any and all claims, to the same extent that Contractor is required to defend and/or indemnify Owner and such other persons, but only with respect to claims arising out of or in connection with Subcontractor's obligations under this  Agreement.

The express indemnity rights and obligations identified in this Agreement shall be, and are, the only indemnity rights and obligations between Contractor and Subcontractor, in law or equity, arising out of or related to the construction project that is the subject of this Agreement or any claims asserted in relation thereto.

**C.  BONDING OF SUBCONTRACTOR** - Concurrently with the execution of this Agreement, or at any time during its performance, Subcontractor shall, if required by Contractor, execute a Labor and Material Bond and Faithful Performance Bond, in an amount equal to 100% of the Contract Price in Section 3. Said bonds shall be executed by a corporate surety acceptable to Contractor and shall be in a form satisfactory to Contractor. Contractor shall pay the premium on said bonds, in an amount not -to exceed 1.5% of the Contract Price, unless otherwise provided herein or in the Contract Documents .

**D.  TIME** - Time is of the essence of this Agreement. It shall be Subcontractor's obligation to conform to Contractor's Project Schedule, which will be made available to Subcontractor and will be subject to change from time to time to accommodate the reasonable needs of the Project. Subcontractor shall, within ten days of its receipt of this Subcontract Agreement, provide to Contractor proposed durations and sequencing of Subcontractor's work. Contractor shall not be required to incorporate such proposed information into the Project Schedule if in the Contractor's judgment such durations and sequencing would be incompatible with the reasonable requirements for the overall Project Schedule. Subcontractor shall also prepare and obtain approval as required by the Contract Documents for all shop drawings, details, samples, and do all other things necessary and incidental to the prosecution of his work in conformance with the said Project Schedule. Subcontractor shall coordinate the work covered by this Agreement with that of all other contractors, subcontractors, and of the Contractor in a manner that will facilitate the efficient completion of the entire work. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time or order in which the various portions of the work shall be installed or the priority of the work of other subcontractors, and, in general, all matters representing the timely and orderly conduct of the work of Subcontractor on the premises .

Should Subcontractor be delayed or caused to lose productivity in the prosecution or completion of the work by the act, neglect or default of Owner, of Architect, or of Contractor, or should Subcontractor be delayed or caused to lose productivity waiting for materials, if required by this Contract to be furnished by Owner or Contractor, or by damage caused by fire or other casualty for which Subcontractor is not responsible, or by the combined action of the workers, in no way caused by, or resulting from default or collusion on the part of Subcontractor, or in the event of a lockout by Contractor, then the time herein fixed for the completion of the work shall be extended the number of days that Subcontractor has thus been delayed or has lost productivity, but no allowance or extension shall be made unless a claim therefore is presented in writing to the Contractor within 48 hours of the commencement of such delay or productivity loss, and under no circumstances shall the time of completion be extended to a date which will prevent Contractor from completing the entire project within the time that Owner allows Contractor for such completion .

No claims for additional compensation or damages for delays or loss of productivity, whether caused in whole or in part by Contractor or by other subcontractors or Owner, will be recoverable from Contractor, and said extension of time for the completion of Subcontractor's work shall be the sole remedy of Subcontractor; provided, however, that in the event, and in such event only, that Contractor obtains additional compensation from Owner on account of such delays or loss of productivity, Subcontractor, shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances. Nothing herein contained shall require Contractor to make any claim against Owner for such delays or loss of productivity, and it is specifically agreed that the failure of Contractor to prosecute any such claim against Owner shall not entitle Subcontractor to any claim for damages against Contractor.

**E.  CHANGES IN THE WORK -** Subcontractor hereby agrees to make any and all changes, furnish the materials and perform the work that Contractor may require, without nullifying this Agreement, at a reasonable addition to, or reduction from, the Contract Price stated herein, and pro rata to the same. Subcontractor shall adhere strictly to the plans and specifications unless a change there from is authorized in writing. Under no conditions shall Subcontractor make any changes, either as additions or deductions, without the written order of the Contractor and Contractor shall not pay any extra charges made by the Subcontractor that have not been agreed upon in writing by Contractor; and, in no event, shall Contractor make payment for any such extra charges unless and until the Contractor itself receives payment from Owner. Subcontractor shall submit immediately to the Contractor written copies of his firm's cost or credit proposal for changes in the work .

Any modification in the compensation or time (if any) stated in a Subcontract Change Order shall unequivocally comprise the total compensation and/or time adjustment due or owed by Contractor to Subcontractor for the work and changes defined therein, and shall represent full and final compensation for all increases or decreases in direct, indirect and consequential costs, overhead, profit and time required to perform the entire work under this Agreement arising directly or indirectly from the work and changes defined therein, including additional and/or extended overheads, delay, acceleration, loss of momentum and cumulative impacts of all other non -affected work under this Agreement.

If the Subcontractor initiates a substitution, deviation, or change in the work, which affects the scope of the work or the expense of other trades, Subcontractor shall be liable for the expense thereof.

No change, alteration or modification in or deviations from this Agreement or the plans or specifications, whether made in the manner herein

provided or not, shall release or exonerate, in whole or in part any surety on any bond given in connection with this Agreement and neither Owner nor Contractor shall be under any obligation to notify the surety or sureties of any such change .

**F. DAMAGES CAUSED BY DELAYS -** Should Subcontractor default in the proper performance of his work, thereby causing delay to the prime contract work, he shall be liable for any and all loss and damages, including liquidated damages, sustained by Contractor as a result thereof. Subcontractor shall not be liable under this paragraph if such default be caused by strikes, lockouts, acts of God, or other reasons beyond the control of Subcontractor, concerning which, however, notice of occurrence of same shall be given in writing immediately by Subcontractor to Contractor.

**G. LIENS -** Subcontractor shall at all times indemnify and save Contractor and Owner harmless against all liability for claims and liens for labor performed or materials used or furnished to be used on the job, including all incidental or consequential damages resulting to Contractor or Owner from such claims or liens. Further, in case suit on such claim is brought, Subcontractor shall defend said suit at his own cost and expense, and will pay and satisfy any such lien or judgment as may be established by the decision of the court in said suit. Subcontractor agrees within ten (10) days after written demand to cause the effect of any suit or lien to be removed from the premises, and in the event Subcontractor shall fail so to do, Contractor is authorized to use whatever means in its discretion it may deem appropriate to cause said lien or suit to be removed or dismissed and the cost thereof shall be immediately due and payable to Contractor by Subcontractor. Subcontractor may litigate any such lien or suit provided he causes the effect thereof to be removed, promptly in advance, from the premises, and shall further do such things as may be necessary to cause Owner not to withhold any monies due to Contractor from Owner by reason of such liens or suits .

It is understood and agreed that the full and faithful performance of this Agreement on the part of Subcontractor (including the payment of any obligations due from Subcontractor to Contractor, and any amounts due to labor or material men furnishing labor material for said work) is a condition precedent to Subcontractor's right to receive payment for the work performed, and any monies paid by Contractor to Subcontractor under the terms of this Agreement shall be impressed with a trust in favor of labor and material men furnishing labor and material to Subcontractor on the work herein sub-contracted .

**H. RECOURSE BY CONTRACTOR -** In the event that Subcontractor defaults at any time by refusing or neglecting to supply a sufficient number of properly skilled workmen or a sufficient quantity of materials of proper quality, or fails to correct deficient work, or is adjudicated bankrupt, or files an arrangement proceeding, or commits any act of insolvency, or makes an assignment for the benefit of creditors without Contractor's consent, or fails to make prompt payment to his subcontractors, suppliers and/or laborers, or fails in any respect to properly and diligently prosecute the work covered by this Agreement, or becomes delinquent with respect to contributions or payments required to be made to any Health and Welfare, Pension, Vacation, Apprenticeship or other employee benefit program or trust, or otherwise fails to perform fully any of the agreements herein contained, Contractor may, at his option, after giving written notice to Subcontractor: supplement and/or correct Subcontractor's work efforts by providing or causing to be provided any design, engineering, labor, materials, equipment, subtrade, or any other type of work or payment as may be necessary to cure the default of Subcontractor; and/or terminate Subcontractor's right to proceed with a portion of or the remainder of Subcontractor's work in which event Contractor shall have the right to enter upon the premises of the project and take possession, for the purpose of completing the work included under this Agreement, of Subcontractor's materials, tools, and appliances, and may employ any other person(s) or firm(s) to finish Subcontractor's work and provide the materials therefore. In the case of termination of the remainder of Subcontractor's work Subcontractor shall not be entitled to receive any further payment under this Agreement until the work undertaken by Contractor in his prime contract is finished. In the case of such supplementation, correction or termination of Subcontractor's work, Contractor shall be entitled to recover all expenses and damages incurred for completing Subcontractor's work including, but not limited to, the cost of: design, engineering, labor, materials, equipment, subtrade work, general conditions, onsite supervision, insurance, bonds, and any payments made on behalf of Subcontractor plus a markup of fifteen percent on all such expenses and damages, hereinafter referred to collectively as Completion Costs. Such Completion Costs shall be deducted from any payment then due or to become due to Subcontractor. If the unpaid balance of the amount to be paid under this Agreement exceeds the Completion Costs incurred by Contractor the excess shall be paid by Contractor to Subcontractor as it becomes due under the terms of this Agreement; but, if the Completion Costs exceed such unpaid balance, then Subcontractor shall promptly pay to Contractor the amount by which the Completion Costs exceed such unpaid balance and Contractor shall have a lien upon all Subcontractor's materials, tools and appliances taken possession of, as aforesaid, to secure the payment thereof. The notice referred to in this Paragraph H will be sufficient and complete when handed to a supervising employee employed by Subcontractor or when sent to Subcontractor at his address shown in this Agreement or sent via facsimile or e -mail to the then current facsimile number or e -mail address of the Subcontractor.

Contractor may withhold, or on account of subsequently discovered evidence, nullify the whole or a part of any payment under Attachment B Payment, to such extent as may be necessary to protect Contractor from loss on account of (1) defective work not remedied; (2) claims filed or reasonable evidence indicating probable filing of claim; (3) failure of Subcontractor to make payments promptly to his subcontractors or for material, labor, or for fringe benefits; (4) a reasonable doubt that this Agreement can be completed for the balance then unpaid; (5) damage to another subcontractor. In the event Contractor elects to withhold funds on account of any of the referenced items above, Contractor may withhold one hundred fifty percent of the value of such item or items. When the above grounds are removed, such amounts are then due and owing shall be paid or credited to Subcontractor.

**I. TERMINATION OF AGREEMENT, SUSPENSION OF WORK -** In the event the prime contract is terminated prior to its completion, Subcontractor shall be entitled only to payment for the work actually completed by it at the pro rata of the price herein set forth unless Contractor itself receives additional compensation or damages on account of such termination; in which event, Subcontractor shall be entitled to such proportion of the additional compensation or damages actually received as is equitable under all of the circumstances. Nothing herein contained shall require Contractor to make any claim against Owner for such additional compensation or damages in the event of termination before completion, and it is specifically agreed that the failure of Contractor to prosecute any such claim against Owner shall not entitle Subcontractor to any claim for additional compensation or damages against Contractor.

Notwithstanding the preceding paragraph, Contractor reserves the absolute right to terminate this Agreement for convenience. In the event of termination without cause, Subcontractor shall be entitled to payment only as follows: An amount equal to the lesser of the Agreement value of the work performed through the date of termination, or the actual direct costs for labor, materials, and equipment incurred by Subcontractor for the work completed plus a sum equal to fifteen percent (15%) of such costs for headquarters, supervision, overhead, and profit, reduced by the amount of all payments made to Subcontractor prior to such termination. Title to all materials included in the computation of such costs and of all purchase orders placed by Subcontractor for labor and /or materials shall pass to Contractor upon payment to Subcontractor.

Upon receipt of notice of Contractor's termination for convenience, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the work and placing of orders for materials, facilities and supplies in connection with the performance of this Agreement, and shall, if requested, make every reasonable effort to procure cancellation of all existing orders or contracts upon terms satisfactory to Contractor or, at the option of Contractor, give Contractor the right to assume those obligations directly, including all benefits to be derived therefrom. Subcontractor shall thereafter do only such work as may be necessary to preserve and protect the work already in progress and to protect material and equipment on the job site or in transit thereto .

Should the Owner suspend the entire work or any part which includes the Agreement work for the convenience of the Owner and such suspension is not due to any act or omission of Contractor, or any other person or entity for whose acts or omissions Contractor may be liable, Contractor shall notify Subcontractor in writing and, upon receiving notification, Subcontractor shall immediately suspend the Agreement work. To the extent provided for under the prime contract and to the extent Contractor recovers such on Subcontractor's behalf, the Agreement price and the Agreement time shall be equitably adjusted by Agreement Change Order for the cost and delay resulting from any such suspension .

**J. LABOR RELATIONS -** Employment of labor by Subcontractor shall be effected under conditions, which are satisfactory to Contractor. Subcontractor shall keep competent and sufficient supervision satisfactory to Contractor at the job site during all times when Subcontractor's work is in progress, and such supervisor(s) shall be authorized to represent Subcontractor as to all phases of the work. Prior to commencement of the work, Subcontractor shall notify

3 of 5

Contractor who Subcontractor's supervisor(s) is (are) to be, and in the event of any change of representative(s) Subcontractor shall notify Contractor who the new representative(s) is (are) to be prior to such change becoming effective.

Should there be picketing on the Contractor's jobsite, and the Contractor establishes a reserved gate for the Subcontractor's purposes it shall be the obligation of the Subcontractor to continue the proper performance of his work without interruption or delay.

Subcontractor further promises and agrees that he will bind and require all of his subcontractors and their subcontractors performing jobsite work to agree to all of the foregoing demands and undertakings, to the same extent as herein provided with respect to him.

Subcontractor will indemnify and hold harmless Contractor from and against any liability, loss, damage, cost, claims, awards, judgments, fines, expenses, and any other costs, which may be incurred by the Contractor resulting from Subcontractor's failure to fulfill the covenants set forth in this paragraph.

**K. LAYOUT RESPONSIBILITY -** Contractor shall establish principal axis lines and levels whereupon Subcontractor shall lay out and shall be strictly responsible for the accuracy of his work and for any loss or damage to other contractors engaged in work on the site by reason of failure of Subcontractor to set out or perform his work correctly. Subcontractor shall exercise prudence so that actual final conditions and details shall result in perfect alignment of finish surfaces.

**L. WORKMANSHIP -** Every part of the work herein described shall be executed in strict accordance with the Contract Documents in the most sound, workmanlike, and substantial manner. All workmanship shall be of the best of its several kinds, and all materials used in the work herein described shall be furnished in ample quantities to facilitate the proper and expeditious execution of the work, and shall be new and the best of their respective kinds, except such materials as may be expressly provided in the Contract Documents to be otherwise.

**M. PROVISION FOR INSPECTION -** Subcontractor shall furnish to Contractor and its representatives ample facilities at all times for inspecting materials at the site of construction, at the shops, or any place where materials under this Agreement may be in course of preparation, process, manufacture or treatment. Subcontractor shall further furnish to Contractor as often as required, full reports of the progress of the work at any place where materials under this Agreement may be in the course of preparation or manufacture, said reports to show the progress of such preparation and manufacture in such details as may be required by Contractor, including any plans, drawings, or diagrams in course of preparation. Subcontractor shall obtain and pay for all permits and licenses required for his own work, and be responsible for securing from any authority having jurisdiction over it, inspections and approval of his work as required by the job schedule.

**N. MATERIALS FURNISHED BY OTHERS -** In the event the scope of work includes installation of materials or equipment furnished by others, it shall be the responsibility of Subcontractor to examine the items so provided and thereupon handle, store and install the items with such skill and care as to insure a satisfactory installation. Loss or damage due to acts of Subcontractor shall be charged to the account of Subcontractor and deducted from monies due under this Agreement. ~~BY PROJECT SUPERINTENDENT~~ (handwritten)

**O. PROTECTION OF WORK -** Subcontractor shall effectually secure and protect the work done hereunder and assume full responsibility for the condition thereof until ~~final~~ acceptance ~~of Architect, Owner, and Contractor. Subcontractor further agrees to provide such protection as is necessary to protect the~~ work and the workmen of the Contractor and other subcontractors from his operations.

Subcontractor shall be liable for any loss or damage to any work in place or to any equipment and materials on the job site caused by him or his agents, employees or guests.

**P. USE OF CONTRACTOR'S EQUIPMENT -** In the event Subcontractor shall use Contractor's equipment or facilities, he shall reimburse Contractor at a predetermined rate, unless otherwise stated herein. Further, that in so doing Subcontractor assumes all responsibility for, and shall hold Contractor harmless from any claims, actions, demands, damages, liabilities, or expenses, resulting from the use of such equipment or facilities by Subcontractor or his agents, employees, or permitees. Subcontractor shall furnish all temporary facilities required for his own work. Such temporary facilities shall be located where directed by the Contractor's Project Superintendent.

**Q. CLEAN-UP -** During the course of construction, Subcontractor shall remove waste materials from the site recurrently as is necessary to maintain the premises in a clean and orderly condition. Upon completion of the work under this Agreement, Subcontractor shall remove from the site all temporary structures, debris, waste incident to his operation, and clean all surfaces, fixtures, equipment, etc., relative to the performance of this Agreement. If Subcontractor fails to perform a clean-up function as provided herein, it will be construed as authorization for Contractor to proceed with that function as he judges necessary and in the manner he may deem expedient, and the cost thereof shall be charged to Subcontractor and deducted from monies due under this Agreement.

**R. GUARANTEE -** Subcontractor guarantees all materials and workmanship and agrees to replace at his sole cost and expense, and to the satisfaction of Contractor, any and all materials adjudged defective or improperly installed as well as guarantee the Owner and Contractor against liability, loss or damage arising from said installation during a period of one year from completion and acceptance of the work covered by the prime contract. If, however, the period of guarantee is stipulated in excess of one year by the Contract Documents, Subcontractor shall be bound during the longer period stipulated. In the event Subcontractor is a corporation or limited liability company and upon Subcontractor's execution of this Subcontract, all officers and directors of the corporation or all partners and principals of the limited liability company shall be deemed, jointly and severally, to be personally liable to Contractor for the full and faithful performance of this entire Subcontract and any modifications thereto in every case where Subcontractor does not supply a corporate surety bond to Contractor to guarantee the faithful performance hereof.

**S. INDEMNIFICATION FROM PATENT RIGHTS -** Subcontractor shall indemnify and hold Contractor harmless against any claim, suit or action, or any alleged violation or infringement of patent rights which may be made against Contractor by reason of the use in connection with or as a part of the performance of the work or the furnishing of the materials hereunder, of anything which is now or may hereafter be covered by patent, copyright or trademark, and also against all expense, which Contractor may incur in defending or adjusting any such claim, suit or action.

**T. ASSIGNMENT OF CONTRACT -** Subcontractor shall not, without written consent of Contractor, assign, transfer, nor sublet any portion or part of the work required by this Agreement nor assign any payments hereunder to others. Contractor may assign or transfer the whole or part of this Agreement, and his rights hereunder, to any corporation, individual, or partnership, and Subcontractor hereby consents to such assignment.

**U. INDEPENDENT CONTRACTOR -** Subcontractor is an independent contractor and shall, at his sole cost and expense, and without increase in the Contract Price, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the work; obtain all necessary permits and licenses therefore; pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and Unemployment which are measured by wages, salaries, or other remuneration paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. Subcontractor, upon request, shall furnish evidence satisfactory to Contractor that any or all of the foregoing obligations have been fulfilled.

**V. NOTIFICATION OF CONTRACTOR -** Any act or omission of Contractor which Subcontractor might claim as an excuse for his own failure to perform shall be deemed waived by Subcontractor unless he shall notify Contractor of his intention to assert such excuse within ten days after the occurrence of any such act or omission. Subcontractor waives any right it might have to assert the provisions of California Civil Code Section 1654 against Contractor.

**W. ARBITRATION -** Except as otherwise described below, any and all disputes between Contractor and Subcontractor arising out of or related to this Agreement shall be submitted to binding arbitration before the American Arbitration Association, pursuant to the Construction Industry Arbitration Rules currently in effect, except that notwithstanding the amount of the dispute, there shall be a single arbitrator mutually agreeable to both parties who is an experienced construction lawyer with previous arbitrator experience. In addition, the arbitration shall be governed by the Federal Arbitration Act, rather than state arbitration statutes and laws. Notwithstanding the foregoing arbitration provisions, in the event Contractor or Owner institutes an action or arbitration against the other, and either Contractor or Owner asserts a claim arising out of or related to Subcontractor's performance within that action or arbitration, the dispute resolution procedures contained in the prime contract between Contractor and Owner shall prevail over the arbitration provisions

in this Agreement.

**X.   INDEMNITY CLAUSE RE SAFETY -** Subcontractor shall, at its own expense, conform to the basic safety policy of the Contractor, and shall comply with all specific safety requirements promulgated by any governmental authority, including, without limitation, the requirements of the Occupational Safety Health Act of 1970, the Construction Safety Act of 1969, the California Labor Code, including Sections 6300 through 6604, and 7100 through 7332, inclusive, and all successors and amendments thereto, and all standards and regulations which have been or shall be promulgated by the parties or agencies which administer said Acts.  Subcontractor shall have and exercise full responsibility for compliance hereunder by itself, its agents, employees, material men, and subcontractors with respect to its portion of the work on this Project; and shall directly receive, respond to, defend and be responsible for any citation, assessment, fine or penalty by reason of Subcontractor's failure or failure of Subcontractor's agents, employees, material men and subcontractors to so comply.   Subcontractor shall indemnify and hold harmless Contractor from and against any liability, loss, damage, cost, claims, awards, judgments fines, expenses, including litigation expenses, claims or liability for harm to persons or property, expenses incurred pursuant to or attendant to any hearing or meeting and any other applicable cost which may be incurred by Contractor resulting from Subcontractor's failure to fulfill the covenants set forth in this paragraph .

In the event Subcontractor fails to comply with any citation issued by the Secretary of Labor, any order issued by the Occupational Safety and Health Review Commission or any order issued by the Division of Industrial Safety of the State of California or of any other body responsible for the administration and/or enforcement of any stature, regulation or ordinance relating to occupational health and safety within the period specified in any such citation or order, Contractor may in his discretion, exercise the rights and remedies provided him under the terms of this Subcontract, including, but not limited, to, the rights and remedies provided in Paragraph H, Recourse by Contractor.

**Y.   INDEMNITY CLAUSE FOR EQUAL EMPLOYMENT OPPORTUNITIES VIOLATIONS -** Subcontractor shall, at his own expense, conform to the equal employment opportunity policies of the Contractor, and in addition, shall comply with all equal employment opportunity requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964, 42 United States code, Section 1983, Executive Orders 11246, 11375 and 11478, the California Fair Employment Practices Act, the California Plan, any other applicable statute or ordinances, plans or programs, inclusive, and all successors and amendments thereto, and all plans, programs, standards and regulations which have been or shall be promulgated or approved by the parties or agencies which administer said Acts or Orders (hereinafter collectively referred to as EEO laws).   Subcontractor shall have and exercise full responsibility for compliance hereunder by itself, its agents, employees, material men and subcontractors with respect to its portion of the work on this Project; it shall directly receive and respond to, defend and be responsible for any citation, order, claim, charge, or criminal or civil actions, arising by reason of the failure of Subcontractor or its agents, employees, material men and subcontractors to so comply, regardless of whether such non-compliance results from active or passive acts or omissions or whether such non-compliance is the sole or a contributory cause of any of those matters against which Subcontractor is obligated hereunder to indemnify and hold harmless Contractor. Subcontractor shall indemnify and hold harmless Contractor from and against any liability loss (including any loss of profits or prospective advantage occasioned by the suspension, cancellation or termination of any contract, or Contractor's eligibility therefore), damage, costs, claims, awards, judgments, fines, expenses, including litigation expenses, claims or liability for harm to person or property, expenses incurred pursuant to or attendant to any hearing or meeting or any other applicable costs which may be incurred by Contractor resulting from Subcontractor's failure to fulfill the covenants set forth in this paragraph.

In the event Subcontractor fails to comply with any of the aforementioned EEO laws, or any judgment, order or award issued by the Office of Federal Contract Compliance, United States Department of Labor, or any other federal, state or local agency or any court of law, or any other body responsible for the administration and/or enforcement of any EEO laws, within the period specified in any such laws, judgment, order or award, Contractor may, in his discretion, exercise the rights and remedies provided him under the terms of this Subcontract, including, but not limited to, the rights and remedies provided in Paragraph H, Recourse by Contractor.

**Z.   VENUE -** This Subcontract should be construed under the laws of the State of California.  No action or proceeding shall be instituted by Subcontractor against Contractor upon any claim or cause of action arising out of or relating to this Subcontract or breach thereof unless any such action or proceeding is commenced in Los Angeles County, California .

**AA.   CONTINUOUS PERFORMANCE DURING A DISPUTE -** In the event of a dispute between Contractor and Subcontractor over the scope of Subcontractor's work under this Agreement, or any other dispute regarding the parties' rights and obligations under this Agreement, Subcontractor shall follow the written direction of Contractor and shall not delay, postpone or otherwise hinder the progress of the work.  Subcontractor shall give written notice of claim relating to any work for which extra compensation is claimed within 7 days (or within a lesser time period if required elsewhere in the Contract Documents) after Subcontractor becomes aware of its claim, or Subcontractor shall be deemed to have abandoned any claim therefore.  In the event of such a dispute, it is understood that Subcontractor reserves all of its contractual rights as it proceeds under protest pursuant to Contractor's written direction.

## DRAWINGS

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| **GENERAL** | | | |
| T-1 | Cover Sheet | 12/12/2014 | None |
| T-2 | Title Sheet | 8/1/2014 | None |
| **CIVIL** | | | |
| C-1.1 | Title Sheet | 8/27/2015 | None |
| C-2.1 | Topographic Map | 8/27/2015 | None |
| C-2.2 | Topographic Map | 8/27/2015 | None |
| C-2.3 | Topographic Map | 8/27/2015 | None |
| C-2.4 | Topographic Map | 8/27/2015 | None |
| C-3.1 | Precise Grading Plan | 8/27/2015 | None |
| C-3.2 | Precise Grading Plan | 8/27/2015 | None |
| C-3.3 | Precise Grading Plan | 8/27/2015 | None |
| C-3.4 | Grading Detail Sheet | 8/27/2015 | None |
| C-4.1 | Composite Utility Plan | 8/27/2015 | None |
| C-4.2 | Composite Utility Plan | 8/27/2015 | None |
| C-4.3 | Composite Utility Plan | 8/27/2015 | None |
| C-4.4 | Utility Detail Sheet | 8/27/2015 | None |
| C-5.1 | Horizontal Control | 8/27/2015 | None |
| C-5.2 | Horizontal Control | 8/27/2015 | None |
| C-5.3 | Horizontal Control | 8/27/2015 | None |
| C-6.1 | Street Improvement Plan - Title Sheet | 8/19/2016 | Addendum 2 |
| C-6.2 | San Joaquin Drive - Plan and Profile | 8/19/2016 | Addendum 2 |
| C-6.3 | San Joaquin Drive - Plan and Profile | 8/19/2016 | Addendum 2 |
| C-6.4 | Chase Place - Plan and Profile | 8/19/2016 | Addendum 2 |
| C-6.5 | San Joaquin Drive - Cross Sections | 8/19/2016 | Addendum 2 |
| C-7.1 | BMP Site Plan | 8/27/2015 | None |
| **LANDSCAPE** | | | |
| L1.1 | Irrigation Plan | 12/12/2014 | None |
| L1.2 | Irrigation Plan | 12/12/2014 | None |
| L1.3 | Irrigation Plan | 12/12/2014 | None |
| L2.1 | Tree and Groundcover Plan | 12/12/2014 | None |
| L2.2 | Tree and Groundcover Plan | 12/12/2014 | None |

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| L2.3 | Tree and Groundcover Plan | 12/12/2014 | None |
| L3.1 | Shrub Plan | 12/12/2014 | None |
| L3.2 | Shrub Plan | 12/12/2014 | None |
| L3.3 | Shrub Plan | 12/12/2014 | None |
| L4.1 | Irrigation and Planting Details | 12/12/2014 | None |
| L4.2 | Irrigation and Planting Details | 12/12/2014 | None |
| L5.1 | Irrigation and Planting Specifications | 12/12/2014 | None |
| **ARCHITECTURAL** | | | |
| AS-0.1 | Demolition Site Plan | 12/12/2014 | None |
| AS-1.0 | Overall Site Plan | 12/12/2014 | None |
| AS-1.1 | Enlarged Site Plan | 12/12/2014 | None |
| AS-1.2 | Enlarged Site Plan | 12/12/2014 | None |
| AS-1.3 | Enlarged Site Plan | 12/12/2014 | None |
| AS-2.0 | Code Analysis Site Plan | 12/12/2014 | None |
| AS-3.0 | Fire Access Plan | 6/20/2014 | None |
| AS-4.0 | Enlarged Site Plans | 12/12/2014 | None |
| ASD-1.0 | Site Details | 12/12/2014 | None |
| ASD-1.1 | Site Details | 12/12/2014 | None |
| ASD-1.2 | Site Details | 12/12/2014 | None |
| A1-1.0 | Overall Floor Plan - First Floor | 8/1/2014 | None |
| A1-1.1 | North Floor Plan - First Floor | 8/1/2014 | None |
| A1-1.2 | South Floor Plan - First Floor | 8/1/2014 | None |
| A1-1.3 | Overall Floor Plan - Second Floor | 8/1/2014 | None |
| A1-1.4 | North Floor Plan - Second Floor | 8/1/2014 | None |
| A1-1.5 | South Floor Plan - Second Floor | 8/1/2014 | None |
| A1-2.0 | Overall Reflected Ceiling Plan - First Floor | 8/1/2014 | None |
| A1-2.1 | North Reflected Ceiling Plan - First Floor | 8/1/2014 | None |
| A1-2.2 | South Reflected Ceiling Plan - First Floor | 8/1/2014 | None |
| A1-2.3 | Overall Reflected Ceiling Plan - Second Floor | 8/1/2014 | None |
| A1-2.4 | North Reflected Ceiling Plan - Second Floor | 8/1/2014 | None |
| A1-2.5 | South Reflected Ceiling Plan - Second Floor | 8/1/2014 | None |
| A1-3.0 | Overall Roof Plan | 8/1/2014 | None |
| A1-4.0 | Exterior Elevations | 8/1/2014 | None |
| A1-4.1 | Exterior Elevations | 8/1/2014 | None |
| A1-5.0 | Building Sections | 8/1/2014 | None |
| A1-5.1 | Building Sections | 8/1/2014 | None |

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| A1-5.2 | Building Sections | 8/1/2014 | None |
| A1-5.3 | Building Sections | 8/1/2014 | None |
| A1-6.0 | Wall Sections | 8/1/2014 | None |
| A1-6.1 | Wall Sections | 8/1/2014 | None |
| A1-6.2 | Wall Sections | 8/1/2014 | None |
| A1-6.3 | Wall Sections | 8/1/2014 | None |
| A1-6.4 | Wall Sections | 8/1/2014 | None |
| A1-6.5 | Wall Sections | 8/1/2014 | None |
| A1-6.6 | Wall Sections | 8/1/2014 | None |
| A1-6.7 | Wall Sections | 8/1/2014 | None |
| A1-6.8 | Wall Sections | 8/1/2014 | None |
| A1-6.9 | Wall Sections | 8/1/2014 | None |
| A1-6.10 | Wall Sections | 8/1/2014 | None |
| A1-6.11 | Wall Sections | 8/1/2014 | None |
| A1-6.12 | Wall Sections | 8/1/2014 | None |
| A1-7.0 | Enlarged Toilet Plans and Interior Elevations | 8/1/2014 | None |
| A1-7.1 | Enlarged Toilet Plans and Interior Elevations | 8/1/2014 | None |
| A1-7.2 | Enlarged Toilet Plans and Interior Elevations | 8/1/2014 | None |
| A1-7.3 | Enlarged Toilet Plans and Interior Elevations | 8/1/2014 | None |
| A1-7.4 | Enlarged Toilet Plans and Interior Elevations | 8/1/2014 | None |
| A1-7.5 | Enlarged Toilet Plans and Interior Elevations | 8/1/2014 | None |
| A1-7.6 | Enlarged Toilet Plans and Interior Elevations | 8/1/2014 | None |
| A1-7.7 | Interior Elevations | 8/1/2014 | None |
| A1-7.8 | Interior Elevations | 8/1/2014 | None |
| A1-7.9 | Enlarged Stair Plans and Sections | 8/1/2014 | None |
| A1-7.10 | Enlarged Stair Plans and Sections | 8/1/2014 | None |
| A1-7.11 | Enlarged Stair Plans and Sections | 8/1/2014 | None |
| A1-7.12 | Enlarged Elevator Plans and Sections | 8/1/2014 | None |
| A1-8.0 | Finish Schedule - First Floor | 8/19/2016 | Addendum 2 |
| A1-8.1 | Finish Schedule - First Floor | 8/19/2016 | Addendum 2 |
| A1-8.2 | Finish Schedule - Second Floor | 8/19/2016 | Addendum 2 |
| A1-9.0 | Door Schedule - First Floor | 8/19/2016 | Addendum 2 |
| A1-9.1 | Door Schedule - First Floor | 8/19/2016 | Addendum 2 |
| A1-9.2 | Door Schedule - Second Floor | 8/19/2016 | Addendum 2 |
| A1-9.3 | Window Schedule | 8/1/2014 | None |
| A1-9.4 | Window Schedule | 8/1/2014 | None |
| A1-9.5 | Window Schedule | 8/1/2014 | None |

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| A1-9.6 | Window Schedule | 8/1/2014 | None |
| AD-1.0 | Accessibility Details and Signage | 12/12/2014 | None |
| AD-1.1 | Accessibility Details and Signage | 12/12/2014 | None |
| AD-2.0 | Wall Details | 12/12/2014 | None |
| AD-2.1 | Wall Details | 12/12/2014 | None |
| AD-2.2 | Wall Details | 12/12/2014 | None |
| AD-3.0 | Roof Details | 12/12/2014 | None |
| AD-3.1 | Roof Details | 12/12/2014 | None |
| AD-3.2 | Roof Details | 12/12/2014 | None |
| AD-4.0 | Ceiling and Interior Details | 12/12/2014 | None |
| AD-4.1 | Ceiling and Interior Details | 12/12/2014 | None |
| AD-5.0 | Stair Details | 12/12/2014 | None |
| AD-5.1 | Elevator Details | 12/12/2014 | None |
| AD-6.0 | Casework Details | 12/12/2014 | None |
| AD-7.0 | Door Details | 12/12/2014 | None |
| AD-7.1 | Door Details | 12/12/2014 | None |
| AD-7.2 | Window Details | 12/12/2014 | None |
| AD-7.3 | Window Details | 12/12/2014 | None |
| AD-7.4 | Window Details | 12/12/2014 | None |
| AD-7.5 | Section Properties | 12/12/2014 | None |
| AD-8.0 | Miscellaneous Details | 12/12/2014 | None |
| **STRUCTURAL** | | | |
| S0-1.1 | General Notes | 11/21/2014 | None |
| S0-1.2 | General Notes | 11/21/2014 | None |
| S0-2.1 | Typical - Concrete Details | 11/21/2014 | None |
| S0-2.2 | Typical - Reinforcing and Masonry Details | 11/21/2014 | None |
| S0-2.3 | Typical - Tilt-Up Details | 11/21/2014 | None |
| S0-2.4 | Typical - Steel Details | 11/21/2014 | None |
| S0-2.5 | Typical - Metal Deck Details | 11/21/2014 | None |
| S0-2.6 | Typical - Metal Stud Details | 11/21/2014 | None |
| S0-2.7 | Typical - Metal Stud Details | 11/21/2014 | None |
| S1-1.0 | Overall Plan and Panel Layout | 9/1/2015 | None |
| S1-1.1 | North Foundation Plan | 9/1/2015 | None |
| S1-1.2 | South Foundation Plan | 9/1/2015 | None |
| S1-2.1 | North Floor Framing Plan | 9/1/2015 | None |
| S1-2.2 | South Floor Framing Plan | 9/1/2015 | None |

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| S1-3.1 | North Roof Framing Plan | 9/1/2015 | None |
| S1-3.2 | South Roof Framing Plan | 9/1/2015 | None |
| S1-4.1 | Enlarged Stair Framing Plans | 9/1/2015 | None |
| S1-5.1 | Wall Elevations | 9/1/2015 | None |
| S1-5.2 | Wall Elevations | 9/1/2015 | None |
| S1-5.3 | Wall Elevations | 9/1/2015 | None |
| S1-5.4 | Wall Elevations | 9/1/2015 | None |
| S1-5.5 | Wall Elevations | 9/1/2015 | None |
| S1-5.6 | Wall Elevations | 9/1/2015 | None |
| S1-5.7 | Wall Elevations | 9/1/2015 | None |
| S1-5.8 | Wall Elevations | 9/1/2015 | None |
| S1-5.9 | Wall Elevations | 9/1/2015 | None |
| S2-1.1 | Foundation Details | 11/21/2014 | None |
| S2-1.2 | Foundation Details | 11/21/2014 | None |
| S2-1.3 | Foundation Details | 11/21/2014 | None |
| S2-2.1 | Floor Framing Details | 11/21/2014 | None |
| S2-2.2 | Floor Framing Details | 11/21/2014 | None |
| S2-3.1 | Roof Framing Details | 11/21/2014 | None |
| S2-3.2 | Details | 11/21/2014 | None |
| S2-3.3 | Details | 11/21/2014 | None |
| S2-4.1 | Stair Details | 11/21/2014 | None |
| MECHANICAL | | | |
| M1-0.1 | Abbreviations and Symbols | 12/12/2014 | None |
| M1-0.2 | Equipment Schedules | 12/12/2014 | None |
| M1-0.3 | Equipment Schedules | 12/12/2014 | None |
| M1-0.4 | Details | 12/12/2014 | None |
| M1-0.5 | Details | 12/12/2014 | None |
| M1-0.6 | Title 24 Calculations | 12/12/2014 | None |
| M1-0.7 | Title 24 Calculations | 12/12/2014 | None |
| M1-0.8 | Equipment Schedules | 8/8/2016 | Addendum 1 |
| M1-0.9 | Details | 8/8/2016 | Addendum 1 |
| M1-0.10 | Details | 8/8/2016 | Addendum 1 |
| M1-0.11 | EMS Diagrams | 8/19/2016 | Addendum 2 |
| M1-0.12 | EMS Diagrams | 8/19/2016 | Addendum 2 |
| M1-0.13 | EMS Diagrams | 8/19/2016 | Addendum 2 |
| M1-0.14 | EMS Diagrams | 8/19/2016 | Addendum 2 |

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| M1-1.0 | Overall HVAC Floor Plan - First Floor | 12/12/2014 | None |
| RM1-1.1 | North HVAC Floor Plan - First Floor | 8/8/2016 | Addendum 1 |
| RM1-1.2 | South HVAC Floor Plan - First Floor | 8/8/2016 | Addendum 1 |
| M1-1.3 | Overall HVAC Floor Plan - Second Floor | 12/12/2014 | None |
| RM1-1.4 | North HVAC Floor Plan - Second Floor | 8/8/2016 | Addendum 1 |
| RM1-1.5 | South HVAC Floor Plan - Second Floor | 8/8/2016 | Addendum 1 |
| M1-2.0 | Overall HVAC Roof Plan | 12/12/2014 | None |
| RM1-3.0 | North Piping Floor Plan - First Floor | 8/8/2016 | Addendum 1 |
| RM1-3.1 | South Piping Floor Plan - First Floor | 8/8/2016 | Addendum 1 |
| RM1-3.2 | North Piping Floor Plan - Second Floor | 8/8/2016 | Addendum 1 |
| RM1-3.3 | South Piping Floor Plan - Second Floor | 8/8/2016 | Addendum 1 |
| M5-1.0 | Mechanical Plan - Central Plant | 8/8/2016 | Addendum 1 |
| M5-1.1 | Operations Building Piping Plan | 8/8/2016 | Addendum 1 |
| **PLUMBING** | | | |
| P1-.01 | Abbreviations and Symbols | 12/12/2014 | None |
| P1-.02 | Plumbing Fixture Schedules | 12/12/2014 | None |
| P1-.03 | Details | 12/12/2014 | None |
| P1-1.0 | Overall Plumbing Floor Plan - First Floor | 12/12/2014 | None |
| P1-1.1 | North Plumbing Floor Plan - First Floor | 12/12/2014 | None |
| P1-1.1.1 | North Condensate Floor Plan | 8/8/2016 | Addendum 1 |
| P1-1.2 | South Plumbing Floor Plan - First Floor | 12/12/2014 | None |
| P1-1.2.1 | South Condensate Floor Plan | 8/8/2016 | Addendum 1 |
| P1-1.3 | Overall Plumbing Floor Plan - Second Floor | 12/12/2014 | None |
| P1-1.4 | North Plumbing Floor Plan - Second Floor | 12/12/2014 | None |
| P1-1.4.1 | North Condensate Floor Plan | 8/8/2016 | Addendum 1 |
| P1-1.5 | South Plumbing Floor Plan - Second Floor | 12/12/2014 | None |
| P1-1.5.1 | South Condensate Floor Plan | 8/8/2016 | Addendum 1 |
| P1-2.0 | Enlarged Plumbing Plans | 12/12/2014 | None |
| P1-2.1 | Enlarged Plumbing Plans | 12/12/2014 | None |
| P1-3.0 | Overall Plumbing Roof Plan | 12/12/2014 | None |
| **ELECTRICAL** | | | |
| E-S.1 | Site Electrical Plan and Utility Yard Electrical Plan | 8/1/2014 | None |
| E-0.1 | Symbol List and General Notes | 8/1/2014 | None |
| E-0.2 | Lighting Fixture Schedule and Details | 8/1/2014 | None |
| E-0.3 | Single Line Diagram | 8/1/2014 | None |
| E-0.4 | Fire Alarm Notes, Symbols, and Details | 8/1/2014 | None |

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| E-0.5 | Fire Alarm Riser Diagram | 8/1/2014 | None |
| E-0.6 | Fire Alarm Calculations | 8/1/2014 | None |
| E-0.7 | Electrical Details | 8/1/2014 | None |
| E-0.8 | Enlarged Electrical Room Details | 8/1/2014 | None |
| E-0.9 | Electrical Power Distributions Forms | 8/1/2014 | None |
| E1-1.0 | 1st Floor - North Lighting Plan | 8/1/2014 | None |
| E1-1.1 | 1st Floor - South Lighting Plan | 8/1/2014 | None |
| E1-1.2 | 2nd Floor - North Lighting Plan | 8/1/2014 | None |
| E1-1.3 | 2nd Floor - South Lighting Plan | 8/1/2014 | None |
| E1-2.0 | 1st Floor - North Power Plan | 8/1/2014 | None |
| E1-2.1 | 1st Floor- South Power Plan | 8/1/2014 | None |
| E1-2.2 | 2nd Floor - North Power Plan | 8/1/2014 | None |
| E1-2.3 | 2nd Floor - South Power Plan | 8/1/2014 | None |
| E1-3.0 | 1st Floor - North Signal Plan | 8/1/2014 | None |
| E1-3.1 | 1st Floor- South Signal Plan | 8/1/2014 | None |
| E1-3.2 | 2nd Floor - North Signal Plan | 8/1/2014 | None |
| E1-3.3 | 2nd Floor - South Signal Plan | 8/1/2014 | None |
| E1-4.0 | 1st Floor - North Fire Alarm Plan | 8/1/2014 | None |
| E1-4.1 | 1st Floor - South Fire Alarm Plan | 8/1/2014 | None |
| E1-4.2 | 2nd Floor - North Fire Alarm Plan | 8/1/2014 | None |
| E1-4.3 | 2nd Floor - South Fire Alarm Plan | 8/1/2014 | None |
| E1-5.0 | Roof Electrical Plan | 8/1/2014 | None |
| E1-6.0 | Panel Schedules | 8/1/2014 | None |
| E1-6.1 | Panel Schedules | 8/1/2014 | None |
| E1-6.2 | Panel Schedules | 8/1/2014 | None |
| E1-6.3 | Panel Schedules and Electrical Details | 8/1/2014 | None |
| E1-7.0 | Lighting Control Diagram | 8/1/2014 | None |
| E1-7.1 | Lighting Control Details | 8/1/2014 | None |
| E1-T24-1 | Interior Title-24 Calculations | 8/1/2014 | None |
| E1-T24-2 | Exterior Title-24 Calculations | 8/1/2014 | None |
| E1-T24-3 | Interior Title-24 Calculations | 8/1/2014 | None |
| E1-T24-4 | Exterior Title-24 Calculations | 8/1/2014 | None |
| E6-1.1 | Central Plant Electrical Plan | 8/8/2016 | Addendum 1 |
| 1 of 1 | Southern California Edison - Final Design | 8/19/2016 | Addendum 2 |
| **FIRE PROTECTION** | | | |
| FP-0.1 | Fire Protection General Notes | 11/24/2014 | None |

| SHEET No. | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|-----------|-------|----------------------|--------------------|
| FP-0.2 | Site Plan | 11/24/2014 | None |
| FP1-1.0 | 1st Floor - Fire Sprinkler Piping Plan | 11/24/2014 | None |
| FP1-1.1 | 2nd Floor - Fire Sprinkler Piping Plan | 11/24/2014 | None |
| FP1-2.0 | 1st Floor - Fire Sprinkler Reflected Ceiling Plan | 11/24/2014 | None |
| FP1-2.1 | 2nd Floor - Fire Sprinkler Reflected Ceiling Plan | 11/24/2014 | None |
| FP1-3.0 | Fire Stopping Details and Piping Plan Details | 11/24/2014 | None |
| FP1-4.0 | Hanger Details, Sway-Brace Details, and Sway-Brace Calcs | 11/24/2014 | None |
| **INTERIOR DESIGN** | | | |
| ID-1.0 | Interior/Ext Details | 8/19/2016 | Addendum 2 |
| ID-1.1 | Interior Details - Floor Patterns | 8/19/2016 | Addendum 2 |
| ID-1.2 | Interior Details - Sign Locations | 8/19/2016 | Addendum 2 |
| ID-1.3 | Interior Details - Floor Patterning | 8/19/2016 | Addendum 2 |
| ID-2.0 | Interior/Ext Design - Exterior Elevations | 8/19/2016 | Addendum 2 |
| ID-2.1 | Interior/Ext Design - Exterior Elevations | 8/19/2016 | Addendum 2 |
| ID-3.0 | Interior/Ext Design - Interior Elevations | 8/19/2016 | Addendum 2 |
| ID-3.1 | Interior/Ext Design - Interior Elevations | 8/19/2016 | Addendum 2 |

## SPECIFICATIONS

| SECTION | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---------|-------|---------------------|--------------------|
| **DIVISION 00 - PROCUREMENT AND CONTRACTING REQUIREMENTS** | | | |
| 00 01 01 | Project Title Page | 8/1/2015 | None |
| 00 01 05 | Project Directory | 8/1/2015 | None |
| 00 01 07 | Seals Page | 8/1/2015 | None |
| 00 01 10 | Table of Contents | 8/1/2015 | None |
| 00 31 32 | Geotechnical Data | 8/1/2015 | None |
| **DIVISION 01 - GENERAL REQUIREMENTS** | | | |
| 01 10 00 | Summary | 8/1/2015 | None |
| 01 20 00 | Price and Payment Procedures | 8/1/2015 | None |
| 01 30 00 | Administrative Requirements | 8/1/2015 | None |
| 01 31 14 | Facility Services Coordination | 8/1/2015 | None |
| 01 32 16 | Construction Progress Schedule | 8/1/2015 | None |
| 01 35 50 | Requests for Electronic Files | 8/1/2015 | None |
| 01 35 53 | Security Procedures | 8/1/2015 | None |
| 01 40 00 | Quality Requirements | 8/1/2015 | None |
| 01 41 00 | Regulatory Requirements | 8/1/2015 | None |
| 01 42 19 | Reference Standards | 8/1/2015 | None |
| 01 45 33 | Code-Required Special Inspections | 8/1/2015 | None |
| 01 50 00 | Temporary Facilities and Controls | 8/1/2015 | None |
| 01 52 13 | Field Offices and Sheds | 8/1/2015 | None |
| 01 55 00 | Vehicular Access and Parking | 8/1/2015 | None |
| 01 57 13 | Storm Water Pollution | 8/1/2015 | None |
| 01 57 21 | Indoor Air Quality Controls | 8/1/2015 | None |
| 01 58 13 | Temporary Project Signage | 8/1/2015 | None |
| 01 60 00 | Product Requirements | 8/1/2015 | None |
| 01 6000.01 | Request For Substitution Form | 8/1/2015 | None |
| 01 61 16 | Volatile Organic Compound (VOC) Content Restrictions | 8/1/2015 | None |
| 016116.01 | Accessory Material VOC Content Certification Form | 8/1/2015 | None |
| 01 70 00 | Execution and Closeout Requirements | 8/1/2015 | None |
| 01 74 19 | Construction Waste Management and Disposal | 8/1/2015 | None |
| 01 78 00 | Closeout Submittals | 8/1/2015 | None |
| 01 78 33 | Warranties and Bonds | 8/1/2015 | None |
| 017833.01 | Warranty Form Letter | 8/1/2015 | None |

| SECTION | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---------|-------|----------------------|--------------------|
| 01 79 00 | Demonstration and Training | 8/1/2015 | None |
| 01 91 13 | General Commissioning Requirements | 8/1/2015 | None |
| **DIVISION 02 - EXISTING CONDITIONS** | | | |
| 02 32 00 | Subsurface Investigations | 8/1/2015 | None |
| **DIVISION 03 - CONCRETE** | | | |
| 03 10 00 | Concrete Forming and Accessories | 8/1/2015 | None |
| 03 20 00 | Concrete Reinforcing | 8/1/2015 | None |
| 03 30 00 | Cast-in-Place Concrete | 8/1/2015 | None |
| 03 35 11 | Concrete Floor Finishes | 8/1/2015 | None |
| 03 47 13 | Tilt-Up Concrete | 8/1/2015 | None |
| **DIVISION 04 - MASONRY** | | | |
| 04 05 11 | Masonry Mortaring and Grouting | 8/1/2015 | None |
| 04 20 00 | Unit Masonry | 8/1/2015 | None |
| **DIVISION 05 - METALS** | | | |
| 05 12 00 | Structural Steel Framing | 8/1/2015 | None |
| 05 12 13 | Architecturally Exposed Structural Steel | 8/1/2015 | None |
| 05 31 00 | Steel Decking | 8/1/2015 | None |
| 05 40 00 | Cold Formed Metal Framing | 8/1/2015 | None |
| 05 50 00 | Metal Fabrications | 8/1/2015 | None |
| 05 51 00 | Metal Stairs | 8/1/2015 | None |
| 05 52 13 | Pipe and Tube Railings | 8/1/2015 | None |
| 05 70 00 | Decorative Metal | 8/1/2015 | None |
| **DIVISION 06 - WOOD, PLASTICS, AND COMPOSITES** | | | |
| 06 10 00 | Rough Carpentry | 8/1/2015 | None |
| 06 20 00 | Finish Carpentry | 8/1/2015 | None |
| 06 41 00 | Architectural Wood Casework | 8/1/2015 | None |
| 06 46 40 | Architectural Woodwork Panels | 8/19/2016 | Addendum 2 |
| 06 64 60 | Translucent Resin Panel System | 8/1/2015 | None |
| **DIVISION 07 - THERMAL AND MOISTURE PROTECTION** | | | |
| 07 14 00 | Fluid-Applied Waterproofing | 8/1/2015 | None |
| 07 18 00 | Traffic Coatings | 8/1/2015 | None |
| 07 21 00 | Thermal Insulation | 8/1/2015 | None |
| 07 25 00 | Weather Barriers | 8/1/2015 | None |
| 07 26 16 | Under Slab Vapor Retarder/Barrier | 8/1/2015 | None |
| 07 42 13 | Metal Wall Panels | 8/1/2015 | None |

| SECTION | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| 07 42 64 | Metal Composite Material Wall Panels | 8/1/2015 | None |
| 074264.10 | Metal Composite Cut-To-Fit Wall Panels | 8/1/2015 | None |
| 07 54 00 | Thermoplastic Membrane Roofing | 8/1/2015 | None |
| 07 62 00 | Sheet Metal Flashing and Trim | 8/1/2015 | None |
| 07 62 70 | Exterior Penetration Flashing Panels | 8/1/2015 | None |
| 07 72 00 | Roof Accessories | 8/1/2015 | None |
| 07 84 00 | Firestopping | 8/1/2015 | None |
| 07 90 05 | Joint Sealers | 8/1/2015 | None |
| **DIVISION 08 - OPENINGS** | | | |
| 08 11 13 | Hollow Metal Doors and Frames | 8/1/2015 | None |
| 08 14 16 | Flush Wood Doors | 8/1/2015 | None |
| 08 31 00 | Access Doors and Panels | 8/1/2015 | None |
| 08 40 13 | Fire-Rated Glazed Walls | 8/1/2015 | None |
| 08 41 26 | All-Glass Entrances and Storefronts | 8/1/2015 | None |
| 08 43 13 | Aluminum-Framed Storefronts | 8/1/2015 | None |
| 08 44 13 | Glazed Aluminum Curtain Walls | 8/1/2015 | None |
| 08 56 59 | Service and Teller Window Units | 8/1/2015 | None |
| 08 71 00 | Door Hardware | 8/1/2015 | None |
| 08 80 00 | Glazing | 8/1/2015 | None |
| 08 87 33 | Architectural Decorative Window Films | 8/19/2016 | Addendum 2 |
| **DIVISION 09 - FINISHES** | | | |
| 09 05 61 | Common Work Results for Flooring Preparation | 8/1/2015 | None |
| 09 21 16 | Gypsum Board Assemblies | 8/19/2016 | Addendum 2 |
| 09 22 16 | Non-Structural Metal Framing | 8/1/2015 | None |
| 092226.23 | Metal Suspension System | 8/1/2015 | None |
| 092236.23 | Metal Lath | 8/1/2015 | None |
| 09 24 00 | Portland Cement Plastering | 8/1/2015 | None |
| 09 30 00 | Tiling | 8/1/2015 | None |
| 09 51 00 | Acoustical Ceilings | 8/19/2016 | Addendum 2 |
| 09 65 00 | Resilient Flooring | 8/19/2016 | Addendum 2 |
| 09 67 00 | Fluid-Applied Floorings | 8/1/2015 | None |
| 09 68 00 | Carpeting | 8/19/2016 | Addendum 2 |
| 09 68 13 | Tile Carpeting | 8/19/2016 | Addendum 2 |
| 09 72 00 | Wall Coverings | 8/19/2016 | Addendum 2 |
| 09 77 33 | Glass Giber Reinforced Plastic Panels | 8/1/2015 | None |
| 09 90 00 | Painting and Coating | 8/1/2015 | None |

| SECTION | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---------|-------|----------------------|--------------------|
| 09 96 00 | High-Performance Coatings | 8/1/2015 | None |
| **DIVISION 10 - SPECIALTIES** | | | |
| 10 11 01 | Visual Display Boards | 8/1/2015 | None |
| 10 11 24 | Tackable Wall Systems | 8/1/2015 | None |
| 10 14 00 | Signage | 8/19/2016 | Addendum 2 |
| 10 14 01 | Signage Schedule | 8/19/2016 | Addendum 2 |
| 10 14 53 | Traffic and Parking Signage | 8/1/2015 | None |
| 102113.19 | Plastic Toilet Compartments | 8/1/2015 | None |
| 10 2226.33 | Folding Panel Partitions | 8/1/2015 | None |
| 10 26 41 | Ballistic Resistant Panels | 8/19/2016 | Addendum 2 |
| 10 28 00 | Toilet Accessories | 8/1/2015 | None |
| 10 44 00 | Fire Protection Specialties | 8/19/2016 | Addendum 2 |
| 105626.13 | Mobile Storage system | 8/19/2016 | Addendum 2 |
| 108213.10 | Exterior Metal Architectural Screen | 8/1/2015 | None |
| **DIVISION 11 - EQUIPMENT** | | | |
| 11 31 00 | Residential Appliances | 8/1/2015 | None |
| 11 47 00 | Ice Machines | 8/1/2015 | None |
| 11 52 13 | Projection Screens | 8/19/2016 | Addendum 2 |
| **DIVISION 12 - FURNISHINGS** | | | |
| 12 24 00 | Window Shades | 8/19/2016 | Addendum 2 |
| 12 36 00 | Countertops | 8/19/2016 | Addendum 2 |
| **DIVISION 14 - CONVEYING EQUIPMENT** | | | |
| 14 20 10 | Passenger Elevators | 8/1/2015 | None |
| **DIVISION 21 - FIRE SUPRESSION** | | | |
| 21 13 00 | Automatic Wet-Pipe Fire Sprinkler | 8/1/2015 | None |
| **DIVISION 22 - PLUMBING** | | | |
| 22 05 17 | Sleeves and Sleeve Seals for Plumbing Piping | 8/1/2015 | None |
| 22 05 18 | Escutcheons for Plumbing Piping | 8/1/2015 | None |
| 22 05 19 | Meters and Gages for Plumbing Piping | 8/1/2015 | None |
| 220523.12 | Ball Valves for Plumbing Piping | 8/1/2015 | None |
| 220523.14 | Check Valves for Plumbing Piping | 8/1/2015 | None |
| 22 05 29 | Hangers and Supports for Plumbing Piping and Equipment | 8/1/2015 | None |
| 22 05 48 | Vibration & Seismic Controls for Plumbing Piping & Equipment | 8/1/2015 | None |
| 22 05 53 | Identification for Plumbing Piping and Equipment | 8/1/2015 | None |
| 22 07 19 | Plumbing Piping Insulation | 8/1/2015 | None |

| SECTION | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---|---|---|---|
| 22 11 16 | Domestic Water Piping | 8/1/2015 | None |
| 22 11 19 | Domestic Water Piping Specialties | 8/1/2015 | None |
| 22 11 23 | Domestic Water Pumps | 8/1/2015 | None |
| 22 13 16 | Sanitary Waste and Vent Piping | 8/1/2015 | None |
| 22 13 19 | Sanitary Water Piping Specialties | 8/1/2015 | None |
| 22 14 13 | Facility Storm Drainage Piping | 8/1/2015 | None |
| 22 14 23 | Storm Drainage Piping Specialties | 8/1/2015 | None |
| 22 33 00 | Electric, Domestic Water-Heaters | 8/1/2015 | None |
| 224213.13 | Commercial Water Closets | 8/1/2015 | None |
| 224213.16 | Commercial Urinals | 8/1/2015 | None |
| 224216.13 | Commercial Lavatories | 8/1/2015 | None |
| 224216.16 | Commercial Sinks | 8/1/2015 | None |
| 22 42 23 | Commercial Showers | 8/1/2015 | None |
| 22 47 13 | Drinking Fountains | 8/1/2015 | None |
| DIVISION 23 - HEATING, VENTILATING, AND AIR CONDITIONING (HVAC) | | | |
| 23 05 13 | Common Motor Requirements for HVAC Equipment | 8/1/2015 | None |
| 23 05 16 | Expansion Fittings and Loops for HVAC Piping | 8/1/2015 | None |
| 23 05 17 | Sleeves and Sleeve Seals for HVAC Piping | 8/1/2015 | None |
| 23 05 18 | Escutcheons for HVAC Piping | 8/1/2015 | None |
| 23 05 19 | Meters and Gages for HVAC Piping | 8/1/2015 | None |
| 23 05 23 | General Duty Valves for HVAC Piping | 8/1/2015 | None |
| 23 05 29 | Hangers and Supports for HVAC Piping and Equipment | 8/1/2015 | None |
| 23 05 48 | Vibration and Seismic Controls for HVAC Piping and Equipment | 8/1/2015 | None |
| 23 05 53 | Identification for HVAC Piping and Equipment | 8/1/2015 | None |
| 23 05 93 | Testing, Adjusting and Balancing for HVAC | 8/1/2015 | none |
| 23 07 13 | Duct Insulation | 8/1/2015 | None |
| 23 07 19 | HVAC Piping Insulation | 8/1/2015 | None |
| 23 09 00 | Instrumentation and Control | 8/1/2015 | None |
| 23 21 13 | Hydronic Piping | 8/1/2015 | None |
| 2321 13.13 | Underground Hydronic Piping | 8/1/2015 | None |
| 23 21 16 | Hydronic Piping Specialties | 8/1/2015 | None |
| 23 23 00 | Refrigerant Piping | 8/1/2015 | None |
| 23 31 13 | Metal Ducts | 8/1/2015 | None |
| 23 33 00 | Air Duct Accessories | 8/1/2015 | None |
| 23 34 23 | HVAC Power Ventilators | 8/1/2015 | None |
| 23 37 13 | Diffusers, Registers and Grilles | 8/1/2015 | None |

| SECTION | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---------|-------|----------------------|--------------------|
| 23 41 00 | Particulate Air Filtration | 8/1/2015 | None |
| 23 73 13 | Modular Indoor Central-Station Air-Handling Units | 8/1/2015 | None |
| 23 81 26 | Split-System Air-Conditioners | 8/1/2015 | None |
| 23 82 19 | Fan Coil Units | 8/1/2015 | None |
| **DIVISION 26 - ELECTRICAL** | | | |
| 26 05 00 | Electrical General Provisions | 8/1/2015 | None |
| 26 05 05 | Basic Electrical Materials and Methods | 8/1/2015 | None |
| 26 05 30 | Conduit and Wire | 8/1/2015 | None |
| 26 09 23 | Lighting Control System | 8/1/2015 | None |
| 26 24 10 | Switchboards | 8/1/2015 | None |
| 26 24 15 | Panelboards and Terminal Cabinets | 8/1/2015 | None |
| 26 36 00 | Automatic Transfer Switch | 8/1/2015 | None |
| 26 50 05 | Light Fixtures | 8/1/2015 | None |
| **DIVISION 27 - COMMUNICATIONS** | | | |
| 27 41 00 | Video Projection Systems | 8/1/2015 | None |
| 27 50 00 | Computer Networking Cabling System | 8/19/2016 | Addendum 2 |
| 27 51 00 | Portable Assistive Listening Systems | 8/1/2015 | None |
| 27 51 13 | Paging System | 8/1/2015 | None |
| **DIVISION 28 - ELECTRONIC SAFETY AND SECURITY** | | | |
| 28 13 00 | Access Control | 8/1/2015 | None |
| 28 31 00 | Fire Alarm | 8/1/2015 | None |
| 28 50 00 | Intrusion Detection System | 8/19/2016 | Addendum 2 |
| **DIVISION 31 - EARTHWORK** | | | |
| 31 10 00 | Site Clearing | 8/1/2015 | None |
| 31 22 00 | Grading | 8/1/2015 | None |
| 31 23 16 | Excavation | 8/1/2015 | None |
| 312316.13 | Trenching | 8/1/2015 | None |
| 31 23 23 | Fill | 8/1/2015 | None |
| **DIVISION 32 - EXTERIOR IMPROVEMENTS** | | | |
| 32 11 23 | Aggregate Base Courses | 8/1/2015 | None |
| 32 12 16 | Asphalt Paving | 8/1/2015 | None |
| 32 13 13 | Concrete Paving | 8/1/2015 | None |
| 321313.43 | Pervious Concrete Paving | 8/1/2015 | None |
| 32 15 41 | Stabilized Decomposed Granite | 8/1/2015 | None |
| 32 17 13 | Parking Bumpers | 8/1/2015 | None |
| 321723.13 | Painted Pavement Markings | 8/1/2015 | None |

| SECTION | TITLE | LATEST DOCUMENT DATE | REVISION INDICATOR |
|---------|-------|----------------------|--------------------|
| 32 17 26 | Tactile Warning Surfacing | 8/1/2015 | None |
| 32 31 11 | Sliding Gate Operator | 8/1/2015 | None |
| 32 31 13 | Chain Link Fences and Gates | 8/1/2015 | None |
| 32 31 19 | Ornamental Metal Fences and Gates | 8/1/2015 | None |
| **DIVISION 33 - UTILITIES** | | | |
| 33 05 13 | Manholes and Structures | 8/1/2015 | None |
| 33 11 16 | Site Water Distribution Piping | 8/1/2015 | None |
| 33 13 00 | Disinfecting of Water Utility Distribution | 8/1/2015 | None |
| 33 31 11 | Site Sanitary Sewerage Piping | 8/1/2015 | None |
| 33 41 11 | Site Storm Drainage System | 8/1/2015 | None |
| 33 46 00 | Subdrainage | 8/1/2015 | None |

## ADDENDA

The following Addenda are incorporated in this Agreement by this reference, with the same force and effect as if the same were set forth at length herein, and that Subcontractor and his subcontractors will be and are bound by any and all of said Addenda insofar, as they relate in any part or in any way, directly or indirectly to the work covered by this Agreement. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Addenda, to the extent of the work provided for in this Agreement, and that where, in the Addenda reference is made to Contractor and the work or specification therein pertains to Subcontractor's trade, craft, or type of work then such work or specification shall be interpreted to apply Subcontractor instead of Contractor.

- ADD1_RRC - Addendum 001, dated 8/8/2016
- ADD2_BER - Addendum 002, dated 8/19/2016
- ADD2_RRC - Addendum 002, dated 8/19/2016

## ADDITIONAL DOCUMENTS

- Geotechnical Report - PSUSD - New Admin Building, dated 12/11/2014
- BIM Guidelines V01, dated 8/19/2016

*** End of Attachment "A" ***

15 of 15

## A. PAYMENT

1. Progress Payments: Contractor shall, within seven (7) days of receipt of progress payments from Owner which relate to Subcontractor's performance under this Agreement, pay to Subcontractor the difference between the agreed upon value of the work performed by Subcontractor under this Agreement for the pay period in question and the retention amount. The retention amount shall be calculated as retention percentage, as defined in Special Provisions section of this Agreement, multiplied by the agreed upon value of the work performed by Subcontractor under this Agreement for the pay period in question.

2. Final Payment: The final payment amount, including any unpaid retention, shall be paid to Subcontractor within seven (7) days after the payment of such amount by Owner to Contractor.

3. Subcontractor agrees to furnish, if and when required at any time by Contractor, payroll affidavits, receipts, vouchers, and releases of claims for labor, material and equipment, for: (1) itself and each of Subcontractor's suppliers of labor, material, and (or) equipment and (2) every lower-tier subcontractor performing work and furnishing materials under this Agreement, and such lower-tier subcontractor's suppliers of labor, material, and (or) equipment; all in a form satisfactory to Contractor. It is agreed that no payment hereunder shall be made, except at Contractor's option, until and unless all such payroll affidavits, receipts, vouchers, and releases of claims for labor, material and equipment, or any of them, have been furnished. Contractor shall have the right, but not the obligation, to issue joint checks to Subcontractor and any sub-subcontractors and/or suppliers. Any payment made hereunder prior to completion and acceptance of the work shall not be construed as evidence of acceptance of any part of Subcontractor's work. In the event of delayed payment or non-payment by Owner, Subcontractor agrees that its claim for payment against Contractor (and the surety on any payment bond applicable to Contractor) shall be suspended and abated, on an interest-free basis, until such time as Contractor has had the opportunity to fully exhaust all of its legal remedies for payment against Owner, Owner's property and /or any construction lender to Owner. Nothing herein shall be deemed to limit Subcontractor's separate mechanic's lien or stop notice rights against the project property or funds.

4. The Contractor will be utilizing the Textura™ CPM system for this project. The Textura system allows the Contractor to automate subcontractor invoicing and collection of lien waivers, as well as automated tracking of compliance documents and electronic payments, by inputting everything in electronic format into a third party website. Textura streamlines the entire payment application process improving process efficiency for both the Contractor and the Subcontractors. Subcontractor shall be responsible for the costs associated with Subcontractor's use of the Textura™ CPM payment management system. Subcontractor shall include a similar provision in its sub-tier subcontracts and purchase orders.

5. In an effort to streamline the payment process, Subcontractor will furnish a detailed breakdown of the Contract Price within ten (10) days of Subcontractor's receipt of this Agreement. The cost breakdown shall be itemized as directed by Contractor and shall include apportioned amounts for progressive clean-up, punch-list and close-out documentation. Upon Contractor's approval, the breakdown shall be incorporated into the Textura™ CPM system which will then be utilized throughout the project for progress billings. No other form of Subcontractor billing will be accepted. Contractor retains the right to modify the cost breakdown at any time should a reasonable doubt arise regarding the accuracy of the cost breakdown and/or the Subcontractor's ability to complete the work for the amounts then unpaid.

6. On or about the 20th day of any month within which Subcontractor has performed work for which Subcontractor is entitled to be paid, Contractor shall issue an invitation to Subcontractor to submit an Application for Payment utilizing the Textura™ CPM system. Within three (3) working days from receipt of the invitation, Subcontractor shall input their Application for Payment into the Textura™ CPM system along with such supporting detail as may be reasonably required by Contractor. The Application for Payment amount may project the work to be completed by Subcontractor through the last working day of the month unless otherwise provided in the Contract Documents. Billing percentages and amounts are subject to Owner/Contractor approval. If requested by Contractor, Subcontractor agrees to provide

reasonable evidence that the Subcontractor's work can be completed for the unpaid balance of the Subcontract. Such evidence may include, but is not limited to: certified statements of accounting from material suppliers, equipment suppliers or sub-tier subcontractors; and/or copies of purchase agreements, purchase orders, or sub-tier subcontracts that relate to the project.

7. If Subcontractor does not receive an invitation to submit an Application for Payment but believes it is entitled to be paid for work performed during that month, Subcontractor shall notify Contractor's Project Manager by no later than the 25th day of that month. Should Subcontractor fail to submit an Application for Payment within three (3) days from receipt of an invitation or, fail to notify Contractor's Project Manager by the 25th day of that month, Subcontractor waives payment from Contractor for that month.

8. With each request for Application for Payment, Subcontractor shall use the Textura™ CPM system to create and electronically sign all required lien waivers corresponding to the payment requested.

9. It is Contractor's policy that all labor, material suppliers, equipment suppliers, labor organizations, and sub-tier subcontractors are paid directly by Subcontractor <u>without</u> the need for joint checks. Contractor will require proper conditional or unconditional releases from sub-tier subcontractors which have filed Preliminary Notices prior to a monthly progress payment, or final payment, being issued to Subcontractor. Contractor may also require proper conditional or unconditional releases from sub-tier subcontractors who have not filed Preliminary Notices prior to a monthly progress payment, or final payment, being issued to Subcontractor.

10. If approved in advance by the Owner, payments may be made on account of materials and equipment delivered and suitably stored at the project site for subsequent incorporation in the work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Subcontractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site at a bonded warehouse. The amount of materials and equipment delivered and stored at the project site shall be limited in amount to what a reasonably prudent Subcontractor would pre-purchase and shall be subject to the prior-written approval of the Owner, Contractor and Lender. The Subcontractor shall also comply with the following specific requirements:

   a. Materials shall not be stored off site without prior-written approval of the Owner and Contractor.

   b. Title to such materials shall be vested in the Owner, as evidenced by documentation satisfactory in form and substance to the Owner and the Lender, including, without limitation, recorded financing statements, UCC filings and UCC searches.

   c. With each Application for Payment, the Subcontractor shall submit to the Contractor a written list identifying each location where materials are stored off the project site and the value of materials at each location. The Subcontractor shall procure insurance satisfactory to the Owner for materials stored off the project site in an amount not less than the total value thereof.

   d. The consent of any surety shall be obtained to the extent required prior to payment for any materials stored off the project site.

   e. The Contractor, Owner, the Owner's Representative and the Lender shall have the right to make inspection of the storage areas at any time.

   f. Such stored materials shall be (a) protected from conversion, destruction, theft and damage to the satisfaction of the Contractor, Owner, the Owner's Representative and the Lender, (b) specifically marked for use on the Project, and (c) segregated from other materials at the storage facility.

## B. SUBMITTALS

1. Subcontractor shall furnish all samples, shop drawings, schedules, as-built drawings, product data, mock-ups, equipment data, warranties, catalog cuts, and/or descriptive literature as required by, and in accordance with, the Contract Documents. Complete packages shall be sent to the attention of the Contractor's Project Engineer at the Jobsite Construction Office. Submittals shall be made in a timely manner as to allow for the approval process and to prevent any delays due to lack of proper approval. All costs related to duplicating and shipping said submittals are the responsibility of the Subcontractor. Subcontractor shall provide the Contractor with applicable UPS, Federal Express or Golden State account numbers for this purpose.

   a. All submittals requiring approval shall be certified by Subcontractor's authorized representative as fully complying with the requirements of the Contract Documents. Deviations from the requirements of the Contract Documents are strongly discouraged. Any and all proposed substitutions or variances shall be clearly identified at the time of submission.

   b. Within one week from the Subcontract date, Subcontractor shall submit to the Contractor a complete list of all samples, shop drawings and other submittals which will require approval, showing anticipated submittal date and required lead-time after approval for ordering, fabrication and delivery of all material. Subcontractor shall promptly report to Contractor any deviation from this schedule and when requested by Contractor, shall furnish confirmation of scheduled deliveries from Subcontractor's material suppliers.

   c. Unless specifically indicated otherwise in this Agreement, Subcontractor shall provide all required submittals, in quantities and format required by Contractor, to the Contractor within twenty-one (21) days of the date of this Agreement (with the exception of O&M manuals, close-out submittals and mockups). All submittals must be certified by the Subcontractor that all information complies with the Contract Documents prior to submission to the Contractor. Any submittal that has not been certified will be returned to the Subcontractor and any cost/scheduling impact caused by the failure to provide submittals in accordance with the project schedule will be the sole responsibility of the Subcontractor.

2. Subcontractor is aware that substitutions are strongly discouraged and will not be permitted without compelling reasons or benefit to Owner and Contractor. Substitutions shall be submitted no later than two (2) weeks from the date of this Agreement and must follow the procedures set forth in the project specifications. No time extension will be granted to the Subcontractor for rejected substitution requests.

## C. GENERAL

1. The insurance requirements for this Agreement are as outlined in Attachment D to this Agreement.

2. In the event any portion of Subcontractor's work requires Subcontractor to furnish design services, Subcontractor shall engage a qualified and properly licensed professional to provide such services. Any and all such design services shall be performed well in advance of the scheduled performance of the work and with adequate time to obtain all necessary approvals from the Owner, Architect, Contractor and any authority having jurisdiction over the work. Further, Subcontractor agrees to provide Contractor with appropriate certificates of professional liability insurance as outlined herein for all such elements of design work.

3. Subcontractor shall protect all existing work which may be damaged by Subcontractor's operations and shall not damage surrounding areas including existing elements including utilities, exterior planted areas, hardscape, streets, building elements, or interior adjoining spaces and finishes.

4. Subcontractor agrees to attend (at minimum) weekly coordination meetings with Contractor and other Subcontractors throughout the course of the project. Such coordination meetings shall be scheduled by

the Contractor and Subcontractor shall provide qualified personnel that are empowered to make decisions on behalf of the Subcontractor while actively participating in the discussions and resolution of meeting issues at hand.

5. This project may implement the use of the Last Planner System™ during the construction phase. Subcontractor will be required to participate in this process. The Last Planner System™, developed by the Lean Construction Institute (www.leanconstruction.org), is a structured and systematic approach to collaborative workflow planning and control that heavily involves Supervisors responsible for execution. Planning sessions will be scheduled at selected phases of the project with the following required attendees, objective and process:

   a. Attendees: "Primary" representative is the Supervisor (Superintendent, General Foreman, or Foreman) that is responsible for execution of work. "Secondary" representatives include those possessing information necessary for effective planning, those having responsibility to support execution, as well as those wishing to gain a better understanding of how the work will flow (Project Manager, Field Engineer, Scheduler/Planner, etc.)

   b. Objective: To develop an optimal workflow plan by combining the best available information with the experience, knowledge and expertise of those responsible for execution.

   c. Process: The participants will collaboratively: (i) Define the Scope for the Phase. (ii) Plan the workflow "from scratch" using Post-It notes on a wall, paying particular attention to identifying handoffs between specialists and capturing logic(including lag/lead time), durations and crew sizes. (iii) Identify constraints for each activity and a plan to manage them such the work can flow according to the plan without interruption.

   d. Preparation: Participants should obtain and familiarize themselves with the best available information as necessary to enable them to effectively participate in/make decisions and overall contribute to the process described above. .

6. Subcontractor agrees to furnish Contractor copies of Daily Progress Reports prepared by Subcontractor's Field Foreman every work day by 8 AM for the previous day's work. Said reports shall be delivered to Contractor's field office, and shall provide details of Subcontractor's work including the following:

   a. Date
   b. Number and Classification of Tradesman
   c. Equipment Used
   d. Materials Delivered
   e. Work Performed
   f. Location of Work Performed
   g. Safety Issues

   Failure to provide Contractor with such reports on a daily basis will serve as grounds to withhold an appropriate sum from Subcontractor's progress payments, until such matters are remedied to the satisfaction of the Contractor.

7. The following information is provided for Preliminary Notice purposes:

| | |
|---|---|
| Project: | District Administration Center |
| Owner: | Palm Springs Unified School District<br>980 E. Taquitz Canyon Way<br>Palm Springs, Ca 92262 |
| Original:<br>(Prime Contractor) | Bernards Bros., Inc.<br>555 First Street<br>San Fernando, Ca 91340 |

4 of 19

(818) 898-1521
(818) 361-9208 Fax

Lender:          Palm Springs Unified School District
                 980 E. Taquitz Canyon Way
                 Palm Springs, Ca 92262

8.   Subcontractor agrees to abide by the rules regulating any "reserved gate" system(s), which may be established during the project to maintain harmonious labor relations. Subcontractor agrees to reimburse Contractor for all costs incurred if the requirements are not followed and the gate system(s) become "contaminated" by Subcontractor.

9.   In addition to the provisions regarding progressive cleanup of Subcontractor's work defined in other sections, Subcontractor agrees to participate in the weekly cleaning of project site utilizing a composite crew. Such participation shall include a minimum weekly level of staffing of eight (8) hours of clean up labor during intervals of Subcontractor's work at the site if Subcontractor's crew size is ten (10) or less. Subcontractor's participation effort shall increase proportionately whenever the Subcontractor's average crew size for a given week exceeds ten (10). For each additional increment of ten (10) tradesmen working onsite during the past week, Subcontractor shall provide one additional man-day to the composite clean-up crew. Failure to participate in this clean-up program will serve as grounds for Contractor to provide like staffing on Subcontractor's behalf, and to charge Subcontractor for such expenses pursuant to the provisions of this Agreement.

10.  Within ten (10) days from the date of this Agreement, and prior to commencing work on this project, Subcontractor shall provide Contractor with a listing of hourly rates that are proposed to be used for any changed work on this project. The list shall include the straight time rates, as well as overtime rates of all tradesmen including foremen. Rates shall be broken down to the satisfaction of the Contractor and the Owner. These rates will be checked and verified against the Industry Average Rates. Once accepted and approved by the Contractor and Owner, these rates will be used for the duration of the Project for any additive or deductive changed work. In the event Subcontractor utilizes a supplemental labor classification with an industry standard rate less than the rate accepted and approved by the Contractor and Owner, Subcontractor shall provide a supplemental labor rate submittal for approval and incorporation into the pricing for additions to the work scope.

11.  Absent any applicable provisions in the Prime Contract which are otherwise controlling, the following percentage markups apply to changed work performed or credited by Subcontractor for its overhead and profit to be added to or credited against the direct cost of a scope change. Subcontractor shall be entitled to a five percent (5%) markup/reduction for changed work impacted directly by its own forces. For any scope change work performed or credited by a sub-tier subcontractor to Subcontractor, the markup/reduction applicable for overhead and profit to Subcontractor shall be five percent (5%). All markups/reductions shall apply to the net sum of additions and credits applicable to a defined scope change. No Subcontractor of any tier shall be entitled to a markup/reduction to their firm which exceeds five percent (5%) of their direct cost of a scope change. For Subcontractor and sub-tier subcontractors of any tier, the change order markup / reduction shall include all incidental overhead support costs including, but not limited to, all home office overhead; personnel costs for executive management, indirect supervision, project management, estimating, scheduling, purchasing, accounting, and any other personnel not on the project site full time; general and professional liability insurance; bonds; change order processing costs; as-built impacts; warranty impacts; and small tools.

12.  Subcontractor shall provide all environmental protection required for work under this Agreement in accordance with applicable Federal, State, County, and Municipal laws. Subcontractor agrees to comply with the project's Storm Water Pollution Prevention Plan (SWPPP) and implement Best Management Practices to prevent environmental damage and to handle accidental spills or discharges.

13.  Subcontractor shall provide its on-site supervisory personnel with cell phones and shall provide Contractor with the cell phone numbers.

14. Subcontractor shall have a competent English speaking representative on-site at all times during its work. The Subcontractor on-site representative shall be an employee of the Subcontractor. Contractor reserves its right to have Subcontractor's representative removed from the jobsite for justification (uncooperative, inexperienced, combative, unorganized, etc.).

15. Inappropriate behavior by Subcontractor's workforce, or any of its sub-tier subcontractors, such as cat calls, offensive comments or clothing, loitering outside the work area, profanity, radios or other entertainment devices, etc., will not be tolerated. The Contractor reserves the right to have any Subcontractor or its sub-tier subcontractor employee removed permanently from the project.

16. Subcontractor agrees to attend scheduled punch list walks with representatives of Contractor, Architect and/or Owner until written acknowledgement is obtained by the authorized representative acknowledging the satisfactory correction of all items pertaining to Subcontractor's work. Subcontractor agrees to adequately staff and supervise all aspects of punch list work, diligently prosecute the work to completion, and provide a written status report to Contractor on a weekly basis regarding its progress in correcting all identified elements of work.

17. It will be the responsibility of each Subcontractor to maintain a complete set of current As-Built plans in the Contractor's on-site office or other electronically stored location designated by the Contractor. These plans shall be updated on a daily basis and prior to any backfill or covering operation. If it is determined by Contractor at the time that Subcontractor's monthly payment request is made that the as-builts are not current, the estimated value of the incomplete record documents may be withheld from progress payments until such time as these documents are accurately updated. At the completion of the project Subcontractor shall provide As-Builts to Contractor in accordance with the requirements of the Contract Documents. In the absence of any such requirement in the Contract Documents, Subcontractor shall, at a minimum, scan As-Built plans into an electronic format, copy to a CD and deliver to the Contractor.

18. Subcontractor is aware that the contract documents are complimentary. Subcontractor recognizes and acknowledges that while the documents are not complete in every detail, there is sufficient information to determine the requirements for a complete project and, as such, has included all work clearly depicted and reasonably inferable to produce a complete project for their work, consistent with the character and quality of the design. No exclusion or limitation in the plans and specifications shall be a reason for omitting the work necessary to complete Subcontractor's work.

19. Subcontractor acknowledges that he has visited the location of the work and has familiarized himself with the conditions and made his own estimates regarding access to the work area, maintaining the condition of existing facilities, protection issues, and any difficulties or complexities that may arise in connection with the execution of this work.

20. Subcontractor is responsible for furnishing and installing the work in accordance with any and all current Federal, State and Local Laws, Regulations, Statutes and Codes, Documents, Publications and Standards. In the event of a conflict, more stringent standard shall apply.

21. Subcontractor is aware of existing geotechnical conditions (as described in the project geotechnical report and any amendments thereto), and shall make all provisions to perform its work in accordance with the requirements of the Contract Documents, the project geotechnical reports and any amendments thereto. In the event of a conflict or discrepancy between geotechnical reports and other Contract Document(s), the more stringent shall apply.

22. Subcontractor shall immediately lock in all material and equipment pricing with their vendors and sub-tier subcontractors upon execution of this Agreement. Subcontractor has made provisions for material price escalation as well as any labor increase and acknowledges no additional compensation will be granted for labor or material price escalation for the duration of this project.

23. Subcontractor shall conduct surveys, constructability reviews, site verification, layout and similar studies of the project prior to commencing its work to validate the Contract Documents and existing conditions are suitable to perform its work without cost or schedule impact. Such reviews and verification activities shall be diligently and promptly performed to accommodate resolution of any inquiries or discrepancies,

submittal preparation and processing, and material procurement without impact to the construction schedule.

24. Subcontractor will participate in Pre-Installation Conferences as required for their scope of work. Further, Subcontractor will participate in the Project Quality Assurance and Quality Control Program and dedicate personnel to this effort.

25. Subcontractor's bid proposal, with any listed inclusions, exclusions and/or clarifications is superseded by this Agreement.

26. Subcontractor shall coordinate and receive all deliveries related to the work of this Agreement. Subcontractor's representative must be on-site to accept, unload, inventory and stage all materials/deliveries. Materials arriving at site without Subcontractor's representative will not be accepted by the Contractor and will not be allowed on-site. The Subcontractor shall provide all necessary receiving, freight, hoisting and rigging, distribution, and protection required for the delivery and installation of materials and equipment for the complete performance of the work. Subcontractor shall perform all loading and unloading of its materials.

27. Subcontractor shall be responsible for all safety equipment, practices and procedures related to its work as necessary to comply with any and all safety ordinances. Contractor may also direct additional safety measures to mitigate any potential danger unique to the project. In the event Subcontractor does not comply with requests for safety procedures or equipment, or if any Subcontractor employee refuses to comply with such safety procedures, such actions may result in the offending parties being permanently removed from the project.

28. Employees of this Subcontractor shall take breaks and lunches as a group in one centralized location that has been specifically designated and approved by the Contractor's Superintendent. Trash cans, bags and daily cleanup at these areas shall be the responsibility of the Subcontractor.

29. Since inclement weather is foreseeable during operations of this trade, this Subcontractor shall use its best efforts to leave the site in a condition that minimizes the effects caused by inclement weather.

30. Subcontractor shall be responsible for maintaining their equipment, materials, and work in a neat, clean, orderly, and safe condition at all times. Contractor is not responsible for any damage, vandalism, theft or malicious mischief to Subcontractor's equipment, stored materials or installed work. This also includes Subcontractor's employee vehicles.

31. Schedule shall be in accordance with Contractor's schedule and all subsequent revisions. Subcontractor confirms that all equipment and materials will be delivered in accordance with Contractor's schedule, and that delivery dates consider adequate submittal and fabrication durations. Subcontractor acknowledges the critical nature of the project schedule and agrees to expedite any materials and equipment as needed. Subcontractor to provide cost loading information if required by Contract Documents.

32. Whenever it becomes apparent that any activity's completion date may not be met for reasons due to Subcontractor, the Subcontractor shall take some or all of the following actions at no additional cost to the Owner or the Contractor:

    a. Increase construction manpower in such quantities as will substantially eliminate the backlog of work and put the project back on schedule.

    b. Increase the number of working hours per shift, shifts per working day, working days per week, or the amount of construction equipment, or any combination of the foregoing which will substantially eliminate the backlog of work and put the project back on schedule.

    c. Reschedule activities to achieve maximum practical concurrency of accomplishment of activities and put the project back on schedule.

33. Installation of work in more than one area at a time may be required. Installation in completely open areas cleared of all other trades and all stored materials cannot be guaranteed. Subcontractor is

required to work closely with the Contractor to coordinate the installation of its work with the work of others. Out of sequence work may be required.

34. Subcontractor shall not change its superintendent or foreman assigned to this project without the written approval of the Contractor, unless that individual is no longer employed by the Subcontractor.

35. Subcontractor includes field measuring and coordination with other related and/or adjacent trades to ensure proper fit and function.

36. Immediately following the issuance of any worklist and/or punchlist, Subcontractor shall diligently prosecute the work to complete all items to the satisfaction of the issuing party. In no event shall the completion of such items extend beyond a period of time that would extend the completion date of the project. This includes lists prepared by the Contractor, the Owner, the Architect, and/or Consultants.

37. The Subcontractor warrants to the Owner, the Owner's Representative and Architect that materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the work will be free from defects not inherent in the quality required or permitted, and that the work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. If required by the Owner, the Owner's Representative or the Architect, the Subcontractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

38. All work shall be guaranteed for a period of one (1) year (unless noted otherwise in the contract documents, the more stringent applies) after the date of Substantial Completion, unless otherwise agreed upon in writing by the Owner and the Contractor. All warranties shall include equipment, materials and labor. As a condition precedent to final acceptance of the work by the Owner and prior to receiving final payment for the work by the Contractor, the Subcontractor shall warrant in writing to the Owner that it will repair or replace any or all of that portion of the work performed by such Subcontractor, together with any other work which may be displaced, damaged or marred in so doing, that may prove defective in materials or workmanship or fail to conform to Contract provisions and requirements, all without any additional expense to the Owner or Contractor. Except as otherwise required in the Contract Documents, including requirements for the use of recycled or environmentally friendly products and materials in the work, the Subcontractor shall warrant all work in place as new work. The Subcontractor shall use its best efforts to assist the Owner and Contractor in enforcing the warranties of its sub-tier subcontractors, manufacturers and suppliers. In the event that best efforts to have sub-tier warranty work performed fail, the Subcontractor shall warrant the work and perform all warranty work itself. The warranties shall not be construed to modify or limit, in any way, any rights or actions which the Owner or Contractor may otherwise have against the Subcontractor by law or statute, or in equity. All warranties, including all equipment warranties, will inure to the benefit of the Owner and the Owner's successors and assigns.

39. All equipment warranties shall begin on the date of Substantial Completion, as defined by the Contract Documents, regardless of when the equipment was started for temporary use, testing or permanent use, unless the Owner executes a special acceptance agreement for each piece of equipment relinquished for his beneficial use.

40. Subcontractor is aware of the site constraints and limited space for stored material. Contractor may also determine at any time that stored materials will not be allowed on the project site. Subcontractor shall coordinate and deliver on-site storage materials with Contractor prior to delivery. Subcontractor shall provide the proper equipment, personnel, and traffic control required for all offloading of materials and equipment. Subcontractor shall take the appropriate measures to offload and store materials in a manner that prevents damage to the materials, damage to the adjacent improvements, and/or soiling of the materials that may result in cleaning and/or an unsuitable condition for use at the project. All locations for stockpiling of onsite materials shall be as directed by the Contractor and Subcontractor may be required to relocate its stored materials at its expense anytime during the course of the project. Subcontractor is responsible to protect and secure its stored materials.

41. Subcontractor is required to provide and pay for all necessary licenses, notices, and trade permits and shall pay all for fees and inspections necessary for the proper execution and completion of its work and the cost of same is included in the Subcontract price.

42. Subcontractor will provide traffic control for its own operations as well as that of its suppliers for any interruption of vehicular traffic. This includes, but is not limited to, traffic control plans, flagmen, barricades, and other conditions as may be required. Equipment and Material deliveries and/or pickups shall only occur as approved and permitted by the City or the County having jurisdiction and any other applicable party having jurisdiction. Deliveries shall also be coordinated with and approved by the Contractor's jobsite Superintendent.

43. Unless noted otherwise in this Agreement, temporary power will be available at centralized locations and limited to 120V/208V single-phase power, on each floor of the building, during regular working hours. If the Subcontractor requires power in locations other than those provided, then the Subcontractor will be responsible for the associated connection and disconnection costs. Additional power required for welding, or in excess of that provided by the Contractor, shall be provided by the Subcontractor. Subcontractor shall provide all extension cords required for its work. Connections will be the Subcontractors responsibility. In addition, Contractor will provide temporary lighting in accordance with Cal OSHA standards; Subcontractor shall provide all necessary task lighting required to complete its work.

44. Subcontractor is responsible to minimize dust migration resulting from his operations including cutting, blowing, hammering, trucking, digging, drilling, etc., and must comply with all authorities having jurisdiction.

45. Subcontractor shall remove all markings from exposed concrete or other exposed surfaces used to layout work covered under this contract.

46. All material will have to be free of any and all smudges, marks, stains, space pads, debris or stain. Any dented, scratched, nicked, rusted, corroded, or otherwise damaged material caused by this Subcontractor will be replaced at no additional cost to the Contractor or the Owner.

47. Unless indicated otherwise in the Contract Documents, Subcontractor shall submit Change Order Requests no later than five (5) calendar days after the occurrence of an event giving rise to a Change Order Request. Change Order Requests shall be submitted in writing. Any Change Order Request not made in accordance with these terms shall be deemed waived by the Subcontractor

48. In addition to all other labor related requirements of this Agreement, Subcontractor agrees that if its workers are compensated on a piece-rate basis, Subcontractor shall comply with Labor Code Section 226.2 by using the "safe harbor" option to assure satisfaction of all compensation requirements for all nonproductive labor time. Subcontractor agrees to include this requirement in all sub-tier agreements with its Subcontractors (of all tiers) that include providing labor at the jobsite.

49. Each Subcontractor shall be responsible for his own construction waste and debris, including the proper staging, hauling, disposal, and/or participation in recycling programs in place at the Project. Subcontractor shall coordinate the exact location of bins with Contractor's Superintendent.

50. Subcontractor's workforce may be required to wear identification badges and utilize parking passes during the course of construction. Subcontractor's workforce may be subjected to drug testing and background checks prior to and during the course of the work. If drug testing and/or background checks are required by the Contract Documents Subcontractor shall bear the cost of such items for its workforce.

51. Subcontractor shall ensure only authorized project vehicles and / or delivery vehicles have access to the project site. Subcontractor will be responsible for making sure any truck leaving the Site does not track dirt onto the streets. If Subcontractor's trucks or delivery vehicles track dirt onto the street, Subcontractor will be responsible for cleaning the street by hand or street sweeper as necessary.

52. Subcontractor is aware that this is an existing facility which will remain active and occupied during the course of construction. Subcontractor shall coordinate with the Contractor and the Owner to avoid or minimize the impact to Owners occupancy, operations and events.

53. Subcontractor will provide all layouts required for the performance of the work, using the control lines and benchmarks provided by the Contractor. This will consist of one set of primary grid lines and one elevation benchmark per floor of the building. Additional controls, points, lines, and benchmarks if required shall be the responsibility of the Subcontractor. Damage to control lines and benchmarks by the Subcontractor shall be replaced at the Subcontractor's expense.

54. Subcontractor shall bear all costs for Subcontractor employees' drinking water, ice and its employees parking and transport. The Contractor will provide portable toilets for use by Subcontractor's personnel.

55. Subcontractor is aware that this Project is adjacent to residential neighbors and local businesses which will remain occupied and active during the course of construction. Subcontractor shall coordinate with Contractor and Owner to avoid or minimize the impact to the surrounding neighbor community.

56. Subcontractor will provide temporary ventilation systems, as required by OSHA or other appropriate governmental agencies, for their specific scope of work or task as required to maintain a safe environment and the project schedule. Coordinate system installation and locations with Project Superintendent.

57. Subcontractor shall coordinate and schedule all tests and inspections required by the Contract Documents in writing to the Contractor seventy-two (72) hours prior to the date of requested tests or inspections. Subcontractor shall clearly identify the area and item to be inspected with the Contractor and certify that all requested items are ready for the requested test or inspection. Subcontractor shall be responsible for all costs associated with retesting where the results of inspections, tests or other quality control services prove unsatisfactory and indicate noncompliance with Contract Document requirements, regardless of whether original test was Subcontractor's responsibility. In addition, unless indicated otherwise in the Contract Documents, Subcontractor shall be responsible for the inspector's travel expenses and/or a testing agency's additional expenses as they relate to offsite testing or inspections required by the Contract Documents that are located over fifty (50) miles away from the jobsite.

58. Subcontractor understands that smoking on the Project is not allowed.

59. The Subcontractor, as condition of final payment, will submit to the Contractor a minimum of six (6) sets of notebooks and six (6) digital data storage devices each containing clearly labeled with the Project Information and the following information:

    a. All sub-tier subcontractor, supplier and manufacturer warranties fully executed;

    b. The Subcontractor's warranty and all documents required in this Agreement and Exhibits, which include, but are not limited to, all plans, specifications, mass and rough grading plans, final soils reports, DRE public reports, engineering calculations, maintenance and preventative maintenance recommendations from Subcontractor and related documents;

    c. A list of all sub-tier subcontractors and suppliers who performed work on the Project or who furnished materials for use in the Project, such list to include the name, address, telephone number and responsible person at all such entities; and

    d. An electronic copy of items a through c above.

60. The Subcontractor shall warrant its work and provide forty-eight (48) hour call-back service, and immediate call-back service in emergency situations, for the work, equipment and materials provided by the Subcontractor for a period of a minimum of one year after completion and acceptance of the work; provided, however, such one-year warranty shall be extended where the equipment or building systems/components may be warranted for a period in excess of one year by the manufacturer. Thirty (30) calendar days prior to expiration of the one year warranty period, the Contractor will perform a Project walk-through during which the Owner and Contractor shall walk through the Project in order to

list deficiencies which must be corrected before expiration of the warranty period. Subcontractor has one week to correct any deficiencies identified as Subcontractor's scope of work. If the Subcontractor cannot complete the corrections within the one year warranty period, the warranty period shall be extended for such repair items until they are completed. The Contractor may elect to complete the Subcontractor's work and backcharge the Subcontractor for all associated costs.

61. Working hours are to be in accordance with the City of Palm Springs requirements, which are generally understood to be 7 AM until 7 PM, M-F. Work, which causes noise levels that disturb residents in adjacent dwellings, is subject to be directed to stop at certain times of the day.

### D. PREVAILING WAGE REQUIREMENTS

The following "PREVAILING WAGE/LABOR REQUIREMENTS" form an integral part of this Agreement:

1. All workers employed on public works projects must be paid the prevailing wage determined by the Director of the Department of Industrial Relations according to the type of work and location.

2. Contractors and subcontractors on *all* public works projects are required to submit certified payroll records (CPRs) to the Labor Commissioner unless excused from this requirement. CPRs are furnished to the Labor Commissioner online.

3. In addition to online reporting, *Subcontractor shall submit to Contractor on a weekly basis, not more than seven days from the payroll ending date, Certified Payroll Reports (CPR) for itself and its subcontractors of every tier covering work performed on the project. Such CPR's shall be ink signed by an authorized representative of Subcontractor or its Subcontractor(s) as applicable.*

4. Subcontractor shall, if applicable, file DAS 140 form to the applicable Apprenticeship Committee within 10 days from the date of this agreement.

5. Subcontractor shall, if applicable, file DAS 142 form to the applicable Apprentice Program that can supply apprentices prior to commencing work.

6. Prior to requesting final payment from Contractor, Subcontractor shall provide Contractor with an affidavit generally in the format provided at the end of Attachment B, signed under penalty of perjury. Affidavit shall state that Subcontractor has paid the specified general prevailing wage rate as well as any amounts due pursuant to Section 1813 to his or her employees on the project, and that Subcontractor is not currently under any Labor Compliance investigations on any Public Works projects. Subcontractor shall obtain and submit to Contractor similar affidavits from each of his or her subcontractors of every tier.

7. Any additional requirements, implemented by the Owner or State will be outlined in the Project Administrative Requirements and Labor Compliance Package that will be forwarded to you.

## LABOR CODE SECTIONS:

### 1771 - PREVAILING PER DIEM WAGE REQUIRED

Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, shall be paid to all workers employed on public works.

This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces. This section is applicable to contracts let for maintenance work.

### 1775 - PAYMENT LESS THAN STIPULATED RATE – PENALTY

(a) (1) The contractor and any subcontractor under the contractor shall, as a penalty to the state or political subdivision on whose behalf the contract is made or awarded, forfeit not more than two hundred dollars ($200) for each calendar day, or portion thereof, for each worker paid less than the prevailing wage rates as determined by the director for the work or craft in which the worker is employed for any public work done under the contract by the contractor or, except as provided in subdivision (b), by any subcontractor under the contractor.

(2) (A) The amount of the penalty shall be determined by the Labor Commissioner based on consideration of both of the following:

(i) Whether the failure of the contractor or subcontractor to pay the correct rate of per diem wages was a good faith mistake and, if so, the error was promptly and voluntarily corrected when brought to the attention of the contractor or subcontractor.

(ii) Whether the contractor or subcontractor has a prior record of failing to meet its prevailing wage obligations.

(B) (i) The penalty may not be less than forty dollars ($40) for each calendar day, or portion thereof, for each worker paid less than the prevailing wage rate, unless the failure of the contractor or subcontractor to pay the correct rate of per diem wages was a good faith mistake and, if so, the error was promptly and voluntarily corrected when brought to the attention of the contractor or subcontractor.

(ii) The penalty may not be less than eighty dollars ($80) for each calendar day, or portion thereof, for each worker paid less than the prevailing wage rate, if the contractor or subcontractor has been assessed penalties within the previous three years for failing to meet its prevailing wage obligations on a separate contract, unless those penalties were subsequently withdrawn or overturned.

(iii) The penalty may not be less than one hundred twenty dollars ($120) for each calendar day, or portion thereof, for each worker paid less than the prevailing wage rate, if the Labor Commissioner determines that the violation was willful, as defined in subdivision (c) of Section 1777 .1

(C) If the amount due under this section is collected from the contractor or subcontractor, any outstanding wage claim under Chapter 1 (commencing with Section 1720) of Part 7 of Division 2 against that contractor or subcontractor shall be satisfied before applying that amount to the penalty imposed on that contractor or subcontractor pursuant to this section.

(D) The determination of the Labor Commissioner as to the amount of the penalty shall be reviewable only for abuse of discretion.

(E) The difference between the prevailing wage rates and the amount paid to each worker for each calendar day or portion thereof for which each worker was paid less than the prevailing wage rate shall be paid to each worker by the contractor or subcontractor, and the body awarding the contract shall cause to be inserted in the contract a stipulation that this section will be complied with.

(b) If a worker employed by a subcontractor on a public works project is not paid the general prevailing rate of per diem wages by the subcontractor, the prime contractor of the project is not liable for any penalties under subdivision (a) unless the prime contractor had knowledge of that failure of the subcontractor to pay the specified prevailing rate of wages to those workers or unless the prime contractor fails to comply with all of the following requirements:

(1) The contract executed between the contractor and the subcontractor for the performance of work on the public works project shall include a copy of the provisions of this section and Sections 1771, 1776, 1777.5, 1813, and 1815.

(2) The contractor shall monitor the payment of the specified general prevailing rate of per diem wages by the subcontractor to the employees, by periodic review of the certified payroll records of the subcontractor.

(3) Upon becoming aware of the failure of the subcontractor to pay his or her workers the specified prevailing rate of wages, the contractor shall diligently take corrective action to halt or rectify the failure, including, but not limited to, retaining sufficient funds due the subcontractor for work performed on the public works project.

(4) Prior to making final payment to the subcontractor for work performed on the public works project, the contractor shall obtain an affidavit signed under penalty of perjury from the subcontractor that the subcontractor has paid the specified general prevailing rate of per diem wages to his or her employees on the public works project and any amounts due pursuant to Section 1813.

(c) The Division of Labor Standards Enforcement shall notify the contractor on a public works project within 15 days of the receipt by the Division of Labor Standards Enforcement of a complaint of the failure of a subcontractor on that public works project to pay workers the general prevailing rate of per diem wages.

1776 - PAYROLL RECORDS REQUIRED

(a) Each contractor and subcontractor shall keep accurate payroll records, showing the name, address, social security number, work classification, straight time and overtime hours worked each day and week, and the actual per diem wages paid to each journeyman, apprentice, worker, or other employee employed by him or her in connection with the public work. Each payroll record shall contain or be verified by a written declaration that it is made under penalty of perjury, stating both of the following:

(1) The information contained in the payroll record is true and correct.

(2) The employer has complied with the requirements of Sections 1771, 1811, and 1815 for any work performed by his or her employees on the public works project.

(b) The payroll records enumerated under subdivision (a) shall be certified and shall be available for inspection at all reasonable hours at the principal office of the contractor on the following basis:

(1) A certified copy of an employee's payroll record shall be made available for inspection or furnished to the employee or his or her authorized representative on request.

(2) A certified copy of all payroll records enumerated in subdivision (a) shall be made available for inspection or furnished upon request to a representative of the body awarding the contract, the Division of Labor Standards Enforcement of the Department of Industrial Relations.

(3) A certified copy of all payroll records enumerated in subdivision (a) shall be made available upon request by the public for inspection or for copies thereof. However, a request by the public shall be made through either the body awarding the contract or the Division of Labor Standards Enforcement. If the requested payroll records have not been provided pursuant to paragraph (2), the requesting party shall, prior to being provided the records, reimburse the costs of preparation by the contractor, subcontractors, and the entity through which the request was made. The public may not be given access to the records at the principal office of the contractor.

(c) Unless required to be furnished directly to the Labor Commissioner in accordance with paragraph (3) of subdivision (a) of Section 1771.4, the certified payroll records shall be on forms provided by the Division of Labor Standards Enforcement or shall contain the same information as the forms provided by the division. The payroll records may consist of printouts of payroll data that are maintained as computer records, if the printouts contain the same information as the forms provided by the division and the printouts are verified in the manner specified in subdivision (a).

(d) A contractor or subcontractor shall file a certified copy of the records enumerated in subdivision (a) with the entity that requested the records within 10 days after receipt of a written request.

(e) Except as provided in subdivision (f), any copy of records made available for inspection as copies and furnished upon request to the public or any public agency by the awarding body or the Division of Labor Standards Enforcement shall be marked or obliterated to prevent disclosure of an individual's name, address, and

social security number. The name and address of the contractor awarded the contract or the subcontractor performing the contract shall not be marked or obliterated. Any copy of records made available for inspection by, or furnished to, a multiemployer Taft-Hartley trust fund (29 U.S.C. Sec. 186(c) (5)) that requests the records for the purposes of allocating contributions to participants shall be marked or obliterated only to prevent disclosure of an individual's full social security number, but shall provide the last four digits of the social security number.. Any copy of records made available for inspection by, or furnished to, a joint labor management committee established pursuant to the federal Labor Management Cooperation Act of 1978 (29 U.S.C. Sec. 175a) shall be marked or obliterated only to prevent disclosure of an individual's social security number.

(f) (1) Notwithstanding any other provision of law, agencies that are included in the Joint Enforcement Strike Force on the Underground Economy established pursuant to Section 329 of the Unemployment Insurance Code and other law enforcement agencies investigating violations of law shall, upon request, be provided nonredacted copies of certified payroll records. Any copies of records or certified payroll made available for inspection and furnished upon request to the public by an agency included in the Joint Enforcement Strike Force on the Underground Economy or to a law enforcement agency investigating a violation of law shall be marked or redacted to prevent disclosure of an individual's name, address, and social security number.

(2) An employer shall not be liable for damages in a civil action for any reasonable act or omission taken in good faith in compliance with this subdivision.

(g) The contractor shall inform the body awarding the contract of the location of the records enumerated under subdivision (a), including the street address, city and county, and shall, within five working days, provide a notice of a change of location and address.

(h) The contractor or subcontractor has 10 days in which to comply subsequent to receipt of a written notice requesting the records enumerated in subdivision (a). In the event that the contractor or subcontractor fails to comply within the 10-day period, he or she shall, as a penalty to the state or political subdivision on whose behalf the contract is made or awarded, forfeit one hundred dollars ($100) for each calendar day, or portion thereof, for each worker, until strict compliance is effectuated. Upon the request of the Division of Labor Standards Enforcement, these penalties shall be withheld from progress payments then due. A contractor is not subject to a penalty assessment pursuant to this section due to the failure of a subcontractor to comply with this section.

(i) The body awarding the contract shall cause to be inserted in the contract stipulations to effectuate this section.

(j) The director shall adopt rules consistent with the California Public Records Act, (Chapter 3.5 (commencing with Section 6250), of Division 7 of Title 1 of the Government Code) and the Information Practices Act of 1977 (Title 1.8 (commencing with Section 1798) of Part 4 of Division 3 of the Civil Code) governing the release of these records, including the establishment of reasonable fees to be charged for reproducing copies of records required by this section.

### 1777.5 - APPRENTICES -- EMPLOYMENT UPON PUBLIC WORKS

(a) Nothing in this chapter shall prevent the employment of properly registered apprentices upon public works.

(b) Every apprentice employed upon public works shall be paid the prevailing rate of per diem wages for apprentices in the trade to which he or she is registered and shall be employed only at the work of the craft or trade to which he or she is registered.

(c) Only apprentices, as defined in Section 3077, who are in training under apprenticeship standards that have been approved by the Chief of the Division of Apprenticeship Standards and who are parties to written apprentice agreements under Chapter 4 (commencing with Section 3070) of Division 3 are eligible to be employed at the apprentice wage rate on public works. The employment and training of each apprentice shall be in accordance with either of the following:

(1) The apprenticeship standards and apprentice agreements under which he or she is training.

(2) The rules and regulations of the California Apprenticeship Council.

(d) When the contractor to whom the contract is awarded by the state or any political subdivision, in performing any of the work under the contract, employs workers in any apprenticeable craft or trade, the contractor shall employ apprentices in at least the ratio set forth in this section and may apply to any apprenticeship program in the craft or trade that can provide apprentices to the site of the public work for a certificate approving the contractor under the apprenticeship standards for the employment and training of apprentices in the area or industry affected. However, the decision of the apprenticeship program to approve or deny a certificate shall be subject to review by the Administrator of Apprenticeship. The apprenticeship program or programs, upon approving the contractor, shall arrange for the dispatch of apprentices to the contractor. A contractor covered by an apprenticeship program's standards shall not be required to submit any additional application in order to include additional public works contracts under that program. "Apprenticeable craft or trade," as used in this section, means a craft or trade determined as an apprenticeable occupation in accordance with rules and regulations prescribed by the California Apprenticeship Council. As used in this section, "contractor" includes any subcontractor under a contractor who performs any public works not excluded by subdivision (o).

(e) Prior to commencing work on a contract for public works, every contractor shall submit contract award information to an applicable apprenticeship program that can supply apprentices to the site of the public work. The information submitted shall include an estimate of journeyman hours to be performed under the contract, the number of apprentices proposed to be employed, and the approximate dates the apprentices would be employed. A copy of this information shall also be submitted to the awarding body if requested by the awarding body. Within 60 days after concluding work on the contract, each contractor and subcontractor shall submit to the awarding body, if requested, and to the apprenticeship program a verified statement of the journeyman and apprentice hours performed on the contract. The information under this subdivision shall be public. The apprenticeship programs shall retain this information for 12 months.

(f) The apprenticeship program that can supply apprentices to the area of the site of the public work shall ensure equal employment and affirmative action in apprenticeship for women and minorities.

(g) The ratio of work performed by apprentices to journeymen employed in a particular craft or trade on the public work may be no higher than the ratio stipulated in the apprenticeship standards under which the apprenticeship program operates where the contractor agrees to be bound by those standards, but, except as otherwise provided in this section, in no case shall the ratio be less than one hour of apprentice work for every five hours of journeyman work.

(h) This ratio of apprentice work to journeyman work shall apply during any day or portion of a day when any journeyman is employed at the jobsite and shall be computed on the basis of the hours worked during the day by journeymen so employed. Any work performed by a journeyman in excess of eight hours per day or 40 hours per week shall not be used to calculate the ratio. The contractor shall employ apprentices for the number of hours computed as above before the end of the contract or, in the case of a subcontractor, before the end of the subcontract. However, the contractor shall endeavor, to the greatest extent possible, to employ apprentices during the same time period that the journeymen in the same craft or trade are employed at the jobsite. Where an hourly apprenticeship ratio is not feasible for a particular craft or trade, the Administrator of Apprenticeship, upon application of an apprenticeship program, may order a minimum ratio of not less than one apprentice for each five journeymen in a craft or trade classification.

(i) A contractor covered by this section that has agreed to be covered by an apprenticeship program's standards upon the issuance of the approval certificate, or that has been previously approved for an apprenticeship program in the craft or trade, shall employ the number of apprentices or the ratio of apprentices to journeymen stipulated in the applicable apprenticeship standards, but in no event less than the 1-to-5 ratio required by subdivision (g).

(j) Upon proper showing by a contractor that he or she employs apprentices in a particular craft or trade in the state on all of his or her contracts on an annual average of not less than one hour of apprentice work for every five hours of labor performed by journeymen, the Administrator of Apprenticeship Standards may grant a certificate exempting the contractor from the 1-to-5 hourly ratio, as set forth in this section for that craft or trade.

(k) An apprenticeship program has the discretion to grant to a participating contractor or contractor association a certificate, which shall be subject to the approval of the Administrator of Apprenticeship, exempting the contractor from the 1-to-5 ratio set forth in this section when it finds that any one of the following conditions is met:

(1) Unemployment for the previous three-month period in the area exceeds an average of 15 percent.

(2) The number of apprentices in training in the area exceeds a ratio of 1 to 5.

(3) All training contributions received pursuant to this subdivision shall be deposited in the Apprenticeship Training Contribution Fund, which is hereby created in the State Treasury. Upon appropriation by the Legislature, all moneys in the Apprenticeship Training Contribution Fund shall be used for the purpose of carrying out this subdivision and to pay the expenses of the Department of Industrial Relations.

(4) Assignment of an apprentice to any work performed under a public works contract would create a condition that would jeopardize his or her life or the life, safety, or property of fellow employees or the public at large, or the specific task to which the apprentice is to be assigned is of a nature that training cannot be provided by a journeyman.

(l) When an exemption is granted pursuant to subdivision (k) to an organization that represents contractors in a specific trade from the 1-to-5 ratio on a local or statewide basis, the member contractors shall not be required to submit individual applications for approval to local joint apprenticeship committees, if they are already covered by the local apprenticeship standards.

(m) (1) A contractor to whom a contract is awarded, who, in performing any of the work under the contract, employs journeymen or apprentices in any apprenticeable craft or trade shall contribute to the California Apprenticeship Council the same amount that the director determines is the prevailing amount of apprenticeship training contributions in the area of the public works site. A contractor may take as a credit for payments to the council any amounts paid by the contractor to an approved apprenticeship program that can supply apprentices to the site of the public works project. The contractor may add the amount of the contributions in computing his or her bid for the contract.

(2) At the conclusion of the 2002-03 fiscal year and each fiscal year thereafter, the California Apprenticeship Council shall distribute training contributions received by the council under this subdivision, less the expenses of the Department of Industrial relations for administering this subdivision, by making grants to approved apprenticeship programs for the purpose of training apprentices. The funds shall be distributed as follows:

(A) If there is an approved multiemployer apprenticeship program serving the same craft or trade and geographic area for which the training contributions were made to the council, a grant to that program shall be made.

(B) If there are two or more approved multiemployer apprenticeship programs serving the same craft or trade and geographic area for which the training contributions were made to the council, the grant shall be divided among those programs based on the number of apprentices registered in each program.

(C) All training contributions not distributed under subparagraphs (A) and (B) shall be used to defray the future expenses of the Department of Industrial Relations for the administration and enforcement of apprenticeship standards and requirements under this code.

(3) All training contributions received pursuant to this subdivision shall be deposited in the Apprenticeship Training Contribution Fund, which is hereby created in the State Treasury. Upon appropriation by the Legislature, all moneys in the Apprenticeship Training Contribution Fund shall be used for the purpose of carrying out this subdivision to pay the expenses of the Department of Industrial Relations.

(n) The body awarding the contract shall cause to be inserted in the contract stipulations to effectuate this section. The stipulations shall fix the responsibility of compliance with this section for all apprenticeable occupations with the prime contractor.

(o) This section does not apply to contracts of general contractors or to contracts of specialty contractors not bidding for work through a general or prime contractor when the contracts of general contractors or those specialty contractors involve less than thirty thousand dollars ($30,000).

(p) An awarding body that implements an approved labor compliance program in accordance with subdivision (b) of Section 1771.5 may, with the approval of the director, assist in the enforcement of this section under the terms and conditions prescribed by the director.

## 1813 - WORKING HOURS VIOLATIONS -- PENALTY

The contractor or subcontractor shall, as a penalty to the state or political subdivision on whose behalf the contract is made or awarded, forfeit twenty-five dollars ($25) for each worker employed in the execution of the contract by the respective contractor or subcontractor for each calendar day during which the worker is required or permitted to work more than 8 hours in any one calendar day and 40 hours in any one calendar week in violation of the provisions of this article. In awarding any contract for public work, the awarding body shall cause to be inserted in the contract a stipulation to this effect. The awarding body shall take cognizance of all violations of this article committed in the course of the execution of the contract, and shall report them to the Division of Labor Standards Enforcement.

## 1815 - OVERTIME -- COMPENSATION

Notwithstanding the provisions of Sections 1810 to 1814, inclusive, of this code, and notwithstanding any stipulation inserted in any contract pursuant to the requirements of said sections, work performed by employees of contractors in excess of 8 hours per day, and 40 hours during any one week, shall be permitted upon public work upon compensation for all hours worked in excess of 8 hours per day at not less than 1 1/2 times the basic rate of pay.

**Affidavit Pursuant to California Labor Code Section 1775**

Project Name: _____

Contract No. _____


The undersigned on behalf of Subcontractor hereby certifies that Subcontractor has paid the specified general prevailing wage rate of per diem wages to his or her employees on this public work project and any amounts due pursuant to
California Labor Code Section 18.13.


I declare under penalty of perjury that the forgoing is true and correct.


Subcontractor: _____

Signed:         _____

Title:          _____

Date:           _____


**Complete and submit this form to Contractor when requesting final payment.**

---

GENERAL WORK DESCRIPTION: **Earthwork, Demolition, Clearing and Grubbing**

SPECIFICATION SECTION(S): **Division 00 – Procurement and Contracting Requirements, Division 01 –** General Requirements, **Division 02** – Existing Conditions, 31 10 00 – Site Clearing, 31 22 00 – Grading, 31 23 16 – Excavation, 31 23 16.13 – Trenching, 31 23 23 – Fill, Division 32 – Exterior Improvements, **Division 33 – Utilities, All Specifications Sections as Applicable, Introductory Documents, Bidding Documents, Contract Requirements.**

---

SPECIFIC PROVISIONS

Subcontractor agrees to furnish all labor, services, materials, installation, cartage, hoisting, supplies, insurance, equipment, scaffolding, tools and other facilities of every kind and description required for the prompt and efficient execution of the work described herein and to perform the work necessary or incidental to complete the work listed above for the project in strict accordance with the Contract Documents. The work of this Subcontract is more particularly, though not exclusively, shown throughout the drawings and/or as identified in the specification sections listed above and the applicable portions of any other related specification sections within the Contract Documents. The following clarifies certain inclusions, exclusions, and other information. This Attachment is not inclusive of all work and is not limiting in any manner. This Attachment shall supersede any conflicting provisions in this subcontract or within the Contract Documents.

<u>INCLUSIONS</u> - Subcontractor also includes:

1.  Performing all of the following on-site and off-site work: demolition; clearing and grubbing; mass excavation; import; export; over-excavation; re compaction; grading; backfill. All work shall be performed in accordance with the Contract Documents and Geotechnical Report dated December 11, 2014 (PN 10879.001).

2.  All Demolition as required by the Contract Documents. Demolition included but is not limited to all offsite disposal of existing hardscape, existing landscape trees/bushes/plants, underground utilities, concrete paving (including fire lane), curbs, gutters, side walk, fences, gates, light poles/bases, footings, irrigation, existing debris, etc., as required by the Contract Documents. Subcontractor includes all associated saw cutting as required by these services. Contractor will verify and coordinate all demolition limits with new work shown on Contract Documents, including but not limited to AS-0.1 and Civil drawings. Included Curb and gutter cuts, demolition, and removal of asphalt paving as required for new entrances or improvements on "Chase Place" "San Joaquin Drive".

3.  Excavation, compaction, grading, and placement of engineered fill as required for building pad. Include provision for (10) day period of pre watering site prior to grading activities.

4.  Backfilling, compacting and grading around the building footings, masonry walls and planter areas.

5.  Excavation, compaction and grading for concrete curbs, asphalt paving and hardscape. Provide gutter and "curb cuts" as required. Subcontractor specifically includes backfill of curbs.

6.  Fine grading selected areas of the site, including backfill of planted areas using onsite soils. Finish grade shall be established by Contractor as required for soil amendments. Compaction shall be in accordance with Contract Documents and field inspection requirements.

7.  "Dressing up" of site after underground utility, electrical, irrigation, and installation.

8.  Re-grading parking lot areas immediately prior to commencement of paving operations.

1 of 5

9.   Exporting all garbage, demolition material, abandoned pipes or excavated debris and rocks created by the site demolition, earthwork.  Subcontractor shall not bury any existing improvements.

10.   All import/export of soils shall be provided at all required elevations as defined by the Contract Documents in conjunction with all existing elevations.

11.   All grading for building pads and site work as required to install subsequent work without additional grading.  Subcontractor acknowledges that it has carefully reviewed all Contract Documents and shall provide final building pad elevations (and appropriate undercuts) to accommodate the work by others.  Subcontractor agrees to balance the site.

12.   Coordination of pad certification with surveyor and geotechnical inspector.

13.   Export all surplus spoils including foundation and utility trench spoils.  Spoils created by other trades shall be stockpiled in one location to be removed by Subcontractor.

14.   Provide a 35-40 foot wide pathway around building pad for crane access.  Include regrading or dressing up this area after crane access is no longer necessary. This included the construction of an earthen ramp for access if required.

15.   A limited amount of soil may be stockpiled onsite only to the extent required for backfill operations. The locations of stockpiles shall be determined by Contractor.  The size and location of the stockpile shall not affect site access and staging operations that are required by other crafts.

16.   Over-excavation and re-compaction below elevator pits as required by the Contract Documents.

17.   All over-excavation and re-compaction as indicated on the Contract Documents.  Comply with soils

18.   Removal of all trees and tree stumps as required by the Contract Documents.

19.   Include grading of all swales, retention basin and flow lines work as identified in the Contract Documents.

20.   Daily clean-up of streets, sidewalks, and site walkways during this subcontract work operations. This includes street sweepers and water trucks as necessary to comply with SCAQMD regulations.

21.   Protection of all existing hardscape, landscape, structures/utilities/bench marks/miscellaneous items as required to remain in place.  Cut and cap as necessary to maintain utilities to be reused.

22.   Providing flagmen, job conditions and governing agencies.  Subcontractor shall coordinate the time of hauling, loading, and off-loading of equipment as dictated by local authorities.

23.   All signs and services required by AQMD for grading and/or demolition operations.

24.   Obtaining and complying with all AQMD permits, PM10 Rules and Regulations and OSHA requirements.  Subcontractor shall pay all fines and fees from OSHA or AQMD associated with the work of this subcontract.

EXCLUSIONS – Subcontractor excludes the cost of:

1.   Contaminated soil removal.

2.   Hazardous waste or hazardous materials removal.

**Attachment "C"
Scope of Work
PSUSD District Administration Center**

3. Structural excavation or backfill. (unless noted in Inclusions)

4. Paving and base material.

5. All SWPPP

QUALIFICATIONS:

1. Subcontractor is particularly responsible for the earthwork identified and required by the drawings. In the event of a conflict within the drawings or between the drawings and the specifications and soils report, the more stringent requirement shall apply.

2. All dust control while onsite for demolition and grading operations shall be performed by Subcontractor. Site shall be sufficiently wetted by Subcontractor to prevent the need for off-hours dust control at the end of each workday.

3. Subcontractor shall be responsible for preparation and/or submission of all paperwork, haul route maps, and applications as required by the local municipality or governing authority (e.g., AQMD).

4. Prior to commencing work, Subcontractor shall walk the site with Contractor to establish existing conditions, e.g., damaged curbs and raveling. Subcontractor shall remedy any damage resulting from Subcontractor's work. Subcontractor will verify existing grades and match as necessary to accommodate new work.

5. Subcontractor shall provide all intermediate line and grade control as necessary to properly execute and complete the site demolition. Initial survey will be performed by others as follows:

   a. Corner points defining limits of demolition and curb/gutter cuts.

6. Contractor shall provide the following surveying/staking:

   a. Building corners with off-set stakes prior to mass excavation.

   b. Certification of building pad and final building corners.

   c. Parking lot curb staking at 25-foot intervals.

   d. Parking lot blue tops on a 50-foot grid.

   e. Site contour elevation staking at 100-foot intervals.

   Each of the above engineering items will be provided only once. Any additional surveying shall be the responsibility of this Subcontractor. Subcontractor shall protect all stakes and hubs during work operations.

7. The following move-ons are included in this subcontract for the site work only. A minimum of two additional move-ons will be included for any off-site work, if applicable. It is understood that Contractor may change the sequence as required by job conditions.

   ***First Move-On***
   a. Excavate and remove excess soil.
   b. Rough grade building pads and casting slab

### Second Move-On
a. Backfill masonry walls and footings
b. Dress up building pads.
c. Grade crane access road

### Third Move-On
a. Rough grade for paving and hardscape areas
b. Curb cuts
c. Rough grade balance of site

### Forth Move-On
a. Backfill curbs and cutbacks for OSHA safety
b. Backfill planter areas
c. Fine grade site surrounding building.

8.  Subcontractor is responsible for providing water as required for their operations. This includes water trucks, meters, permits, fees, usage costs, adapters, hoses, labor and protection. Include disconnection and removal upon completion of this work. Contractor may choose to transfer temporary water meter for continuous use.

9.  Subcontractor shall verify via pot-holing and the exact location of all utilities and structures that will be encountered during construction. Subcontractor shall take all necessary precautions to prevent disturbing any existing underground utilities and/or structures not to be removed in this scope of work.

10. Subcontractor shall verify existing top grades as shown on the Contract Documents. Failure to notify Contractor of any discrepancies prior to start of work will indicate Subcontractor concurs that site conditions match the Contract Documents.

11. Subcontractor shall comply with Storm Water Pollution Prevention Plan requirements (SWPPP).

12. Should Subcontractor's trenches or other excavations fill partially or completely with water due to weather conditions, ground water, site drainage, or other conditions, Subcontractor shall immediately and continuously pump the water from such trenches and excavations to an appropriate drainage receptacle in accordance with the Best Management Practices of the SWPPP in effect. Thereafter Subcontractor shall immediately "muck-out" and remove soft or unsuitable soils as required by any inspector having jurisdiction over the work including Contractor's superintendent. It is the responsibility of the subcontractor to review upcoming weather conditions and anticipate inclement weather.

13. Subcontractor shall contact "Dig Alert" or similar utility locating service prior to starting any work.

14. It is agreed and understood that work operations shall be performed around various existing trees located on-site. Subcontractor shall take precautions to avoid contact and injury to trees and root systems. Grading around the limits of tree protection shall be accomplished by Subcontractor with light equipment, e.g., skip loaders.

15. All cut slopes of excavation shall be sloped and in compliance with OSHA requirements, soils report/engineer and the Contract Documents. Vertical cuts at the toe of slope (if any) shall not exceed

**Attachment "C"**
**Scope of Work**
**PSUSD District Administration Center**

the maximum height as allowed by OSHA without the requirement of shoring during all phases of construction. A minimum level clear area of 3 feet (or more as required by width of footings) from the toe of slope to the perimeter wall foundations shall be provided for access during construction of foundations and walls. Subcontractor has reviewed the site and confirmed that slope cutting is achievable and no shoring will be required.

SUBMITTAL / SCHEDULE REQUIREMENTS – Submittals shall be furnished in accordance with Attachment B to this Agreement in addition to any requirements specifically listed below.

1. *Submittals are to be submitted within one (1) week of Subcontract Issuance.*

***End of Attachment "C"***

A.    **Contractor Controlled Insurance Program**

Contractor has elected to implement a Contractor Controlled Insurance Program (the "Program") for this Project. The Program will provide Commercial General Liability insurance and Excess Liability insurance (the "Program Coverage"), as summarily described below, to those parties who are properly enrolled in the Program. The Program is more fully described in the Bernards CCIP Insurance Manual ("Insurance Manual") which is incorporated herein by this reference. The Insurance Manual is available on the Bernards Public Workspace for this project which can be accessed as indicated in the cover letter supplied with this Agreement. Subcontractors of any tier performing labor at the Project site must enroll in the Program unless they are Excluded Parties (as defined below).

1.   Definition of Enrolled Parties: The Program will provide Program Coverage to Enrolled Parties. Enrolled Parties are: the Contractor and eligible Subcontractors of all tiers that enroll in the Program and such other persons or entities as Contractor may designate in its sole discretion. For purposes of this Attachment "D", Subcontractors of any tier shall collectively be referred to as "Subcontractor". The enrollment process is described more fully in the Insurance Manual.

2.   Definition of Excluded Parties: The Program does not provide any insurance coverage to the following "Excluded Parties":
     a.   Hazardous materials remediation, removal and/or transport companies and their consultants;
     b.   Architects, surveyors, engineers, and soil testing engineers, and their consultants;
     c.   Vendors, suppliers, fabricators, material dealers, truckers, haulers, drivers, and others who merely transport, pick up, deliver, or carry materials, personnel, parts, or equipment or any other items or persons to or from the Project site;
     d.   Subcontractors whose primary scope of work is demolition for which the initial subcontract amount is $500,000 or greater. Demolition Subcontractors whose initial subcontract amount is less than $500,000, once properly enrolled, will be covered as an Enrolled Party.
     e.   Any Subcontractor that does not perform any actual labor on the Project site, and;
     f.   Any parties or entities excluded by Contractor even if they are otherwise eligible.

3.   Program Insurance Policies Establish Program Coverage: The Program Coverage and exclusions summarized in this Attachment, and in the Insurance Manual, are set forth in full in their respective insurance policy forms. The summary descriptions of the Program Coverage in this Attachment or the Insurance Manual are not intended to be exhaustive, or to alter or amend any provision of Program insurance policies. In the event any provision of this Attachment, the Insurance Manual, or the other contract documents conflicts with the Program insurance policies, the provisions of the Program insurance policies shall govern.

4.   Summary of Program Coverage: Program Coverage shall apply only to those operations of each Enrolled Party performed at the Project site in connection with the Work, and only to Enrolled Parties that are eligible for the Program. Program Coverage shall not apply to ineligible parties, even if they are erroneously enrolled in the Program. An Enrolled Party's operations away from the Project site (including product manufacturing, assembling, transportation, etc.) shall only be covered if such "off-site" operations are identified and are dedicated solely to the Project. Program Coverage shall not cover "off-site" operations until receipt by Subcontractor of written acknowledgment of such coverage from the Program Administrator.

5.   Contractor's Program Obligations: Contractor shall pay the costs of premiums for the Program Coverage including all adjustments to such costs, whether by way of other moneys due, return premiums, audits, or otherwise. Subcontractor hereby assigns, and shall ensure that each of its Sub-Subcontractors will assign to Contractor the right to receive all such adjustments. Contractor's furnishing of Program Coverage shall in no way relieve or limit, or be construed to relieve or limit, Subcontractor of any responsibility, liability, or obligation imposed by the Agreement, other contract

documents, the Program insurance policies, or by law, including without limitation any indemnification obligations which Subcontractors has to Contractor. Contractor reserves the right at its option, without obligation to do so, to furnish other insurance coverage of various types and limits provided that such coverage is not less than that specified in the Agreement or other contract documents.

6. <u>Program Obligations for Eligible Subcontractors</u>.

   a. Subcontractor shall incorporate the terms of this Attachment into all eligible sub-subcontract agreements of every tier ("Sub-Subcontracts").

   b. Within five (5) days from the date of this Agreement and prior to commencing work on this project, Subcontractor shall enroll in the Program and shall maintain enrollment in the Program. Subcontractor agrees to comply with the enrollment procedures set forth in the Insurance Manual which are generally described as electronically entering all required information using the Program Administrator's online enrollment process. This includes, but is not limited to, Subcontractor providing the information contained in the Enrollment Form and Insurance Cost Worksheet which are located in the Insurance Manual.

   c. Contractor shall prepay the premium cost for Subcontractor's enrollment into the Program. Contractor shall be entitled to reimbursement by Subcontractor upon Subcontractor's enrollment into the Program for the premium cost prepaid by Contractor. Subcontractor shall promptly provide the Program Administrator with sufficient documentation necessary to determine the appropriate amount for the cost of insurance provided by the Program for the benefit of Subcontractor. Should Subcontractor fail to provide such documentation, the amount shall be established at one and one-half percent of the Contract Price. Subcontractor's reimbursement to Contractor for the cost of its enrollment into the Program, based solely on the original Contract Price, shall be accomplished by a mutually agreed reduction to Subcontractor's first progress payment following its enrollment into the Program. Subcontractor shall include the cost of the Program Coverage in all change order proposals submitted by this Subcontractor or by any of its sub-subcontractors. A "true-up" adjustment for the cost of Program Coverage based upon change orders to the original Contract Price may occur at interim steps or upon the final completion of Subcontractor's work and the finalization of the Contract Price.

   d. In the event of a claim covered by the Program involving Subcontractor and/or any entity for which Subcontractor is responsible, Subcontractor shall pay Contractor a deductible amount of $5,000 per claim.

   e. Subcontractor shall comply with all of the administrative, safety, insurance, and other requirements outlined in this Attachment, the Insurance Manual, the Program insurance policies, or elsewhere in the Agreement or other contract documents.

   f. Subcontractor shall provide each of its eligible Sub-Subcontractors with a copy of the Insurance Manual and shall ensure its eligible Sub-Subcontractors comply with the provisions of the Program insurance policies, the Insurance Manual, this Attachment, and other contract documents. The failure of Subcontractor to provide each of its eligible Sub-Subcontractors with a copy of same shall not relieve Subcontractor from any of the obligations contained therein.

   g. By entering into the Agreement and/or enrolling in the Program, Subcontractor acknowledges that neither Contractor nor the Program Administrator are agents, partners, or guarantors of the insurance companies (each such insurer, a "Program Insurer"),providing the Program Coverage. Further, neither Contractor nor Program Administrator are responsible for any claims or disputes between or among Subcontractor, its Sub-Subcontractors, and any Program Insurer(s), and that neither Contractor nor the Program Administrator guarantees the solvency or the availability of limits of any Program Insurer(s). Any type of insurance coverage or limits of liability in addition to

the Program Coverage which Subcontractor requires for its or their own protection, or that is required by applicable laws or regulations, shall be Subcontractor's sole responsibility and expense, and shall not be billed to Contractor.

h.  Subcontractor shall fully cooperate with the Program Administrator and the Program Insurers, as applicable, in its or their administration of the Program.

i.  Subcontractor shall provide, within five (5) business days of Contractor's or the Program Administrator's request, all documents or information as requested of Subcontractor. Such information may include, but may not be limited to, certified copies of insurance coverage, declaration pages of coverage, certificates of insurance, underwriting data, prior loss history information, safety records or history, OSHA citations, or such other data or information as Contractor, the Program Administrator, or Program Insurers may request in the administration of the Program, or as required by the Insurance Manual.

7.  <u>Subcontractor's Representations and Warranties to Contractor</u>:  Subcontractor represents and warrants to Contractor:

    a.  That all information it submits to Contractor or to the Program Administrator shall be accurate and complete.

    b.  That it has had the opportunity to read and analyze copies of the Program insurance policies and that it understands the Program Coverage. Any reference or summary in the Agreement, this Attachment, the Insurance Manual, or elsewhere in other contract documents as to amount, nature, type, or extent of Program Coverage and/or potential applicability to any potential claim or loss is for reference only. Subcontractor has not relied upon said reference, but solely upon its own independent review and analysis of the Program Coverage in formulating any understanding and/or belief as to amount, nature, type, or extent of any Program Coverage and/or its potential applicability to any potential claim or loss.

8.  <u>Audits</u>:  Subcontractor agrees that Contractor, the Program Administrator, and/or any Program Insurer may audit any of Subcontractor's or its Sub-Subcontractors' books and records, insurance coverage, insurance cost information, or any other information that Subcontractor provides to the Program Administrator, or the Program Insurers to confirm their accuracy.

9.  <u>Contractor's Election to Modify or Discontinue Program</u>:  Upon such notice by Contractor to modify or discontinue the Program, Subcontractor shall obtain and thereafter maintain at Contractor's expense (to a maximum amount of Subcontractor's previous CCIP Credit), all (or a portion thereof as specified by Contractor) of the Program Coverage. The form, content, limits of liability, cost, and the insurer issuing such replacement insurance shall be subject to Contractor's approval.

10. <u>Waiver of Subrogation</u>:  Where permitted by law, Subcontractor hereby waives all rights of recovery by subrogation or otherwise (including, without limitation, claims related to deductible or self-insured retention clauses, inadequacy of limits of any insurance policy, insolvency of any insurer, limitations or exclusions of coverage), against Owner, Contractor, Contractor's affiliates, the Program Administrator, and any of their respective officers, directors, agents, or employees, and any other subcontractor performing Work or rendering services on behalf of Owner or Contractor in connection with the planning, development and construction of the Project, to the extent of any loss, claim, or damage covered and paid under the Program. Subcontractor shall also require that all insurance coverage related to the Work secured by Subcontractor include similar express waivers and insurance clauses providing that each insurer shall waive all of its rights of recovery by subrogation, or otherwise, against Contractor together with the same parties referenced in the previous sentence. Where permitted by law, Subcontractor shall require similar written express waivers and insurance clauses from each of its Sub-Subcontractors. A waiver of subrogation shall be effective as to any individual or entity even if

such individual or entity (a) would otherwise have a duty of indemnification, contractual or otherwise, (b) did not pay the insurance premium directly or indirectly, and (c) whether or not such individual or entity has an insurable interest in the property damaged.

11. <u>Duty of Care</u>: Nothing contained in this Attachment or in the Insurance Manual shall relieve Subcontractor of its obligation to exercise due care in the performance of its duties in connection with the Work and to complete the Work in strict compliance with other contract documents.

12. <u>Conflicts</u>: In the event of a conflict, the provisions of the Program policies shall govern, then the provisions of this Attachment, then the Agreement and other contract documents, then the provisions of the Insurance Manual.

13. <u>Selection of Counsel</u>: Should a claim be made by any third party, to the extent covered by the Program Coverage, Contractor or Program Insurer shall maintain unilateral authority and entitlement to select counsel to represent the Enrolled Parties' interests. Subcontractor agrees that Contractor or Program Insurer may, in its sole and absolute discretion, select the same defense counsel and expert(s) to defend all insureds. To the fullest extent permitted by law, Subcontractor agrees to waive any potential or actual conflict of interest in the selection of counsel by Contractor or Program Insurer.

14. <u>Safety</u>: Subcontractor shall establish a safety program that, at a minimum, complies with all Federal, state, and local safety standards, and any safety standards established by Contractor for the Project. Copies of Subcontractor's safety programs shall be submitted to Contractor upon request

B. In addition to enrolling in the Program described above, Subcontractor and its Sub-Subcontractors shall also provide the following:

Within five (5) days from the date of this Agreement and prior to commencing work on this project, Subcontractor shall provide Contractor with evidence of the insurance coverage described below which shall be maintained throughout the entire duration of the Project. Evidence shall be furnished by way of a standard Acord form 25-S Certificate of Insurance including copies of all endorsements and exclusions. Additionally, separate endorsements for waiver of subrogation and additional insured shall be furnished as described below. The Certificate of Insurance shall provide for a minimum of 30-day advance written notice to Contractor prior to the revision or cancellation of any policy. Subcontractor shall require any lower tiered subcontract agreements to provide insurance coverage in like forms, amounts and additional insurance requirements to those noted herein. Subcontractor acknowledges that its failure to provide Contractor with fully conforming insurance certifications, endorsements, and exclusions shall serve as grounds for Contractor to withhold payment pending the receipt of satisfactory evidence of conformance to these requirements.

1. Workers' Compensation Insurance reflecting statutory limits (Part A) and $1,000,000 each accident; $1,000,000 disease-policy limit; $1,000,000 disease-each employee as respects Employer's Liability (Part B).

   a. Waiver of Subrogation. The Insurance Company agrees to waive all rights of subrogation against the Owner and Contractor, its elected or appointed officers, officials, agents, and employees for losses paid under the terms of this policy which arise from work performed by Subcontractor for the Owner and/or Contractor.

2. Commercial General Liability Insurance (including contractual liability) for work performed away from the project site with policy Limits of Liability of not less than $3,000,000 Each Occurrence; $3,000,000 Personal/Advertising Injury; $4,000,000 General Aggregate; and $4,000,000 Products/Completed Operations. Limits may be a combination of General Liability and Umbrella/Excess Liability. The insurance policies shall contain the following provisions:

a. An endorsement naming of the Owner, Architect and Contractor and its directors, officers, and employees as additional insureds by use of Standard Insurance Service Office Form CG20100704 and CG20370704 or their equivalent which provide additional insured coverage for both ongoing operations and completed operations.

b. A separate provision that the insurance afforded to Contractor and other additional insureds (as outlined in B.1 above) is primary insurance and that any other insurance maintained by the additional insureds is excess and not contributing insurance with the insurance provided by the Subcontractor.

c. A separate provision that a waiver of subrogation in favor of the additional insureds is included.

d. Coverage for the following, which must be on an OCCURRENCE basis:
   i. Premises and Operations Liability.
   ii. Contractual Liability insuring the Obligations assumed by the Subcontractor in this Subcontract.
   iii. Completed Operations and Products Liability.
   iv. Broad Form Property Damage Liability.
   v. Liability which Subcontractor may incur as a result of the Operations, Acts, or Omissions of its Subcontractors.
   vi. XCU Coverage for Explosion, Collapse, and Underground Hazards.

e. Completed Operations Insurance shall remain in effect for a minimum of five (5) years after substantial completion of the Project.

f. Subcontractor shall provide proof of insurance by an insurance company with a minimum rated of "A-VIII", as rated by the current edition of Best's Key Rating Guide, published by A.M. Best Co.

g. Severability of Interest. The insurance afforded by this policy applies separately to each insured who is seeking coverage or against whom a claim is made or a suit is brought, except with respect to the Company's limit of liability.

h. Deductibles shall not exceed an amount of $50,000 and shall be clearly declared on Subcontractor's Insurance Certificate.

3. Automobile Liability limits of not less than $1,000,000 per accident combined single limit Bodily Injury and Property Damage, including owned, hired and non-owned automobiles. If Subcontractor is responsible for the transport of any hazardous materials, the Subcontractor must provide the following

4.

   a. Endorsement CA 99 48 10 13 (Pollution Liability – Broadened Coverage for Covered Autos)

   b. Endorsement MCS-90 (Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980)

5. Umbrella Liability insurance for work performed away from the project site: Refer to Section B.2. above.

6. Contractor's Equipment: Subcontractor is responsible for its construction trailers, machinery, tools, equipment and other similar property. The policy will contain a waiver of subrogation endorsement in favor of Contractor.

7. Professional Liability: To the extent any portion of Subcontractor's scope of services or work involves Design/Build responsibility or otherwise requires the services of a licensed professional, Subcontractor shall utilize properly licensed professionals to furnish proper designs, calculations, drawings, services,

etc. Further, Subcontractor shall furnish Contractor with evidence of a professional liability insurance policy which insures the subcontractor and the entity providing the professional service with a minimum limit of $1,000,000 applicable to this project from an insurance company and with policy conditions acceptable to Contractor. Deductibles shall not exceed an amount of $ 25,000 and shall clearly be declared on Subcontractor's Certificate of Insurance.

8. Aircraft Liability and Crane Liability: Should Subcontractor's scope of services or work involve the use of aircraft or cranes, Subcontractor shall provide Contractor with proof of Liability insurance from the entity providing the aircraft or crane services which shall name the Owner, Architect and Contractor and its directors, officers, and employees as additional insureds.

C. Insurance Required for Subcontractors that are not eligible for the Contractor Controlled Insurance Program:

Within five (5) days from the date of this Agreement and prior to commencing work on this project, Subcontractor shall provide Contractor with evidence of the insurance coverage described in section B (above) of this Attachment D **for both on-site and off-site operations.** Such insurance shall not contain any wrap-up exclusions and shall be maintained throughout the entire duration of the Project.

D. Builders Risk Insurance

Builders Risk coverage for this project may be provided by others. Subcontractor shall be responsible to pay any deductible amounts required by the Builders Risk policy for any claim arising from or directly caused by Subcontractor's work, acts or omissions of any other entity or party for whom Subcontractor may be responsible.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **MOTION TO APPROVE COMPROMISE WITH BERNARDS BROS. UNDER FRBP 9019; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT S. WHITMORE IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 9, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **October 9, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 9, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> **VIA PERSONAL DELIVERY**
> **PRESIDING JUDGE'S COPY**
> Bankruptcy Judge Honorable Scott H. Yun
> U. S. Bankruptcy Court – Central District
> 3420 Twelfth Street, Suite 345 / Courtroom 302
> Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 9, 2019 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: continued:

- **CREDITOR SANTA MARGARITA WATER DISTRICT:** Caroline Djang caroline.djang@bbklaw.com, julie.urquhart@bbklaw.com; sansanee.wells@bbklaw.com; paul.nordlund@bbklaw.com
- **INTERESTED PARTY COURTESY NEF:** Jeremy Faith Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com; David@MarguliesFaithLaw.com; Victoria@MarguliesFaithlaw.com
- **INTERESTED PARTY MARC C FORSYTHE:** Marc C Forsythe kmurphy@goeforlaw.com, mforsythe@goeforlaw.com; goeforecf@gmail.com
- **ATTORNEY FOR TRUSTEE ROBERT WHITMORE (TR):** D Edward Hays ehays@marshackhays.com, 8649808420@filings.docketbird.com
- **CREDITOR PACIFIC WESTERN BANK:** Kenneth Hennesay    khennesay@allenmatkins.com, ncampos@allenmatkins.com
- **CREDITOR DEVELOPERS SURETY AND INDEMNITY COMPANY, AN AMTRUST GROUP INSURANCE COMPANY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **INTERESTED PARTY COURTESY NEF:** Michael Y Jung on behalf of Interested Party Courtesy NEF jung@luch.com, kbrown@luch.com, kimberley@luch.com
- **INTERESTED PARTY COURTESY NEF:** Leslie K Kaufman on behalf of Interested Party Courtesy NEF kaufman_kaufman.bankruptcy@yahoo.com
- **INTERESTED PARTY COURTESY NEF:** Noreen A Madoyan on behalf of Interested Party Courtesy NEF Noreen@MarguliesFaithLaw.com, Helen@MarguliesFaithlaw.com; Victoria@MarguliesFaithlaw.com; David@MarguliesFaithLaw.com
- **ATTORNEY FOR TRUSTEE ROBERT WHITMORE (TR):** Tinho Mang tmang@marshackhays.com
- **CREDITOR LAW OFFICES OF MICHELLE J. SUKHOV, INC.:** Michelle J Nelson mjslaw@hotmail.com
- **CREDITOR PACIFIC WESTERN BANK:** Scott H Noskin snoskin@mbnlawyers.com, aacosta@mbnlawyers.com
- **CREDITOR PACCAR FINANCIAL CORP.:** Raymond A Policar policarlaw@att.net
- **CREDITOR WELLS FARGO EQUIPMENT FINANCE, INC.:** Richard A Solomon richard@sgswlaw.com
- **DEBTOR MCKENNA GENERAL ENGINEERING, INC.:** Michael G Spector mgspector@aol.com, mgslawoffice@aol.com
- **INTERESTED PARTY COURTESY NEF:** Meghann A Triplett on behalf of Interested Party Courtesy NEF Meghann@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com; Victoria@MarguliesFaithlaw.com; David@MarguliesFaithLaw.com
- **UNITED STATES TRUSTEE (RS):** United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov
- **TRUSTEE FOR BANKRUPTCY ESTATE OF MCKENNA GENERAL ENGINEERING, INC.:** Robert Whitmore (TR) rswtrustee@yahoo.com, rwhitmore@ecf.epiqsystems.com

**2.  SERVED BY UNITED STATES MAIL**: continued:

| DEBTOR | INTERESTED PARTY | INTERESTED PARTY |
|---|---|---|
| MCKENNA GENERAL ENGINEERING, INC. 20330 TEMESCAL CANYON RD CORONA, CA 92881-4944 | BERNARDS BROS. INC. C/O SAL NOL 3633 EAST INLAND EMPIRE BLVD. STE. 800 ONTARIO, CA 91764 | BERNARDS BROS. INC. JEFFREY G. BERNARDS 555 FIRST STREET SAN FERNANDO, CA 91340 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4815-2565-2137, v. 1