1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  CHAD V. HAES, #267221
   chaes@marshackhays.com
3  TINHO MANG, #322146
   tmang@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt
5  Irvine, California 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Chapter 7 Trustee,
   ROBERT S. WHITMORE
8

9              UNITED STATES BANKRUPTCY COURT

10      CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

11

12  In re                          | Case No. 6:18-bk-18036-SY

13  MCKENNA GENERAL ENGINEERING, INC.,   Chapter 7

14                                  MOTION TO APPROVE AGREEMENT
                                    REGARDING COLLECTION OF
15          Debtor.                 RECEIVABLES AND PARTIAL
                                    SUBORDINATION OF LIEN WITH
16                                  PACIFIC WESTERN BANK;
                                    DECLARATION OF ROBERT S.
17                                  WHITMORE IN SUPPORT

18                                  Date:  November 14, 2019
                                    Time:  9:30 a.m.
19                                  Courtroom: 302
                                    Address: 3420 Twelfth Street, Riverside, CA
20                                  92501

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

———————————————————————————————
MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT
4841-2819-4986, v. 1

## TABLE OF CONTENTS

Page

1.   Summary of Argument ...................................................................................................1

2.   Procedural Background..................................................................................................1

A. Statement of Facts .......................................................................................................1

B. PWB Claim ...................................................................................................................3

C. Summary of Agreement ..............................................................................................4

3.   Legal Argument .............................................................................................................5

A.   The Court should approve the Agreement ....................................................5

i.   Probability of success .....................................................................................6

ii.   Difficulties in collection ................................................................................6

iii.   Complexity.......................................................................................................7

iv.   Expense, inconvenience or delay.................................................................7

B.   The Court may approve the Agreement as it relates to cash collateral........................8

C.   The Immediate Payments should be authorized to be paid on an ongoing basis without further order from the Court ...................................................8

D.   The 8% carve-out to the Estate is proper and should be approved ...............................9

i.   Has the Trustee fulfilled his basic duties? ................................................9

ii.   Is there a benefit to the Estate? ..................................................................10

iii.   Have the terms of the Agreement been fully disclosed to the Court? .........................10

4.   Conclusion ....................................................................................................................11

Declaration of Robert S. Whitmore ..........................................................................................12

305247v1/1253-008
4816-1369-4634, v. 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

Page

Cases

*In re A & C Properties*,

784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den., *Martin v. Robinson*, 479 U.S. 854, 107

S.Ct. 189 (1989)…………………………………………………………..………5

*ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*,

242 B.R 497, 502 (B.A.P. 9th Cir. 1999)…………………………………………………..5

*California Aviation, Inc. v. Leeds*,

233 Cal.App.3d 724, 733-35 (1991)……………………………………………………7

*In re GPLA, Inc.*,

2016 Bankr. LEXIS 3085 at *7 (Bankr. C.D. Cal. 2016) (Kwan, J.)…………………………8

*In re KVN Corp.*,

514 B.R. 1, 5, 8 (B.A.P. 9th Cir. 2014)..………………………………….…………………9, 10

*In re Mahoney, Trocki & Associates, Inc.*,

111 B.R. 914, 920 n.6 (Bankr. S.D. Cal. 1990)……………………………..………………7

*ProAlert*,

314 B.R. at 440.…………….....…..……………………………………………...8

*Schmitt v. Ulrich (In re Schmitt)*,

215 B.R. 417, 424 (B.A.P. 9th Cir. 1997) ….………………………………………..……5

*In re Scoggins*,

517 B.R. 206, 222 (Bankr. E.D. Cal. 2014)…..…………………………………………….10

*Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*,

314 B.R. 436, 440 (B.A.P. 9th Cir. 2004)………....……………………………….……7

*In re Tollenaar Holsteins*,

538 B.R. 830, 835-43 (Bankr. E.D. Cal. 2015)…………....…..……………………..…….7

# **TABLE OF AUTHORITIES**

<div align="right"><u>Page</u></div>

<u>Statutes</u>

11 U.S.C. § 108(a) ……………………………………………..……………………..…………7

11 U.S.C. § 326 ……………………………………………………………………….……..4

11 U.S.C. § 363 ……………………………………………………………………….……..11

11 U.S.C. § 363(c)(2). ……………………………………………………………….……8, 9

11 U.S.C. § 506(c)…………………………………………………………….………...….5, 6

11 U.S.C. § 704(a)(1). …………………………………………………………………….9

11 U.S.C. § 704(a)(5). …………………………………………………………………….9

Chapter 7 of Title 11 of the United States Code in the Central District of California …….…..……1

Fed. R. Bankr. Proc. 3009…………….…..……………………………………………….8

Fed. R. Bankr. Proc. 9019……………….…..……………………………………………….5

Rule 9019…………………….…..……………………………………………….…………5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

305247v1/1253-008
4816-1369-4634, v. 1

1    TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY COURT JUDGE,

2    THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

3         Robert S. Whitmore, the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of

4    McKenna General Engineering, Inc. ("Debtor"), respectfully submits this motion ("Motion") to

5    approve agreement for collection of receivables, partial subordination of lien, use of cash collateral,

6    and distribution of proceeds ("Agreement") with Pacific Western Bank ("PWB") and to authorize

7    the immediate disbursement of certain funds to PWB in accordance with the Agreement.

8    **1.     Summary of Argument**

9         The senior secured blanket lienholder in this case, PWB, has filed a notice of interest in

10   accounts receivable and proceeds and non-consent to use cash collateral. Absent consent or a court

11   order, the Trustee is not authorized to use any funds flowing from the collection of accounts

12   receivable in this case. Shortly after the commencement of this case, the Trustee initiated

13   negotiations with PWB for a proposal to partially subordinate PWB's security interest in the

14   Debtor's accounts. The Trustee and PWB have now reached an agreement which provides that 48%

15   of PWB's security interest will be subordinated for payment purposes to the Estate, including an 8%

16   reserve for the benefit of the Estate. Because the approval of the Agreement will provide a sure

17   recovery for unsecured creditors and minimize postpetition interest which may accrue on account of

18   PWB's claim through immediate payments to PWB, the Agreement is reasonable and should be

19   approved by the Court in the best interest of the Estate and creditors.

20   **2.     Procedural Background**

21        **A.     Statement of Facts**

22        On September 21, 2018, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the

23   United States Code in the Central District of California. On the same day, Robert S. Whitmore

24   (previously defined as "Trustee") was appointed as the Chapter 7 Trustee.

25        In its Schedule A/B, Debtor listed a series of outstanding accounts receivables, in the total

26   face amount of $2,081,409.46.

27   / / /

28

1    In Debtor's Schedule D, PWB was listed as a secured creditor with a scheduled secured debt

2    of $950,098.16.

3    On March 11, 2019, as Dk. No. 73, the Trustee filed a motion to approve compromise with

4    Neff Construction to settle the outstanding accounts owed by Neff for the total amount of

5    $114,945.91.

6    On April 8, 2019, as Dk. No. 79, the Court entered an order approving the compromise with

7    Neff. The Trustee subsequently received the settlement payment of $114,945.91.

8    On April 16, 2019, as Dk. No. 81, PWB filed its Notice of Interest in Accounts Receivable

9    and Proceeds and Non-Consent to Use of Cash Collateral and Demand for Segregation of Cash

10   Collateral asserting its Lien against accounts receivable of the Debtor and any proceeds thereof

11   (collectively, the "Collateral").

12   On June 10, 2019, as Dk. No. 87, the Trustee filed a second motion to approve compromise

13   with the Irvine Company to settle the outstanding account owed by the Irvine Company for the total

14   amount of $47,941.96.

15   On July 2, 2019, as Dk. No. 93, the Court entered an order approving the compromise. The

16   Trustee subsequently received the settlement payment of $47,941.96.

17   On August 30, 2019, as Dk. No. 96, the Trustee filed a third motion to approve compromise

18   with the Santa Margarita Water District to settle litigation pending in state court originating from the

19   Debtor's prepetition lawsuit against the Water District related to a construction project.

20   On October 1, 2019, as Dk. No. 104, the Court entered an order approving the compromise.

21   The Trustee subsequently received the settlement payment of $85,000 and filed a request for

22   dismissal of the state court action.

23   On October 9, 2019, as Dk. No. 109, the Trustee filed a fourth motion to approve

24   compromise with Bernards Bros., Inc. to settle the outstanding account owed by Bernards for the

25   total amount of $95,000. The Trustee does not anticipate any objection to this motion and expects to

26   have an order from the Court approving the compromise by the hearing on this motion.

27

28

In total, the Trustee is holding $252,518.51, all of which is subject to the Lien and PWB's security interest. Since the Petition Date, the Trustee has been charged $80.63 in bank fees and bonding costs. The Trustee has to date collected $252,599.14 in accounts subject to the Lien.

The Trustee has sought to engage special collections counsel for a number of the remaining accounts receivables owed to the Debtor, but cannot finalize terms of proposed compensation with special collections counsel (likely on a contingency or hybrid basis) unless the Agreement is approved and the Trustee is authorized to use a portion of PWB's cash collateral for costs of collection.

## B. PWB Claim

On or around September 26, 2012, Debtor executed a promissory note ("Note") in favor of California United Bank ("CUB"), in the amount of $1,000,000, which was due and payable in monthly interest payments, with a maturity date of August 1, 2013.  The Note was amended from time to time A true and correct copy of the Note and subsequent amendments is attached to the Whitmore Declaration as Exhibit "2."

On the same date, Debtor and CUB entered into a security agreement, whereby Debtor granted CUB a security interest in substantially all assets of the Debtor to secure its payment obligations under the Note ("Lien"). A true and correct copy of the security agreement is attached to the Whitmore Declaration as Exhibit "3."

On October 3, 2012, CUB filed a UCC-1 financing statement (Document No. 34832410002) against Debtor, perfecting its Lien against Debtor. PWB filed a continuation of this UCC-1 financing statement on May 12, 2017. A true and correct copy of the UCC-1 and the continuation statement is collectively attached to the Whitmore Declaration as Exhibit "4."

Effective on October 20, 2017, CUB merged with PWB. PWB is the successor in right, title, and interest to the rights, properties, assets, and agreements with CUB.

On May 16, 2019, PWB filed proof of claim no. 42-1 in the total amount of $1,031,157.24, claiming a fully secured debt with an annual interest rate of 11.75% ("PWB Claim"). A true and correct copy of proof of claim no. 42-1 is attached to the Whitmore Declaration as Exhibit "5."

3

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

1       On May 15, 2019, the bankruptcy court entered an order in the bankruptcy case, case no.

2   8:18-bk-13588-SC, of the Debtor's former principal Timothy M. McKenna ("Mr. McKenna"),

3   authorizing PWB to apply $387,299.29 in escrowed funds ("Escrowed Funds") against any debt

4   owed to PWB. A true and correct copy of the order granting PWB relief from the automatic stay

5   regarding the Escrowed Funds is attached to the Whitmore Declaration as Exhibit "6."

6   ### C.  Summary of Agreement

7       THE MATERIAL TERMS OF THE AGREEMENT ARE SUMMARIZED BELOW FOR

8   CONVENIENCE ONLY. THIS SUMMARY DOES NOT CONSTITUTE THE ACTUAL

9   AGREEMENT AND INTERESTED PARTIES SHOULD REFER TO THE FULL TEXT OF THE

10  STIPULATION FOR THE COMPLETE TERMS.

11      1. Allowance of PWB Claim. (¶ 4) The Trustee and PWB agree that PWB shall be allowed a

12  secured claim in the amount of $1,031,157.24, reduced by all immediate payments (described

13  below) and amounts collected independently by PWB towards satisfaction of the claim, including

14  the $387,299.29 in escrowed funds applied against the claim on account of Tim McKenna's personal

15  guarantee and any funds collected from accounts for which PWB has elected to prosecute under the

16  option procedure (explained below). In the event that the Trustee collects more than the initial

17  amount of the allowed PWB Claim, PWB shall be entitled to, pursuant to 11 U.S.C. § 506(b), collect

18  postpetition interest at the contractual default interest rate of 11.75% and other costs or expenses

19  associated with collecting the PWB Claim which were incurred by PWB.

20      2. Immediate Payments. (¶¶ 2a, 5) The Trustee shall immediately disburse 52% of all funds

21  collected subject to the Lien to PWB, according to the wire transfer instructions provided by PWB.

22      3. Administrative Reserve & Agreement to use Cash Collateral. (¶¶ 2b-c, 2e, 3) PWB agrees

23  that the Trustee may hold in reserve 48% of all gross collections, of which 40% of gross collections

24  may be used by the Trustee for administrative costs ("Administrative Reserve") including the

25  Trustee's compensation under 11 U.S.C. § 326 and the administrative expenses incurred by his

26  professionals in the course of collections. PWB reserves the right to object to allowance of

27  administrative fees and expenses.

28

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

4841-2819-4986, v. 1

    4. <u>Estate Reserve.</u> (¶ 2d) Separate and apart from the Administrative Reserve, 8% of gross collections shall be reserved for the Estate.

    5. <u>Option to PWB.</u> (¶ 6) In the event that the Trustee determines that any of the Debtor's receivables are of inconsequential value to the Estate, the Trustee shall provide written notice ("Option Notice") of that determination and PWB shall have the option to prosecute the collection of those receivables, to be exercised by written notice to the Trustee within thirty days of the Option Notice to PWB.

## 3.    Legal Argument

### A.    The Court should approve the Agreement.

    Under Rule 9019, the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. Proc. 9019. It is well-established that a compromise should be approved if it is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); *ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (B.A.P. 9th Cir. 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate"). The standards to be applied to the approval of a settlement include:

    1)    the probability of success of the litigation on its merits;

    2)    the difficulties in collection on a judgment;

    3)    the complexity of the litigation involved; and

    4)    the expense, inconvenience or delay occasioned by the litigation, and the interest of
          creditors.

*In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den., *Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189 (1989).

    Paragraph 2e of the Agreement provides that "there shall be no surcharge of PWB's Collateral under 11 U.S.C. § 506(c), or otherwise." To the extent that this provision is construed as a waiver, the Court should authorize the Trustee to compromise such claim. Paragraph 4 of the Agreement provides that the Trustee "will not object to payment of the PWB Claim out of the Estate

to the extent stated in this Agreement." As explained below, both waivers or releases should be approved in the best interest of the Estate.

### i.    Probability of success

The Trustee is not currently aware of any basis to object to the validity of the Lien. The Lien appears duly perfected by a properly-prepared financing statement, and PWB timely-filed a continuation statement. Additionally, to the extent PWB is entitled to collect postpetition interest as an oversecured creditor (in the event that the value of the Debtor's accounts receivables exceed the value of the principal of the PWB Claim), the Trustee is unaware of any basis to disallow PWB's entitlement to postpetition interest. Because the Trustee sees no prospect of success in litigation against PWB for the validity of its Lien, this factor weighs heavily in favor of approving the Agreement.

As to the Trustee's ability to seek a surcharge of PWB's Lien for collection costs which would be necessary to preserve the value of the collateral under 11 U.S.C. § 506(c), the Trustee is confident that he would prevail in seeking a surcharge of the collateral.[1] However, the extent to which the Trustee could charge administrative expenses against the collateral appears to be an unsettled question in the Ninth Circuit. Thus, the degree to which the Trustee may surcharge leaves the probability of success in question – especially when compared to the agreed-upon administrative reserve of 40% of gross collections provided in the Agreement.

### ii.    Difficulties in collection

If the Trustee were successful in litigation objecting to PWB's Lien or surcharge, there would be no difficulty in "collecting." Specifically, the avoidance, recovery, and preservation of the Lien would permit the Trustee to step into PWB's shoes and preserve those funds otherwise subject to the Lien for the benefit of the Estate. For surcharge, the Trustee would simply be able to apply the funds in his possession to the payment to the extent of the surcharge.

---

[1] "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim…" 11 U.S.C. § 506(c).

6

### iii.    Complexity

The Trustee is unaware of any basis to object to the validity of the Lien. For surcharge, the analysis is rather complex: there are two tests for determining an entitlement to surcharge. First, there is an "objective test" which requires the trustee to prove up a three-factor test for all expenses claimed in the surcharge. *See Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 440 (B.A.P. 9th Cir. 2004). Alternatively, a secured creditor may be surcharged if it has impliedly consented to or caused the expenses incurred. *See, e.g., In re Tollenaar Holsteins*, 538 B.R. 830, 835-43 (Bankr. E.D. Cal. 2015). Then, the court may determine after weighing a number of factors the proper extent of the surcharge based on all applicable theories. *See id.* at 843.

Fully briefing and litigating a surcharge claim against PWB would require extensive research, factual analysis, and drafting. Because of the complexity of the surcharge issues and the factually intensive nature of the inquiry, this factor weighs heavily in favor of approving the Agreement.

### iv.    Expense, inconvenience or delay

The Trustee is informed that PWB is well-funded and any litigation against PWB would be likely to be vigorously defended. Moreover, the Trustee may only have a limited period of time remaining to file actions to collect on pre-petition accounts. *See* 11 U.S.C. § 108(a) (providing that the Trustee has a two-year extension of statutes of limitations which have not yet expired as of the date of the petition); *see, e.g., In re Mahoney, Trocki & Associates, Inc.*, 111 B.R. 914, 920 n.6 (Bankr. S.D. Cal. 1990); *see also, e.g., California Aviation, Inc. v. Leeds*, 233 Cal.App.3d 724, 733-35 (1991) ("numerous federal authorities have concluded that 11 United States Code section 108(a) controls over conflicting limitations statutes."). Thus, it is imperative that the Trustee obtain authorization from the Court to use cash collateral to compensate special collections counsel.

Rather than litigate the surcharge issue, the Trustee and PWB have come to an agreement which benefits both parties – if the Trustee could not get approval of this Agreement, both the Estate and PWB would likely be harmed if the Trustee had no choice but to abandon all of the remaining accounts. As explained in detail above, litigation over the Lien or the extent of an allowable

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

4841-2819-4986, v. 1

1  surcharge would be complex and there is no guarantee that such litigation would result in a better

2  outcome for the Estate than the terms of the Agreement. Thus, this factor weighs heavily in favor of

3  approving the Agreement.

4  **B.    The Court may approve the Agreement as it relates to cash**

5  **collateral.**

6  The trustee "may not use, sell or lease cash collateral…. unless: (A) each entity that has an

7  interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such

8  use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2); *see, e.g.,*

9  *ProAlert*, 314 B.R. at 440. As set forth in the factual history above, PWB has filed a notice of

10  interest in accounts receivables and non-consent to use cash collateral. Absent consent or a court

11  order (or a surcharge), the Trustee may not use PWB's cash collateral.

12  Under the terms of the Agreement, PWB is consenting to the Trustee's use of cash collateral

13  to compensate costs of collections, capped at 40% of the gross collections subject to the Lien. Thus,

14  the Agreement simply ratifies PWB's consent to use cash collateral.

15  **C.    The Immediate Payments should be authorized to be paid on an**

16  **ongoing basis without further order from the Court.**

17  "In a chapter 7 case, dividends to creditors shall be paid as promptly as practicable." Fed. R.

18  Bankr. Proc. 3009; *see In re GPLA, Inc.*, 2016 Bankr. LEXIS 3085 at *7 (Bankr. C.D. Cal. 2016)

19  (Kwan, J.).

20  Under the Agreement, the PWB Claim will be allowed in the amount stated in the

21  Agreement, and will be reduced according to all payments received, including application of the

22  Escrowed Funds from Mr. McKenna's individual case. The Trustee believes that it is in the best

23  interest of the Estate to make the maximum payment to PWB immediately upon approval of the

24  Agreement in order to further reduce the PWB Claim and any claim of PWB to postpetition interest

25  as a potentially oversecured creditor. Because the PWB Claim will be allowed as a secured claim,

26  there is no reason for the Trustee to withhold payments to PWB that it would be entitled to receive at

27  the end of the case on account of its secured claim. Thus, the Trustee is requesting a court order

28

4841-2819-4986, v. 1

1  specifically authorizing him to immediately disburse $131,351.55, which equals 52% of the funds

2  collected to date by the Trustee which are subject to the Lien ($252,599.14). Additionally, the

3  Trustee requests that he be authorized to immediately disburse 52% of all future gross collections

4  subject to the Lien to PWB, upon approval of any motion to approve compromise or collection of

5  judgment filed with the Court for any additional account. For future collections subject to the Lien,

6  the Trustee requests that the Court authorize the inclusion of a provision for immediate payment to

7  PWB in all future compromise orders in the amount of 52% of any settlement proceeds.

8  ### D.   The 8% carve-out to the Estate is proper and should be approved.

9  "[T]he sale of a fully encumbered asset is generally prohibited." *In re KVN Corp.*, 514 B.R.

10  1, 5 (B.A.P. 9th Cir. 2014). Such a sale, however, may nevertheless be justified through a negotiated

11  carve-out agreement with the secured creditor. *Id.* at 6. Additionally, such sales are permitted if there

12  are additional benefits to the Estate such as may arise when cross-collateralization exists.

13  When seeking approval of a carve-out agreement, the trustee must present evidence

14  addressing the following questions: "Has the trustee fulfilled his or her basic duties? Is there a

15  benefit to the estate; i.e. prospects for a meaningful distribution to unsecured creditors? Have the

16  terms of the carve-out agreement been fully disclosed to the bankruptcy court?" *KVN Corp*, 514 B.R.

17  at 8. If the answer to these questions demonstrates that the estate will be benefitted, then the

18  proposed carve-out can be approved. The Agreement provides not only a means to pay the Trustee's

19  professionals through the administrative reserve of 40% of gross collections, but further provides an

20  additional direct benefit to the Estate of 8% of the proceeds otherwise payable to PWB on account of

21  its Lien. Absent the Agreement, is likely that the Trustee's collection of receivables subject to the

22  Lien would have resulted in little or no commensurate benefit to the Estate.

23  ### i.   Has the Trustee fulfilled his basic duties?

24  The Trustee has a duty to expeditiously administer the assets of the estate for the benefit of

25  creditors. 11 U.S.C. § 704(a)(1). The Trustee also has a duty to examine and, if necessary, object to

26  claims such as secured claims. 11 U.S.C. § 704(a)(5). Finally, the Trustee may not use cash

27  collateral without consent of the lienholder or Court approval. 11 U.S.C. § 363(c)(2).

28

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

1　　　　Before entering into the Agreement, the Trustee carefully analyzed PWB's security interest

2　and considered all possible theories under which the Lien might be challenged. As described above,

3　the Trustee is unaware of any theory under which the Lien could be avoided, and the difficulties

4　inherent with such a challenge would render any litigation on the Lien cost-prohibitive to the Estate.

5　Finally, the Trustee may not use PWB's cash collateral absent consent or Court approval of such use.

6　The Trustee has fulfilled his basic duties in entering into the Agreement, which will maximize

7　recoveries in this case, provide for the payment of administrative expenses, and reserve a certain

8　portion for the benefit of the Estate.

9　　　　　　　　　　**ii.　　Is there a benefit to the Estate?**

10　　　　Benefit to the estate is typically measured by a "meaningful distribution to unsecured

11　claims." *In re Scoggins*, 517 B.R. 206, 222 (Bankr. E.D. Cal. 2014). For example, there is a

12　meaningful distribution to unsecured claims if the distribution to be made is greater than the trustee's

13　fees. *Id.* at 223.

14　　　　As discussed above, under the Agreement, PWB consents to the use of its cash collateral to

15　pay certain administrative expenses and it will further carve-out for the benefit of the Estate 8% of

16　proceeds of sale otherwise subject to its lien. Thus, the proposed carve-out is intended to and will

17　benefit unsecured creditors. To illustrate, approval of the Agreement will result in an immediate

18　reservation of 8% of the funds held by the Trustee for the benefit of the Estate, which equals

19　$20,207.93.[2]

20　　　　　　　　　　**iii.　　Have the terms of the Agreement been fully disclosed to**

21　　　　　　　　　　　　　**the Court?**

22　　　　The Agreement fully disclosed the terms of the carve-out, and a true and correct, executed

23　copy of the Agreement is attached as Exhibit "1" to the Whitmore Declaration. Thus, the Stipulation

24　satisfies all three *KVN* factors and should be approved by the Court.

25　/ / /

26

27　―――――――――――

28　[2] Eight percent of gross collections ($252,599.14) equals $20,207.93.

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

4841-2819-4986, v. 1

**4.    Conclusion**

The Trustee requests that this Court grant this motion in its entirety and enter an order:

(1) Approving the Agreement;

(2) Authorizing the Trustee to provide the releases in the Agreement to PWB;

(3) Allowing the PWB Claim pursuant to the terms of the Agreement;

(4) Authorizing the Trustee to use cash collateral under 11 U.S.C. § 363 according to the terms of the Agreement for the payment of administrative expenses, including costs of collection and bonding costs;

(5) Authorizing the terms of the proposed 8% carve-out;

(6) Authorizing the Trustee to immediately disburse $131,351.55 to PWB, which is 52% of the $252,599.14 that the Trustee has collected in this case subject to the Lien;

(7) Authorizing the Trustee to immediately distribute to PWB 52% of all future collections subject to the Lien without further court order;

(8) Authorizing PWB to prosecute collection of receivables which the Trustee determines to be of inconsequential value to the Estate upon written notice to the Trustee pursuant to the Agreement; and

(9) For such other and further relief as the Court deems just and proper.

Dated:  October 23, 2019                          MARSHACK HAYS LLP


                                                  By:  _/s/ Tinho Mang_____
                                                        D. EDWARD HAYS
                                                        CHAD V. HAES
                                                        TINHO MANG
                                                        Attorneys for Chapter 7 Trustee,
                                                        ROBERT S. WHITMORE

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

4841-2819-4986, v. 1

# Declaration of Robert S. Whitmore

I, ROBERT S. WHITMORE, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I seek approval of an agreement for collection of receivables, partial subordination of lien, use of cash collateral, and distribution of proceeds ("Agreement"). A true and correct, executed copy of the Agreement is attached as Exhibit "1."

5.      I am the Chapter 7 Trustee of the bankruptcy estate ("Estate") of McKenna General Engineering, Inc. ("Debtor").

6.      On or around September 26, 2012, Debtor executed a promissory note ("Note") in favor of California United Bank ("CUB"), in the amount of $1,000,000, which was due and payable in monthly interest payments, with a maturity date of August 1, 2013.  The Note was amended from time to time. A true and correct copy of the Note and subsequent amendments is attached as Exhibit "2."

7.      On the same date, Debtor and CUB entered into a security agreement, whereby Debtor granted CUB a security interest in substantially all assets of the Debtor to secure its payment obligations under the Note ("Lien"). A true and correct copy of the security agreement is attached as Exhibit "3."

8.      On October 3, 2012, CUB filed a UCC-1 financing statement (Document No. 34832410002) against Debtor. PWB filed a Continuation of this UCC-1 financing statement on May 12, 2017.  A copy of the UCC-1 and the continuation statement is collectively attached as Exhibit "4."

9.      Effective on October 20, 2017, I am informed that CUB merged with PWB, and that PWB is the successor in right, title, and interest to the rights, properties, assets, and agreements with CUB.

12

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

4841-2819-4986, v. 1

10.     On September 21, 2018, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California. I was appointed as the Chapter 7 Trustee.

11.     In its Schedule A/B, Debtor listed a series of outstanding accounts receivables, in the total face amount of $2,081,409.46.

12.     In Debtor's Schedule D, PWB was listed as a secured creditor with a scheduled secured debt of $950,098.16.

13.     On March 11, 2019, as Dk. No. 73, I filed a motion to approve compromise with Neff Construction, to settle the outstanding accounts owed by Neff for the total amount of $114,945.91.

14.     After approval by the Court, I received the settlement payment of $114,945.91.

15.     On April 16, 2019, as Dk. No. 81, PWB filed its Notice of Interest in Accounts Receivable and Proceeds and Non-Consent to Use of Cash Collateral and Demand for Segregation of Cash Collateral.

16.     On June 10, 2019, as Dk. No. 87, I filed a second motion to approve compromise with the Irvine Company, to settle the outstanding account owed by the Irvine Company for the total amount of $47,941.96.

17.     After approval by the Court, I received the settlement payment of $47,941.96.

18.     On August 30, 2019, as Dk. No. 96, I filed a third motion to approve compromise with the Santa Margarita Water District, to settle litigation pending in state court originating from the Debtor's prepetition lawsuit against the Water District related to a construction project.

19.     After approval by the Court, I received the settlement payment of $85,000.

20.     On October 9, 2019, as Dk. No. 109, I filed a fourth motion to approve compromise with Bernards Bros., Inc., to settle the outstanding account owed by Bernards for the total amount of $95,000.

21.     I do not anticipate any objection to this motion and expect to have an order from the Court approving the compromise by the hearing on this motion.

22.     In total, I am holding $252,518.51, all of which I believe is subject to PWB's blanket

4841-2819-4986, v. 1

1  lien and security interest. Since the Petition Date, I have been charged $80.63 in bank fees and

2  bonding costs for these funds. Thus, to date, I have collected $252,599.14 in accounts subject to the

3  Lien.

4       23.     I have sought to engage special collections counsel for a number of the remaining

5  accounts receivables owed to the Debtor, but I cannot finalize terms of proposed compensation with

6  special collections counsel unless the Agreement is approved and I am authorized to use a portion of

7  PWB's cash collateral for costs of collection.

8       24.     On May 16, 2019, PWB filed proof of claim no. 42-1 in the total amount of

9  $1,031,157.24, claiming a fully secured debt with an annual interest rate of 11.75% ("PWB Claim").

10  A true and correct copy of proof of claim no. 42-1 is attached as Exhibit "5."

11       25.     On May 15, 2019, the bankruptcy court entered an order in the bankruptcy case, case

12  no. 8:18-bk-13588-SC, of the Debtor's former principal Timothy M. McKenna ("Mr. McKenna"),

13  authorizing PWB to apply $387,299.29 in escrowed funds ("Escrowed Funds") against any debt

14  owed to PWB. A true and correct copy of this order granting relief from the automatic stay for PWB

15  is attached as Exhibit "6."

16       26.     I have reviewed the documents relating to PWB's claim and the validity of its Lien,

17  including the UCC-1 filings. I am currently not aware of any basis to object to the validity of the

18  Lien.

19       27.     As for surcharge, I am confident that I would be able to prevail in litigation to

20  surcharge the Lien for my costs of collection. However, as explained in the Motion, such litigation is

21  likely to be costly and may not provide any further benefit to the Estate than what is provided in the

22  Agreement.

23       28.     I request that the Court authorize me to waive claims as to the validity of the Lien

24  provided for in the Agreement, including the allowance of postpetition interest in the event that the

25  value of the Debtor's accounts exceed the face value of the PWB Claim, and to waive claims

26  regarding surcharge to the extent stated in the Agreement.

27       29.     As explained in the Motion, the provisions in the Agreement which may resemble a

28

MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

4841-2819-4986, v. 1

1  carve-out agreement should be approved, to the extent that those provisions are treated as a carve-out

2  by the Court.

3          30.      I believe that I should be authorized to make all of the Immediate Payments, which

4  will reduce the PWB Claim and therefore minimize the ongoing accrual of postpetition interest on

5  the PWB Claim. Thus, the Immediate Payments are in the best interest of creditors and this Estate.

6          31.      In my sound business judgment, after reviewing all of the options available to the

7  Estate, and through months of negotiations with PWB, I believe that approval of this Agreement is in

8  the best interest of creditors and the Estate.

9

10         I declare under penalty of perjury that the foregoing is true and correct. Executed on October

11  22, 2019.

12                                                   _Robert S Whitmore_
                                                     ROBERT S. WHITMORE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                     MOTION TO APPROVE PARTIAL SUBORDINATION AGREEMENT

4841-2819-4986, v. 1

Exhibit "1"

## AGREEMENT FOR COLLECTION OF RECEIVABLES, PARTIAL SUBORDINATION

## OF LIEN, USE OF CASH COLLATERAL, AND DISTRIBUTION OF PROCEEDS

THIS AGREEMENT FOR COLLECTION OF RECEIVABLES, PARTIAL SUBORDINATION OF LIEN, USE OF CASH COLLATERAL, AND DISTRIBUTION OF PROCEEDS ("Agreement") is entered into as of the date indicated in the signature blocks below by and between Robert S. Whitmore ("Trustee") solely in his capacity as Chapter 7 trustee for the bankruptcy estate ("Estate") of McKenna General Engineering, Inc. ("Debtor"), and secured creditor Pacific Western Bank ("PWB"). Trustee and PWB are collectively referred to as the "Parties."

### I. RECITALS

A.    On September 21, 2018, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 6:18-bk-18036-SY. On the same day, Robert S. Whitmore (previously defined as "Trustee") was appointed as the Chapter 7 Trustee.

B.    In its Schedule A/B, Debtor lists a series of outstanding accounts receivables, in the total face amount of $2,081,409.46.

C.    The Parties believe that a substantial amount of the accounts receivable can be collected. The Parties also agree that the accounts receivable are most easily collected by the Trustee because of the Trustee's extensive powers under the Bankruptcy Code. For instance, under the Bankruptcy Code § 108, the Trustee has an additional two years to file actions to foreclose mechanics' liens, notwithstanding Cal. Civ. Code § 3144.

D.    As the custodian of the Debtor's books and records, Trustee is in the best position to collect the accounts receivables in a cost-effective and time-efficient manner.

E.    In Debtor's Schedule D, PWB was listed as a secured creditor with a scheduled secured debt of $950,098.16.

F.    On or around September 26, 2012, Debtor executed a promissory note ("Note") in favor of California United Bank ("CUB"), in the amount of $1,000,000, which was due and payable in monthly interest payments, with a maturity date of August 1, 2013. The Note was amended from time to time.

G.    On the same date, Debtor and CUB entered into a security agreement, whereby Debtor granted CUB a security interest in substantially all assets of the Debtor to secure its payment obligations under the Note ("Lien").

H.    On October 3, 2012, CUB filed a UCC-1 financing statement (Document No. 34832410002) against Debtor, perfecting its Lien against Debtor. PWB filed a Continuation of its UCC-1 financing statement on May 12, 2017.

I.      Effective on October 20, 2017, CUB merged with PWB.  PWB is the successor in right, title, and interest to the rights, properties, assets, and agreements with CUB.

J.      On April 16, 2019, PWB filed its Notice of Interest in Accounts Receivable and Proceeds and Non-Consent to Use of Cash Collateral and Demand for Segregation of Cash Collateral, asserting its Lien against accounts receivable of the Debtor and any proceeds thereof (collectively, the "Collateral").

K.      On May 16, 2019, PWB filed a proof of claim in the total amount of $1,031,157.24, claiming a fully secured debt with an annual interest rate of 11.75% ("PWB Claim").

L.      On May 15, 2019, the bankruptcy court entered an order in the bankruptcy case of Timothy M. McKenna ("Mr.  McKenna"), authorizing PWB to apply $387,299.29 in escrowed funds ("Escrowed Funds") against any debt owed to PWB on account of Mr. McKenna's personal guarantee of the debt underlying the PWB Claim.

M.      Collection of the accounts receivable or other outstanding obligations owed to the Estate may involve litigation costs or preparation of certified payrolls for public works projects, a requirement of which is to have contributed all compensation which is owed to employees.

N.      In order to enable the Trustee to expend funds, which are necessary to collect all outstanding amounts owed to the Estate, to avoid the expense and inconvenience of litigating an action for surcharge under 11 U.S.C. § 506(c), to aid in payment of the PWB Claim, and to ensure that unsecured creditors will receive a distribution from the Estate, the Parties agree to provide for the Trustee's collection of the accounts receivable or other outstanding obligations owed to the Estate (the "Receivables"), partial subordination of PWB's right to receive payment from the Collateral, adequate protection of PWB's interest in the Receivables, and the Trustee's use of PWB's cash collateral, all as described in the following paragraphs.

## II. SETTLEMENT TERMS

In consideration of the Recitals above and the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the Parties agree, covenant, and represent as follows subject to approval by the Bankruptcy Court in Debtor's case:

1.      Incorporation of Recitals:  The Parties incorporate the Recitals above as though fully set forth here, and the Recitals are made part of this Agreement.

2.      Partial Subordination and Payment Terms:  Subject to the terms and conditions set forth herein, the Parties acknowledge and agree that the Trustee shall oversee collections of all Receivables, through professionals of the Trustee's choice.  The Trustee shall sequester all proceeds of the Receivables in a segregated account pursuant to 11 U.S.C. § 363(c)(4).  The Trustee shall at all times during the pendency of this bankruptcy case keep all such proceeds, whether previously or hereafter collected, that come into his possession, custody, or control, separate and distinct from all other property of the bankruptcy estate, and shalt not commingle such proceeds with any other fund or money from other Estate sources, if any, except as

otherwise expressly provided herein.  PWB has agreed to a partial subordination in favor of the Estate regarding funds otherwise subject to its Lien as follows:

    a.    Fifty-two percent (52%) of all gross collections shall be paid to PWB by the Trustee ("Immediate Payment") immediately upon the earlier of (i) entry of a bankruptcy court order approving this Agreement (as to proceeds already collected or received by the Trustee), (ii) actual collection or receipt by the Trustee of any Receivable that is paid in full, or (iii) actual collection or receipt by the Trustee of a compromised amount of any Receivable after entry of a bankruptcy court order approving such compromised amount.

    b.    Forty-eight percent (48%) of all gross collections shall be held in reserve by the Estate upon collection ("Reserved Funds").

    c.    From the Reserved Funds, forty percent (40%) of all gross collections shall be further reserved for the administrative cost and expense of liquidating assets subject to the PWB Lien ("Administrative Reserve").  The Administrative Reserve shall be used to pay, and PWB's Lien with respect to the Administrative Reserve shall be subordinated only to payment of, the Trustee's costs of collections, including any Trustee's fees under 11 U.S.C. § 326 and expenses, and any fees and expenses of the Trustee's professionals incurred in the course of collections ("Trustee's Collection Costs").  The Administrative Reserve shall be disbursed upon application to the Court and approval of payment of the Trustee's Collection Costs, and PWB expressly reserves all rights to object to the allowance of administrative fees and costs. If allowed administrative costs do not exceed the Administrative Reserve, PWB shall be entitled to receive the balance of the Administrative Reserve ("PWB Reserve Funds Payment"). For avoidance of doubt, the Trustee shall pay  the PWB Reserve Funds Payment to PWB (i) upon establishment of the Administrative Reserve, from the balance of the Administrative Reserve, and (ii) upon determination of the amount of available Reserved Funds that were included in the Administrative Reserve but not applied to approved Trustee's Collection Costs.

    d.    Eight percent (8%) of all gross collections shall be reserved for the Estate ("Estate Reserve").

    e.    The Trustee shall be responsible for payment of all costs associated with the collections of the Receivables from the Administrative Reserve.  The Trustee shall not look to PWB, the Immediate Payment, or any other amount of the Reserved Funds to pay any of the collection costs.  Other than as expressly provided herein, there shall be no surcharge of PWB's Collateral under 11 U.S.C. § 506(c), or otherwise.  This Agreement in no way constitutes a release, waiver, or forgiveness of any claim of PWB against the Estate, the Debtor, Tim McKenna, or any other person.

    f.    The PWB Lien shall in all other respects remain valid and in place to the same extent, priority and validity as they existed as of the date of this Agreement.

Exhibit "1"
Page 19

g.     The Trustee will provide PWB with reports of collection of the Receivables, Estate accounts, expenses of and disbursements from the Administrative Reserve, and other reports related to PWB's Collateral as reasonably requested by PWB.

3.     <u>Cash Collateral</u>.  To the extent that the funds held by the Trustee constitute cash collateral, PWB consents to the immediate use of its cash collateral to the extent of the Administrative Reserve only, pursuant to the terms of this Agreement.

4.     <u>Allowance of the PWB Claim</u>.  The Estate's debt owed to PWB shall be allowed as a secured claim in the amount of $1,031,157.24.  Interest continues to accrue on a per diem basis at the default rate of 11.75% under the Note.  Additionally, certain attorneys' fees and expenses and other costs were incurred but unpaid as of the Petition Date, and continue to accrue in accordance with the Loan Documents ("PWB Fees").  Trustee will not object to payment of the PWB Claim out of the Estate to the extent stated in this Agreement.  In the event that the Trustee's gross collections from the Receivables, plus the Escrowed Funds, exceeds the face value of the PWB Claim, the Trustee agrees that PWB shall be treated as an oversecured creditor entitled to collect postpetition interest at the default rate of 11.75% ("Postpetition Interest"), and contractual fees, including the PWB Fees, under 11 U.S.C. § 506(b).  Payment and reservation of payment for the Postpetition Interest and the PWB Fees shall be made under the terms set forth in Section 2 herein.

5.     <u>Application of Escrowed Funds and Agreed Payments toward Satisfaction of PWB Claim</u>.  The amount of the Escrowed Funds plus any payments received by PWB under the terms of this Agreement shall be applied in partial satisfaction of the PWB Claim on a dollar for dollar basis.  Any remittance to PWB to be made hereunder shall be made via wire transfer in accordance with the following instructions:

ACCOUNT NAME: PACIFIC WESTERN BANK

PWB-ABA: 122238200

ACCOUNT NO: 1336859088

ATTENTION:  NOTE DEPARTMENT FOR MCKENNA GENERAL ENGINEERING NOTE # 10801202-1

MAILING ADDRESS:

PACIFIC WESTERN BANK

5900 LA PLACE COURT, SUITE 200

CARLSBAD, CA 92008

6.     <u>PWB's Option to Collect Certain Receivables</u>.   In the event that the Trustee determines any of the Receivables to be of inconsequential value to the bankruptcy estate of Debtor, the Trustee shall provide PWB written notice of such determination (the "Option Notice") and PWB shall have the option to prosecute collection of such Receivables, to be exercised by written notice to the Trustee within thirty days from Trustee's delivery of the Option Notice to PWB.  Upon PWB's exercise of its option with respect to any of the Receivables under this Section, PWB shall be deemed authorized to prosecute collection of such Receivables.  PWB

shall be deemed to have received a disbursement from the Trustee of property with a value equal to any amount collected by PWB pursuant to this Section.

7.   <u>Trustee's Capacity</u>.   The Trustee is signing this Agreement in his capacity solely as Chapter 7 trustee of the bankruptcy estate of Debtor.   Nothing contained in this Agreement shall in any way impute liability to the Trustee, personally or as a member of any professional organization, the Trustee's professionals, attorneys, agents, or anyone acting on his behalf.

8.   <u>Approval by Bankruptcy Court</u>.   This Agreement shall not be effective unless the Bankruptcy Court enters an order approving this Agreement.   An order approving this Agreement and specifically approving disbursements according to this Agreement is a condition precedent to any distributions under this Agreement. The Trustee shall prepare and file a motion to approve this Agreement with the Bankruptcy Court and argue in favor of approval of the Agreement.

9.   <u>Admissions</u>.   If this Agreement fails to become effective for any reason or is otherwise not fully consummated, nothing in this Agreement shall bind the Parties or constitute an admission by the Parties.

10.   <u>Authority</u>.   The signatories to this Agreement acknowledge that they have the authority and have obtained the requisite approval to enter this Agreement and to act on behalf of and bind any entity on whose behalf they are signing.

11.   <u>Representation by Counsel</u>.   The Parties further represent that they have been represented by legal counsel or have had the opportunity to seek advice of legal counsel during the course of the negotiations leading to the signing of this Agreement and that they have been advised by legal counsel with respect to the meaning of this Agreement and its legal effect.

12.   <u>No Partnership or Joint Venture</u>:   Nothing in this Agreement is intended to be construed as or to create a partnership or joint venture between the parties.

13.   <u>Integration</u>.   This Agreement constitutes an integrated written contract expressing the entire agreement of the Parties.   Other than express written terms contained in this Agreement, there is no other agreement, written or oral, express or implied, between the Parties with respect to this subject matter.

14.   <u>Modification or Amendment</u>.   This Agreement cannot be orally modified or amended.   This Agreement may be modified or amended only by a written agreement signed by all Parties, and such modifications shall only be effective upon the approval of the Bankruptcy Court.

15.   <u>Counterparts</u>.   This Agreement may be executed in counter-parts, including facsimile and email signatures, with the same effect as if all original signatures were placed on one document and all of which together shall be one and the same agreement.

16.   <u>Binding Agreement</u>.   This Agreement is and shall be binding upon and shall inure to the benefit of the heirs, assigns, principals, and successors of all of the Parties.

17.    Interpretive Law.  This Agreement is made and entered into in the State of California and shall, in all respects be interpreted, enforced, and governed by and under the laws of the State of California and the United States Bankruptcy Code as applied in the Ninth Circuit. In the event of a dispute over the terms of this Agreement, the Parties agree that the sole venue to adjudicate such dispute shall be the United States Bankruptcy Court for the Central District of California.

18.    Ambiguities.  This Agreement has been reviewed by the Parties and their respective counsel.  Further, the Parties have had full opportunity to negotiate the terms and conditions of this Agreement.  Accordingly, the Parties expressly waive any common-law or statutory rule of construction that ambiguities should be construed against the drafter, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

19.    Miscellaneous Provisions.

a.    The Parties represent that they have read this Agreement and fully understand all of its terms; that they have conferred with or had the opportunity to confer with their attorneys about this Agreement; that they have executed this Agreement without coercion or duress of any kind; and that they understand any rights that they have or may have and sign this Agreement with full knowledge of any such rights.

b.    The Parties acknowledge that, other than as expressly set forth in this Agreement, no representations, statements or promises made by the other Party, or by their respective agents or attorneys, have been relied on in entering into this Agreement.

The undersigned have read the foregoing and accept and agree to the provisions contained herein, and hereby execute it, knowingly, voluntarily, and with full understanding of its consequences.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

Dated: October /7 , 2019

ROBERT S. WHITMORE, Chapter 7 Trustee for the Bankruptcy Estate of McKenna General Engineering, Inc.

Dated: October __, 2019

*Signature on next page*
Authorized Representative for PACIFIC WESTERN BANK

_____ , its,

_____ .

17.    <u>Interpretive Law</u>.  This Agreement is made and entered into in the State of California and shall, in all respects be interpreted, enforced, and governed by and under the laws of the State of California and the United States Bankruptcy Code as applied in the Ninth Circuit. In the event of a dispute over the terms of this Agreement, the Parties agree that the sole venue to adjudicate such dispute shall be the United States Bankruptcy Court for the Central District of California.

18.    <u>Ambiguities</u>.  This Agreement has been reviewed by the Parties and their respective counsel.  Further, the Parties have had full opportunity to negotiate the terms and conditions of this Agreement.  Accordingly, the Parties expressly waive any common-law or statutory rule of construction that ambiguities should be construed against the drafter, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

19.    <u>Miscellaneous Provisions</u>.

a.    The Parties represent that they have read this Agreement and fully understand all of its terms; that they have conferred with or had the opportunity to confer with their attorneys about this Agreement; that they have executed this Agreement without coercion or duress of any kind; and that they understand any rights that they have or may have and sign this Agreement with full knowledge of any such rights.

b.    The Parties acknowledge that, other than as expressly set forth in this Agreement, no representations, statements or promises made by the other Party, or by their respective agents or attorneys, have been relied on in entering into this Agreement.

The undersigned have read the foregoing and accept and agree to the provisions contained herein, and hereby execute it, knowingly, voluntarily, and with full understanding of its consequences.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

Dated: October ___ , 2019        *Signature on previous page*
                                 ROBERT S. WHITMORE, Chapter 7 Trustee for
                                 the Bankruptcy Estate of McKenna General
                                 Engineering, Inc.


Dated: October *18* , 2019

                                 Authorized Representative for PACIFIC
                                 WESTERN BANK
                                 *Kim von Disterlo* , its,
                                 *SVP* .

Approved as to form:
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:  A. KENNETH HENNESAY
Attorneys for PACIFIC WESTERN BANK

MARSHACK HAYS LLP

By:  CHAD V. HAES
Attorneys for ROBERT S. WHITMORE

Exhibit "2"

# BUSINESS LOAN AGREEMENT

| Borrower: | McKenna General Engineering, Inc.
20330 Temescal Canyon Rd
Corona, CA  92881-4944 | Lender: | California United Bank
15821 Ventura Blvd Ste 100
Encino, CA  91436-5203 |
|---|---|---|---|

**THIS BUSINESS LOAN AGREEMENT** dated September 26, 2012, is made and executed between McKenna General Engineering, Inc. ("Borrower") and California United Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of September 26, 2012, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Timothy M. McKenna, President or Jason J. Caufield, Vice President or Courtney Penteado, Controller.** Each Advance under the line of credit must be requested by 3:30 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

  **Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

  **Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

  **Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

  **Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

  **No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

  **Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 20330 Temescal Canyon Rd, Corona, CA  92881-4944. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

  **Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

  **Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

  **Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

  **Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

  **Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

  **Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During

**EXHIBIT 1**

Exhibit "2"
Page 25

**BUSINESS LOAN AGREEMENT**

| Loan No: ▮▮202-1 | (Continued) | Page 2 |
|---|---|---|

the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

> **Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, reviewed by a certified public accountant satisfactory to Lender.

> **Interim Statements.** As soon as available, but in no event later than sixty (60) days after the end of each fiscal quarter, Borrower's balance sheet and profit and loss statement for the period ended, prepared by Borrower.

> **Tax Returns.** As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by Borrower.

> **Additional Requirements. Accounts Receivable and Accounts Payable Aging Reports.** As soon as available, but in no event later than thirty (30) days after the end of each fiscal quarter, (a) a current detailed aging, by total and by customer, of Borrower's accounts receivable listing both the invoice date and the due date, and (b) a current detailed aging, by total and by vendor, of Borrower's accounts payable, both of which shall be set forth in a form and shall contain such information as is acceptable to Lender.

> **Work in Process ("WIP") Reports.** As soon as available, but in no event later than thirty (30) days after the end of each fiscal quarter, WIP reports, which shall be set forth in a form and shall contain such information acceptable to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

> **Additional Requirements. Ratio of Total Debt to Effective Tangible Net Worth.** Borrower shall maintain a Ratio of Total Debt to Effective Tangible Net Worth (defined as the sum of current liabilities and non-current liabilities divided by Effective Tangible Net Worth) of not more than 2.75 to 1.00, to be determined as of the end of each fiscal year. For purposes of calculating the above ratio, Effective Tangible Net Worth is defined as the aggregate net worth, less intangible assets, less investments in affiliates, and less any amount due from employees, shareholders, officers, guarantors and affiliates of Borrower, shareholders, officers, or guarantors.

> **Profitability.** Borrower shall generate a net profit after tax from operations of not less than $1.00 and $200,000.00 at the end of each fiscal quarter and year, respectively.

> Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**EXHIBIT 1**

| Loan No: ▓▓▓202-1 | **BUSINESS LOAN AGREEMENT**<br>(Continued) | Page 3 |
|---|---|---|

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| Timothy M. McKenna | Unlimited |
| McKenna Family Trust | Unlimited |
| Jason John Caufield | Unlimited |
| Caufield Revocable Trust | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**Required Deposit Accounts.** Maintain its principal deposit relationship with Lender, including but not limited to a demand deposit account.

**RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation or guideline, or the interpretation or application of any thereof by any court or administrative or governmental authority (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would (A) increase the cost to Lender for extending or maintaining the credit facilities to which this Agreement relates, (B) reduce the amounts payable to Lender under this Agreement or the Related Documents,

- 12 -

**EXHIBIT 1**

**BUSINESS LOAN AGREEMENT**

| Loan No: █████202-1 | (Continued) | Page 4 |
|---|---|---|

or (C) reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower, which explanation and calculations shall be conclusive in the absence of manifest error.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or

**EXHIBIT 1**

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: ████202-1                                                                                                   Page 5

---

a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**Adverse Change in Guarantor's Financial Condition.** A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**TERMINATION AND ACCELERATION OF THE LOANS UPON TERMINATION OF ANY PRINCIPAL OPERATING DEPOSIT ACCOUNTS.** Borrower agrees that if at any time any of the principal operating deposit accounts with Lender is for any reason terminated, then (a) Lender's obligation or commitment, if any, to extend any further or additional credit hereunder shall immediately terminate, without notice, and (b) all Indebtedness (including all outstanding principal, interest, fees, costs and expenses) of Borrower to Lender under this Agreement and the Related Documents shall become immediately due and payable without notice and Borrower agrees to immediately repay to Lender all such Indebtedness. Failure by Borrower to comply with the provisions set forth above shall constitute an Event of Default under this Agreement and shall entitle Lender to exercise any and all rights and remedies available to it.

**TERMINATION AND ACCELERATION OF THIS CREDIT FACILITY UPON TERMINATION OR ACCELERATION OF ANY OTHER CREDIT FACILITY.** Borrower (which, as used in this paragraph, means each Borrower if more than one) hereby acknowledges that Lender may have extended or may hereafter extend other credit facilities to Borrower or any Guarantor (hereinafter collectively referred to as "Other Credit Facilities") which are or will be evidenced, secured and guaranteed by certain loan agreements, letter of credit agreements, promissory notes, security agreements, deeds of trust, guaranties and other similar or related agreements (hereinafter collectively referred to as "Other Loan Documents"). Notwithstanding anything to the contrary in this Agreement, any other documents or agreements from time to time evidencing, securing, guaranteeing or otherwise relating to the credit facility provided hereunder (hereinafter, together with this Agreement, collectively referred to as the "Loan Documents") or the Other Loan Documents, Borrower hereby agrees that if at any time any of the Other Credit Facilities is for any reason terminated, repaid in full, refinanced or accelerated, then (a) Lender's obligation or commitment, if any, to extend any further additional credit hereunder shall immediately terminate, without notice, and (b) all Indebtedness (including all outstanding principal, interest, fees, costs and expenses) of Borrower to Lender under this Agreement and the other Loan Documents shall become immediately due and payable without notice and Borrower agrees to immediately repay to Lender all such Indebtedness and to cash-collateralize (the "Cash Collateral") any outstanding letters of credit issued by Lender for the account of Borrower hereunder. Borrower hereby agrees to deposit such Cash Collateral in a suspense account held by Lender or another financial institution selected by Lender. Borrower hereby grants to Lender a security interest in such Cash Collateral and all other funds in such suspense account from time to time. Borrower hereby authorizes Lender to use the Cash Collateral and such other funds to reimburse it for any amounts drawn under or otherwise due with respect to any letters of credit issued and outstanding hereunder. Failure by Borrower to comply with the provisions set forth above shall constitute an Event of Default under this Agreement and shall entitle Lender to exercise any and all rights and remedies available to it.

**IMAGING.** Lender may create microfilms or optical disks or other electronic images of this Agreement and any Related Documents that are authoritative copies as defined in applicable law relating to electronic transactions. Lender may store the authoritative copies of such Agreement and any Related Documents in their electronic forms and then destroy the paper originals as part of Lender's normal business practices. Lender may control and transfer such authoritative copies as permitted by such law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an

- 14 -

**EXHIBIT 1**

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: █████202-1    Page 6

---

action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. **The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.**

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in

- 15 -

**EXHIBIT 1**

## BUSINESS LOAN AGREEMENT
### (Continued)

| Loan No: ██202-1 | Page 7 |
|---|---|

effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means McKenna General Engineering, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means California United Bank, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means Borrower's promissory notes or credit agreements, if any, evidencing Borrower's Indebtedness to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory notes or credit agreements.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

- 16 -

**EXHIBIT 1**

| Loan No: ██202-1 | **BUSINESS LOAN AGREEMENT**<br>(Continued) | Page 8 |
|---|---|---|

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED SEPTEMBER 26, 2012.

**BORROWER:**

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy  M.  McKenna,  President  of  McKenna
General Engineering, Inc.

**LENDER:**

CALIFORNIA UNITED BANK

By: _____
David C. Caples, Vice President

LASER PRO Lending, Ver. 12.2.0.003 Copr. Harland Financial Solutions, Inc. 1997, 2012.  All Rights Reserved.  - CA  N:\CFI\WIN\CFILPL\C40.FC  TR-3121  PR-45

**EXHIBIT 1**

Exhibit "2"
Page 32

# PROMISSORY NOTE

| Borrower: | McKenna General Engineering, Inc.<br>20330 Temescal Canyon Rd<br>Corona, CA 92881-4944 | Lender: | California United Bank<br>15821 Ventura Blvd Ste 100<br>Encino, CA 91436-5203 |
|---|---|---|---|

**Principal Amount: $1,000,000.00**                                    **Date of Note: September 26, 2012**

**PROMISE TO PAY.** McKenna General Engineering, Inc. ("Borrower") promises to pay to California United Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 1, 2013. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning November 1, 2012, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the highest variable rate of interest, per annum, published daily as the "*prime rate*" in the Money Rates Section of the Western Edition of The Wall Street Journal ("Prime Rate"). In the event that such a rate is no longer published, then the "Prime Rate" shall mean the variable rate of interest, per annum, most recently announced by Bank of America, at its headquarters office as its "Prime Rate," with the understanding that Bank of America's "Prime Rate" is one of its base rates and merely serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest or best rate at which Bank of America calculates interest or extends credit (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index, resulting in an initial rate of 5.000%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: California United Bank, Note Department, 2400 E Katella Ave Ste 200 Anaheim, CA 92806-6900.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

- 18 -

**EXHIBIT 2**

| Loan No: ▓▓202-1 | **PROMISSORY NOTE**<br>**(Continued)** | Page 2 |

---

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default:  (1)  cures the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL EVENTS OF DEFAULT REGARDING ADVERSE CHANGE IN GUARANTOR'S FINANCIAL CONDITION.** A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

**LENDER'S RIGHTS.**  Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.**  Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.**  To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.**  This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.  This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.**  Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.**  Borrower acknowledges this Note is secured by the Collateral as described in the Commercial Security Agreement, dated as of even date herewith, as it may be amended, modified, supplemented, restated, or replaced from time to time, executed by Grantor in favor of Lender.

**LINE OF CREDIT.**  This Note evidences a revolving line of credit.  Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph.  Lender may, but need not, require that all oral requests be confirmed in writing.  All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above.  The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority:  Timothy M. McKenna, President or Jason J. Caufield, Vice President or Courtney Penteado, Controller.  Each Advance under the line of credit must be requested by 3:30 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00.  Borrower agrees to be liable for all sums either:  (A)  advanced in accordance with the instructions of an authorized person or  (B)  credited to any of Borrower's accounts with Lender.  The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**ARBITRATION.**  Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party.  No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code.  Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party.  Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration.  Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction.  Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction.  The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes.  The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**NOTE IMAGING.**  This Note is a "transferable record" as defined in applicable law relating to electronic transactions.  Therefore, the holder of this Note may, on behalf of Borrower, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law.  The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper original as part of the holder's normal business practices.  The holder, on its behalf, may control and transfer such authoritative copy as permitted by such law.

**REQUIRED DEPOSIT ACCOUNTS.**  Borrower agrees to maintain its principal deposit relationship with Lender, including but not limited to a demand deposit account.

**GUARANTY.**  This Note is supported by four (4) Guaranties, dated as of even date herewith, as tthese Guaranties may be amended, modified, supplemented, restated, or replaced from time to time, executed by Guarantors in favor of Lender.

**BUSINESS LOAN AGREEMENT.**  Reference is made to the Business Loan Agreement, dated as of even date herewith, as it may be amended,

**EXHIBIT 2**

- 19 -

**PROMISSORY NOTE**
**(Continued)**

Loan No: ████202-1

Page 3

---

modified, supplemented, restated, or replaced from time to time, ("Business Loan Agreement") for additional terms and conditions. Capitalized terms defined herein shall have the meanings given to them in the Business Loan Agreement. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Business Loan Agreement are true, complete and accurate in all respects as of the date hereof.

**SUCCESSOR INTERESTS.**   The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.**   If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.   Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.   Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.   All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.   All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.   The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**MCKENNA GENERAL ENGINEERING, INC.**

By: _____
     Timothy  M.  McKenna,  President  of  McKenna
     *General Engineering, Inc.*

---

LASER PRO Lending, Ver. 12.2.0.003  Copr. Harland Financial Solutions, Inc. 1997, 2012.  All Rights Reserved.  - CA  N:\CFFWIN\CFI\LPL\D20.FC  TR-3121  PR-45

**EXHIBIT 2**

Exhibit "2"
Page 35

# AMENDMENT NUMBER ONE TO BUSINESS LOAN AGREEMENT

**THIS AMENDMENT NUMBER ONE TO BUSINESS LOAN AGREEMENT** (this "Amendment"), dated as of November 13, 2012, is entered into between **McKenna General Engineering, Inc.,** a California corporation ("Borrower") and **California United Bank, a** California banking corporation, ("Lender"), in light of the following facts:

## RECITALS

WHEREAS, Borrower and Lender have previously entered into that certain Business Loan Agreement, dated as of September 26, 2012, (the "Agreement").

WHEREAS, Borrower and Lender have agreed to amend the Agreement.

## TERMS OF AGREEMENT

NOW, THEREFORE, the parties agree as follows:

1. **RECITALS.** Each of the Recitals set forth above are true and correct and is incorporated by reference and made a part hereof.

2. **DEFINITIONS.** All terms which are defined in the Agreement shall have the same definition when used herein unless a different definition is ascribed to such term under this Amendment, in which case, the definition contained herein shall govern.

3. **AMENDMENTS.** The Agreement is amended as follows:

   (a) **Additional Section Regarding Automatic Sweep Account.** The section entitled AUTOMATIC SWEEP ACCOUNT is added as a new section as follows:

   **AUTOMATIC SWEEP ACCOUNT.** Lender has agreed that an automatic sweep account will be available, which will use any collected funds that exceeds $150,000.00 in the general operating account number 874249900 or any successor or replacement account thereof (the "General Operating Account"), to make principal payment on the line of credit to the extent of the outstanding balance on the line of credit. If the balance in the General Operating Account falls below $150,000.00, the line of credit will be accessed automatically, subject to loan availability, and an Advance made under the line of credit in the exact amount needed to increase funds in the General Operating Account to $150,000.00.

**EXHIBIT 5**

Exhibit "2"
Page 36

4. **CONDITIONS PRECEDENT**. Each of the following is a condition precedent to the effectiveness of this Amendment:

    (a) Lender shall have received a fully executed original copy of this Amendment.

5. **LIMITED EFFECT**. Except for the specific amendment contained in this Amendment, the Agreement shall remain unchanged and in full force and effect.

6. **REPRESENTATIONS AND WARRANTIES**. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

7. **COUNTERPARTS; EFFECTIVENESS**. This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original. All such counterparts, taken together, shall constitute but one and the same Amendment. This Amendment shall become effective upon the execution of this Amendment by each of the parties hereto.

**IN WITNESS WHEREOF,** Lender and Borrower have executed this Amendment.

**BORROWER:**

**McKenna General Engineering, Inc.**

By: _____
      Timothy M. McKenna, President

**LENDER:**

**California United Bank**

By: _____
      David C. Caples, Vice President

2

**EXHIBIT 5**

Exhibit "2"
Page 37

# AMENDMENT NUMBER TWO TO BUSINESS LOAN AGREEMENT

| Borrower: | McKenna General Engineering, Inc.<br>20330 Temescal Canyon Rd<br>Corona, CA  92881-4944 | Lender: | California United Bank<br>15821 Ventura Blvd Ste 100<br>Encino, CA  91436-5203 |
|---|---|---|---|

**THIS AMENDMENT NUMBER TWO TO BUSINESS LOAN AGREEMENT** (this "Amendment"), dated as of August 22, 2013, is entered into between **McKenna General Engineering, Inc.,** a California corporation ("Borrower"), and **California United Bank,** a California banking corporation ("Lender"), in light of the following facts:

**RECITALS:**

1. WHEREAS, Borrower and Lender have previously entered into that certain Business Loan Agreement, dated as of August 22, 2013, as amended by that certain Amendment Number One to Business Loan Agreement, dated as of November 13, 2012, (collectively the "Agreement").

2. WHEREAS, Borrower and Lender have agreed to amend the Agreement.

**TERMS OF AGREEMENT:**

NOW, THEREFORE, the parties agree as follows:

1. **RECITALS.** Each of the Recitals set forth above are true and correct and is incorporated by reference and made a part hereof.

2. **DEFINITIONS.** All terms which are defined in the Agreement shall have the same definition when used herein unless a different definition is ascribed to such term under this Amendment, in which case, the definition contained herein shall govern.

3. **AMENDMENTS.** The Agreement is amended as follows:

(a) **Additional Requirement Regarding Financial Covenants and Ratios.**  The financial covenant requirement regarding Ratio of Total Debt Effective Tangible Net Worth under subsection entitled Financial Covenants and Ratios is deleted in its entirety and is replaced with a new requirement as follows:

**Ratio of Total Debt to Effective Tangible Net Worth.**  Borrower shall maintain Ratio of Total Debt to Effective Tangible Net Worth (defined as the sum of current liabilities and non-current liabilities divided by Effective Tangible Net Worth) of not more than 4.25 to 1.00, to be determined as of the end of each fiscal year. For purposes of calculating the above ratio, Effective Tangible Net Worth is defined as the aggregate net worth, less intangible assets, less investments in affiliates, and less any amount due from employees, shareholders, officers, guarantors and affiliates of Borrower, shareholders, officers, or guarantors.

4. **CONDITIONS PRECEDENT.** Each of the following is a condition precedent to the effectiveness of this Amendment:

(a) Lender shall have received fully executed original copies of this Amendment, Promissory Note, Acknowledgment of Guarantors, Notice of Final Agreement, and Disbursement Request and Authorization.

5. **LIMITED EFFECT.** Except for the specific amendment contained in this Amendment, the Agreement shall remain unchanged and in full force and effect.

6. **REPRESENTATIONS AND WARRANTIES.** Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

7. **COUNTERPARTS; EFFECTIVENESS.** This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original.  All such counterparts, taken together, shall constitute but one and the same Amendment. This Amendment shall become effective upon the execution of this Amendment by each of the parties hereto.

**IN WITNESS WHEREOF,** Lender and Borrower have executed this Amendment.

**BORROWER:**

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy M. McKenna, President

- 32 -

**EXHIBIT 6**

## AMENDMENT NUMBER TWO TO BUSINESS LOAN AGREEMENT

| Loan No: ███202-1 | (Continued) | Page 2 |
|---|---|---|

**LENDER:**

California United Bank

By: _____

David C. Caples, Senior Vice President

LASER PRO Lending, Ver. 13.2.20.010  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - CA  N:\CF\WIN\CFI\LPL\D50.FC  TR-4065  PR-79

**EXHIBIT 6**

Exhibit "2"
Page 39

# PROMISSORY NOTE

| Borrower: | McKenna General Engineering, Inc.<br>20330 Temescal Canyon Rd<br>Corona, CA 92881-4944 | Lender: | California United Bank<br>15821 Ventura Blvd Ste 100<br>Encino, CA 91436-5203 |
|---|---|---|---|

**Principal Amount: $1,000,000.00**                                      **Date of Note: August 22, 2013**

**RESTATEMENT OF ORIGINAL NOTE.** This Note has been issued in order to amend and restate, and in substitution for, that certain promissory note (the "Original Note"), dated as of September 26, 2012, in the original principal amount of One Million & 00/100 Dollars ($1,000,000.00), as amended and restated from time to time, executed by Borrower to the order of Lender.

**PROMISE TO PAY.** McKenna General Engineering, Inc. ("Borrower") promises to pay to California United Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 1, 2014. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 1, 2013, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the highest variable rate of interest, per annum, published daily as the "prime rate" in the Money Rates Section of the Western Edition of The Wall Street Journal ("Prime Rate"). In the event that such a rate is no longer published, then the "Prime Rate" shall mean the variable rate of interest, per annum, most recently announced by Bank of America, at its headquarters office as its "Prime Rate," with the understanding that Bank of America's "Prime Rate" is one of its base rates and merely serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest or best rate at which Bank of America calculates interest or extends credit (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index, resulting in an initial rate of 5.000%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: *California United Bank, Note Department, 2400 E Katella Ave Ste 200 Anaheim, CA 92806-6900.*

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

- 34 -

**EXHIBIT 7**

| Loan No: ████02-1 | **PROMISSORY NOTE**<br>**(Continued)** | Page 2 |
|---|---|---|

of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL EVENTS OF DEFAULT REGARDING ADVERSE CHANGE IN GUARANTOR'S FINANCIAL CONDITION.** A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the Collateral as described in the Commercial Security Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, executed by Grantor in favor of Lender.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Timothy M. McKenna, President or Jason J. Caufield, Vice President or Courtney Penteado Controller. Each Advance under the line of credit must be requested by 3:30 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**NOTE IMAGING.** This Note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Note may, on behalf of Borrower, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law. The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its behalf, may control and transfer such authoritative copy as

**EXHIBIT 7**

Exhibit "2"
Page 41

| Loan No: ⬛202-1 | **PROMISSORY NOTE**<br>**(Continued)** | Page 3 |
|---|---|---|

permitted by such law.

**REQUIRED DEPOSIT ACCOUNTS.** Borrower agrees to maintain its principal deposit relationship with Lender, including but not limited to a demand deposit account.

**BUSINESS LOAN AGREEMENT.** Reference is made to the Business Loan Agreement, dated as of even date herewith, as it may be amended, modified, supplemented, restated, or replaced from time to time, ("Business Loan Agreement") for additional terms and conditions. Capitalized terms defined herein shall have the meanings given to them in the Business Loan Agreement. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Business Loan Agreement are true, complete and accurate in all respects as of the date hereof.

**GUARANTY.** This Note is supported by four (4) Guaranties, dated as of September 26, 2012, as these Guaranties may be amended, modified, supplemented, restated, or replaced from time to time, executed by Guarantors in favor of Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy M. McKenna, President/Secretary of
McKenna General Engineering, Inc.

LASER PRO Lending, Ver. 13.2.20.010  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - CA  N:\CFI\WIN\CFILPL\D20.FC  TR-4395  PR-79

**EXHIBIT 7**

Exhibit "2"
Page 42

# AMENDMENT NUMBER THREE TO BUSINESS LOAN AGREEMENT

| Borrower: | McKenna General Engineering, Inc.<br>20330 Temescal Canyon Rd<br>Corona, CA 92881-4944 | Lender: | California United Bank<br>15821 Ventura Blvd Ste 100<br>Encino, CA 91436-5203 |
|---|---|---|---|

THIS AMENDMENT NUMBER THREE TO BUSINESS LOAN AGREEMENT (this "Amendment"), dated as of August 5, 2014, is entered into between **McKenna General Engineering, Inc.,** a California Corporation, ("Borrower") and **California United Bank,** a California banking corporation ("Lender"), in light of the following facts:

**RECITALS:**

WHEREAS, Borrower and Lender have previously entered into that certain Business Loan Agreement, dated as of September 26, 2012, as amended by Amendment Number One to Business Loan Agreement, dated as of November 13, 2012, as amended by Amendment Number Two to Business Loan Agreement, dated as of August 22, 2013 (collectively the "Agreement").

WHEREAS, Borrower and Lender have agreed to amend certain terms and conditions of the Agreement in certain respects.

**TERMS OF AGREEMENT:**

NOW, THEREFORE, the parties agree as follows:

1. **RECITALS.** Each of the Recitals set forth above are true and correct and is incorporated by reference and made a part hereof.

2. **DEFINITIONS.** All terms which are defined in the Agreement shall have the same definition when used herein unless a different definition is ascribed to such term under this Amendment, in which case, the definition contained herein shall govern.

3. **AMENDMENTS.** The Agreement is amended as follows:

(a) **Change in Requirements Regarding Financial Statements.** The subsection entitled **Financial Statements** is deleted in its entirety and is replaced with a new subsection as follows:

**Financial Statements.** Furnish the Lender with the following:

**Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, reviewed by a certified public accountant satisfactory to Lender.

**Accounts Receivable and Accounts Payable Aging Reports.** As soon as available, but in no event later than sixty (60) days after the end of each fiscal quarter, (a) a current detailed aging, by total and by customer, of Borrower's accounts receivable listing both the invoice date and the due date, and (b) a current detailed aging, by total and by vendor, of Borrower's accounts payable, both of which shall be set forth in a form and shall contain such information as is acceptable to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower and Guarantor as being true and correct.

(b) **Change in Requirement Regarding Financial Covenants and Ratios.** The subsection entitled **Financial Covenants and Ratios** is added under section entitled **AFFIRMATIVE COVENANTS** as follows:

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

**Ratio of Total Debt to Effective Tangible Net Worth.** Borrower shall maintain a Ratio of Total Debt to Effective Tangible Net Worth (defined as the sum of current liabilities and non-current liabilities less Subordinated Debt divided by Effective Tangible Net Worth) of not more than 3.85 to 1.00, to be determined as of the end of each fiscal year. For purposes of calculating the above ratio, Effective Tangible Net Worth is defined as the aggregate net worth, less intangible assets, less investments in affiliates, and less any amount due from employees, shareholders, officers, guarantors and affiliates of Borrower, shareholders, officers, or guarantors.

Except as provided above, all computations made to determine compliance with the requirements contained in the paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

4. **CONDITIONS PRECEDENT.** Each of the following is a condition precedent to the effectiveness of this Amendment:

(a) Lender shall have received fully executed original copies of this Amendment, Promissory Note, Acknowledgement of Guarantors, Notice of Final Agreement, and Disbursement Request and Authorization.

5. **LIMITED EFFECT.** Except for the specific amendment contained in this Amendment, the Agreement shall remain unchanged and in full force and effect.

6. **REPRESENTATIONS AND WARRANTIES.** Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

7. **COUNTERPARTS; EFFECTIVENESS.** This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original. All such counterparts, taken together, shall constitute but one and the same Amendment. This Amendment shall become effective upon the execution of this Amendment by each of the parties hereto.

**IN WITNESS WHEREOF,** Lender and Borrower have executed this Amendment.

**EXHIBIT 8**

Exhibit "2"
Page 43

## AMENDMENT NUMBER THREE TO BUSINESS LOAN AGREEMENT

Loan No: ██████202-1                      (Continued)                               Page 2

**BORROWER:**

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy M. McKenna, President

**LENDER:**

CALIFORNIA UNITED BANK

By: _____
David C. Caples, Vice-President

LaserPro, Ver. 14.3.10.003  Copr. D-H USA Corporation 1997, 2014.  All Rights Reserved.  - CA  R:\CPA\WCPA\PLG\80.FC  TR-4976  PR-79

# PROMISSORY NOTE

| Borrower: | McKenna General Engineering, Inc.<br>20330 Temescal Canyon Rd<br>Corona, CA 92881-4944 | Lender: | California United Bank<br>15821 Ventura Blvd Ste 100<br>Encino, CA 91436-5203 |
|---|---|---|---|

**Principal Amount: $1,300,000.00**                                    **Date of Note: August 5, 2014**

**RESTATEMENT OF ORIGINAL NOTE.** This Note has been issued in order to amend and restate, and in substitution for, that certain promissory note (the "Original Note"), dated as of September 26 2012, in the original principal amount of One Million & 00/100 Dollars ($1,000,000.00), as amended and restated from time to time, executed by Borrower to the order of Lender.

**PROMISE TO PAY.** McKenna General Engineering, Inc. ("Borrower") promises to pay to California United Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Three Hundred Thousand & 00/100 Dollars ($1,300,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 1, 2015. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 1, 2014, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the highest variable rate of interest, per annum, published daily as the prime rate in the Money Rates Section of the Western Edition of The Wall Street Journal (the "Prime Rate"). In the event that such a rate is no longer published, then the Prime Rate shall mean the variable rate of interest, per annum, most recently announced by Bank of America, at its headquarters office as its Prime Rate, with the understanding that Bank of America's Prime Rate is one of its base rates and merely serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest or best rate at which Bank of America calculates interest or extends credit (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index, resulting in an initial rate of 5.000%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: California United Bank, Note Department, 2400 E Katella Ave Ste 260 Anaheim, CA 92806-6900.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

Loan No: [████]202-1

## PROMISSORY NOTE
### (Continued)

Page 2

of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL EVENTS OF DEFAULT REGARDING ADVERSE CHANGE IN GUARANTOR'S FINANCIAL CONDITION.** A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the Collateral as described in the Commercial Security Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, executed by Grantor in favor of Lender.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Timothy M. McKenna, President; or Jason J. Caufield, Vice President; or Courtney Penteado, Controller. Each Advance under the line of credit must be requested by 1:00 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**NOTE IMAGING.** This Note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Note may, on behalf of Borrower, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law. The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its behalf, may control and transfer such authoritative copy as

- 40 -

**EXHIBIT 9**

| Loan No: ████202-1 | PROMISSORY NOTE<br>(Continued) | Page 3 |
|---|---|---|

permitted by such law.

**REQUIRED DEPOSIT ACCOUNTS.** Borrower agrees to maintain its principal deposit relationship with Lender, including but not limited to a demand deposit account.

**BUSINESS LOAN AGREEMENT.** Reference is made to the Business Loan Agreement, dated as of September 28, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, ("Business Loan Agreement") for additional terms and conditions. Capitalized terms defined herein shall have the meanings given to them in the Business Loan Agreement. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Business Loan Agreement are true, complete and accurate in all respects as of the date hereof.

**GUARANTY.** This Note is supported by four (4) Guaranties, dated as of September 28, 2012, as these Guaranties may be amended, modified, supplemented, restated, or replaced from time to time, executed by Guarantor(s) in favor of Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy M. McKenna, President/Secretary of
McKenna General Engineering, Inc.

LaserPro, Ver. 14.3.10.003 Copr. D+H USA Corporation 1997, 2014. All Rights Reserved. - CA  N:\CFI\WIN\CFI\LPL\D9.FC  TR-4976  PR-79

# AMENDMENT NUMBER FOUR TO BUSINESS LOAN AGREEMENT

| Borrower: | McKenna General Engineering, Inc.<br>1632 Railroad St<br>Corona, CA 82880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA 90017-3449 |

**THIS AMENDMENT NUMBER FOUR TO BUSINESS LOAN AGREEMENT** (this "Amendment"), dated as of July 27, 2015, is entered into between McKenna General Engineering, Inc., a California corporation, ("Borrower") and California United Bank, a California banking corporation ("Lender"), in light of the following facts:

**RECITALS:**

WHEREAS, Borrower and Lender have previously entered into that certain Business Loan Agreement, dated as of September 26, 2012, as amended by this Amendment and as it may be further amended, supplemented or otherwise modified from time to time, (the "Agreement").

WHEREAS, Borrower and Lender have agreed to amend the Agreement pursuant to this Amendment.

**TERMS OF AGREEMENT:**

NOW, THEREFORE, the parties agree as follows:

1. **RECITALS.** Each of the Recitals set forth above are true and correct and is incorporated by reference and made a part hereof.

2. **DEFINITIONS.** All terms which are defined in the Agreement shall have the same definition when used herein unless a different definition is ascribed to such term under this Amendment, in which case, the definition contained herein shall govern.

3. **AMENDMENTS.** The Agreement is amended as follows:

(a) **Change in Requirements Regarding Financial Statements.** The subsection entitled Financial Statements is deleted in its entirety and is replaced with a new subsection as follows:

Financial Statements. Furnish Lender with the following:

Annual Statements. As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, reviewed by a certified public accountant satisfactory to Lender.

Interim Statements. As soon as available, but in no event later than sixty (60) days after the end of each fiscal quarter, Borrower's balance sheet and profit and loss statement for the period ended, prepared by Borrower.

Tax Returns. As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by Borrower.

Accounts Receivable and Accounts Payable Aging Reports. As soon as available, but in no event later than sixty (60) days after the end of each fiscal quarter, (a) a current detailed aging, by total and by customer, of Borrower's accounts receivable, and (b) a current detailed aging, by total and by vendor, of Borrower's accounts payable, both of which shall be set forth in a form and shall contain such information as is acceptable to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

In addition, Borrower shall cause Guarantor to furnish Lender with the following:   (A) Annual Statements. As soon as available, but in no event later than one hundred twenty (120) days after the end of each calendar year, a copy of Guarantor's current financial statements, together with a copy of Guarantor's bank account statements and brokerage statements, which shall present fairly and thoroughly the financial condition of Guarantor as of the date shown on the statements. (B) Tax Returns. As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, a copy of Guarantor's federal tax returns and any amendments thereto, together with a copy of Schedule K-1 statements. Notwithstanding anything to the contrary under this Agreement, the financial reports of Guarantor required to be furnished to Lender need not be prepared in accordance with GAAP and shall be certified by each such Guarantor as being true and correct.

(b) **Change in Requirements Regarding Financial Covenants and Ratios.** The subsection entitled Financial Covenants and Ratios is deleted in its entirety and is replaced with a new subsection as follows:

Ratio of Total Debt to Effective Tangible Net Worth. Borrower shall maintain a Ratio of Total Debt to Effective Tangible Net Worth (defined as the sum of current and non-current liabilities less Subordinated Debt divided by Effective Tangible Net Worth) of not more than 3.75 to 1.00, to be determined as of the end of each fiscal year. For purposes of calculating the above ratio, Effective Tangible Net Worth is defined as the aggregate net worth, less intangible assets, less investments in affiliates, and less any amount due from employees, shareholders, officers, guarantors and affiliates of Borrower, shareholders, officers, or guarantors.

Profitability. Borrower shall generate a net profit after tax from operations of not less than $300,000.00 at the end of each fiscal year.

4. **CONDITIONS PRECEDENT.** Each of the following is a condition precedent to the effectiveness of this Amendment:

(a) Lender shall have received fully executed originals of this Amendment and the documents listed in the Notice of Final Agreement.

5. **LIMITED EFFECT.** Except for the specific amendment contained in this Amendment, the Agreement shall remain unchanged and in full force and effect.

6. **REPRESENTATIONS AND WARRANTIES.** Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

**EXHIBIT 10**

Exhibit "2"
Page 48

## AMENDMENT NUMBER FOUR TO BUSINESS LOAN AGREEMENT

| Loan No: ▓▓▓202-1 | (Continued) | Page 2 |

**7. COUNTERPARTS; EFFECTIVENESS.** This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original. All such counterparts, taken together, shall constitute but one and the same Amendment. This Amendment shall become effective upon the execution of this Amendment by each of the parties hereto.

IN WITNESS WHEREOF, Lender and Borrower have executed this Amendment.

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy  M.  McKenna,  President  of  McKenna
General Engineering, Inc.

LENDER:

CALIFORNIA UNITED BANK

X _____
David C. Caples, Senior Vice President

LaserPro, Ver. 15.3.10.050  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - CA  H:\CFI\WIN\CFI\LPL\D10.FC  TR-6415  PR-76

**EXHIBIT 10**

Exhibit "2"
Page 49

# PROMISSORY NOTE

| Borrower: | McKenna General Engineering, Inc.<br>1632 Railroad St<br>Corona, CA 92880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA 90017-3449 |
| --- | --- | --- | --- |

**Principal Amount: $1,600,000.00**                                           **Date of Note:  July 27, 2015**

**RESTATEMENT OF ORIGINAL NOTE.** This Note has been issued in order to amend and restate, and in substitution for, that certain promissory note (the "Original Note"), dated as of September 26, 2012, in the original principal amount of One Million & 00/100 Dollars ($1,000,000.00), as amended and restated from time to time, executed by Borrower to the order of Lender.  Such substitution was made at the request of Borrower, in order to, among other things increase the principal amount of the revolving line of credit evidenced by the Original Note.

**PROMISE TO PAY.**  McKenna General Engineering, Inc. ("Borrower") promises to pay to California United Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Six Hundred Thousand & 00/100 Dollars ($1,600,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.**  Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 1, 2016.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 1, 2015, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.**  The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the highest variable rate of interest, per annum, published daily in the Money Rates Section of the Western Edition of The Wall Street Journal (the "Prime Rate").  In the event that such a rate is no longer published, then the Prime Rate shall mean the variable rate of interest, per annum, most recently announced by Bank of America, as its headquarters office as its Prime Rate, with the understanding that Bank of America's Prime Rate is one of its base rates and merely serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest or best rate at which Bank of America calculates interest or extends credit (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each day.  Borrower understands that Lender may make loans based on other rates as well.  The index currently is 3.250% per annum.  Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index, resulting in an initial rate of 5.000%.  NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.   Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  California United Bank, Note Department, 2400 E Katella Ave Ste 200 Anaheim, CA 92806-0900.

**LATE CHARGE.**  If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.**  Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate).  Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin").  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

- 44 -                                                              **EXHIBIT 11**

Loan No: [   ]202-1

**PROMISSORY NOTE**
**(Continued)** Page 2

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

Change In Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Cure Provisions. If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

ADDITIONAL EVENTS OF DEFAULT REGARDING ADVERSE CHANGE IN GUARANTOR'S FINANCIAL CONDITION. A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

COLLATERAL. Borrower acknowledges this Note is secured by the Collateral as described in the Commercial Security Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, executed by Grantor in favor of Lender.

LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Timothy M. McKenna, President; or Jason J. Caufield, Vice President; or Courtney Penteado, Controller. Each Advance under the line of credit must be requested by 1:00 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

ARBITRATION. Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

NOTE IMAGING. This Note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Note may, on behalf of Borrower, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law. The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper

- 45 -

**EXHIBIT 11**

Loan No: ____202-1

**PROMISSORY NOTE**
**(Continued)**

Page **3**

original as part of the holder's normal business practices. The holder, on its behalf, may control and transfer such authoritative copy as permitted by such law.

**REQUIRED DEPOSIT ACCOUNTS.** Borrower agrees to maintain its principal deposit relationship with Lender, including but not limited to a demand deposit account.

**BUSINESS LOAN AGREEMENT.** Reference is made to the Business Loan Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, ("Business Loan Agreement") for additional terms and conditions. Capitalized terms defined herein shall have the meanings given to them in the Business Loan Agreement. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Business Loan Agreement are true, complete and accurate in all respects as of the date hereof.

**GUARANTY.** This Note is supported by four (4) Guaranties, dated as of September 26, 2012, as these Guaranties may be amended, modified, supplemented, restated, or replaced from time to time, executed by Guarantors in favor of Lender.

**SMALL BUSINESS JOBS ACT CERTIFICATION.** As required by Section 4107(d)(2) of the Small Business Jobs Act of 2010, Borrower hereby certifies to Lender that the principals of Borrower and its affiliates (as defined by Section 4107(d)(2) of the Small Business Act of 2010), have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911)).

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By:_____
    Timothy  M.  McKenna,  President  of  McKenna
    General Engineering, Inc.

LaserPro, Ver. 12.3.10.002  Copr. © HI USA Corporation 1997, 2013.  All Rights Reserved.  - CA  R:\CFI\WIN\CFI\LPL\D20.FC  TR-6105  PR-20

**EXHIBIT 11**

Exhibit "2"
Page 52

# PROMISSORY NOTE

| Borrower: | McKenna General Engineering, Inc.<br>1632 Railroad St<br>Corona, CA  92880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA  90017-3449 |
|---|---|---|---|

**Principal Amount: $1,600,000.00**                                      **Date of Note: July 12, 2016**

**RESTATEMENT OF ORIGINAL NOTE.** This Note has been issued in order to amend and restate, and in substitution for, that certain promissory note (the "Original Note"), dated as of September 26, 2012, in the original principal amount of One Million & 00/100 Dollars ($1,000,000.00), as amended and restated from time to time, executed by Borrower to the order of Lender.

**PROMISE TO PAY.** McKenna General Engineering, Inc. ("Borrower") promises to pay to California United Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Six Hundred Thousand & 00/100 Dollars ($1,600,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 1, 2016. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning August 1, 2016, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the highest variable rate of interest, per annum, published daily as the prime rate in the Money Rates Section of the Western Edition of The Wall Street Journal (the "Prime Rate"). In the event that such a rate is no longer published, then the Prime Rate shall mean the variable rate of interest, per annum, most recently announced by Bank of America, at its headquarters office as its Prime Rate, with the understanding that Bank of America's Prime Rate is one of its base rates and merely serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest or best rate at which Bank of America calculates interest or extends credit (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.500% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index, resulting in an initial rate of 5.250%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.   Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: California United Bank, Note Department, 2400 E Katella Ave Ste 200 Anaheim, CA  92806-6900.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

## PROMISSORY NOTE

Loan No: ████202-1    (Continued)    Page 2

of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL EVENTS OF DEFAULT REGARDING ADVERSE CHANGE IN GUARANTOR'S FINANCIAL CONDITION.** A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the Collateral as described in the Commercial Security Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, executed by Grantor in favor of Lender.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Timothy M. McKenna, President; or Jason J. Caufield, Vice President; or Courtney Penteado, Controller. Each Advance under the line of credit must be requested by 1:00 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**NOTE IMAGING.** This Note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Note may, on behalf of Borrower, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law. The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its behalf, may control and transfer such authoritative copy as

- 48 -    **EXHIBIT 12**

**PROMISSORY NOTE**

Loan No: ▮▮▮202-1                          **(Continued)**                          **Page 3**

permitted by such law.

REQUIRED DEPOSIT ACCOUNTS. Borrower agrees to maintain its principal deposit relationship with Lender, including but not limited to a demand deposit account.

BUSINESS LOAN AGREEMENT. Reference is made to the Business Loan Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, ("Business Loan Agreement") for additional terms and conditions. Capitalized terms defined herein shall have the meanings given to them in the Business Loan Agreement. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Business Loan Agreement are true, complete and accurate in all respects as of the date hereof.

GUARANTY. This Note is supported by four (4) Guaranties, dated as of September 26, 2012, as these Guaranties may be amended, modified, supplemented, restated, or replaced from time to time, executed by Guarantors in favor of Lender.

SMALL BUSINESS JOBS ACT CERTIFICATION. As required by Section 4107(d)(2) of the Small Business Jobs Act of 2010, Borrower hereby certifies to Lender that the principals of Borrower and its affiliates (as defined by Section 4107(d)(2) of the Small Business Act of 2010), have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911)).

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
    Timothy  M.  McKenna,  President  of  McKenna
    General Engineering, Inc.

LaserPro, Ver. 15.1.10.003  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - CA  N:\CFI\WIN\CFI\LPL\D18.FC  TR-4253  PR-79

**EXHIBIT 12**

## AMENDMENT NUMBER FIVE TO BUSINESS LOAN AGREEMENT

| Borrower: | McKenna General Engineering, Inc.<br>1832 Railroad St<br>Corona, CA 92880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA 90017-3449 |
|---|---|---|---|

THIS AMENDMENT NUMBER FIVE TO BUSINESS LOAN AGREEMENT (this "Amendment"), dated as of October 29, 2016, is entered into between McKenna General Engineering, Inc., a California corporation, ("Borrower") and California United Bank, a California banking corporation ("Lender"), in light of the following facts:

RECITALS:

WHEREAS, Borrower and Lender have previously entered into that certain Business Loan Agreement, dated as of September 26, 2012, (as amended by this Amendment and as it may be further amended, supplemented or otherwise modified from time to time, the "Agreement").

WHEREAS, Borrower and Lender have agreed to amend the Agreement pursuant to this Amendment.

TERMS OF AGREEMENT:

NOW, THEREFORE, the parties agree as follows:

1. RECITALS. Each of the Recitals set forth above are true and correct and is incorporated by reference and made a part hereof.

2. DEFINITIONS. All terms which are defined in the Agreement shall have the same definition when used herein unless a different definition is ascribed to such term under this Amendment, in which case, the definition contained herein shall govern.

3. AMENDMENTS. The Agreement is amended as follows:

(a) Change in Requirement Regarding Profitability. The requirement regarding Profitability is deleted in its entirety and is replaced with a new requirement as follows:

Profitability. Borrower shall generate a net profit after tax from operations less loans to shareholders of not less than $300,000.00 at the end of each fiscal year.

4. CONDITIONS PRECEDENT. Each of the following is a condition precedent to the effectiveness of this Amendment:

(a) Lender shall have received fully executed originals of this Amendment and the documents listed in the Notice of Final Agreement.

5. LIMITED EFFECT. Except for the specific amendment contained in this Amendment, the Agreement shall remain unchanged and in full force and effect.

6. REPRESENTATIONS AND WARRANTIES. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

7. COUNTERPARTS; EFFECTIVENESS. This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original. All such counterparts, taken together, shall constitute but one and the same Amendment. This Amendment shall become effective upon the execution of this Amendment by each of the parties hereto.

IN WITNESS WHEREOF, Lender and Borrower have executed this Amendment.

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy M. McKenna, President of McKenna
General Engineering, Inc.

## AMENDMENT NUMBER FIVE TO BUSINESS LOAN AGREEMENT
### (Continued)

Loan No: ████202-1

Page 2

LENDER:

CALIFORNIA UNITED BANK

X _____
David G. Caples, Vice President

LaserPro, Ver. 05.0.00.003  Copr. D+H USA Corporation 1997, 2018.  All Rights Reserved.  - CA  M:\CFI\FILE\PL\FC350.FC TR-3782  PR-78

**EXHIBIT 13**

Exhibit "2"
Page 57

# PROMISSORY NOTE

| Borrower: | McKenna General Engineering, Inc.<br>1632 Railroad St<br>Corona, CA 92880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA 90017-3449 |
|---|---|---|---|

**Principal Amount: $1,600,000.00**                                   **Date of Note: October 20, 2016**

**RESTATEMENT OF ORIGINAL NOTE.** This Note has been issued in order to amend and restate, and in substitution for, that certain promissory note (the "Original Note"), dated as of September 26, 2012, in the original principal amount of One Million & 00/100 Dollars ($1,000,000.00), as amended and restated from time to time, executed by Borrower to the order of Lender.

**PROMISE TO PAY.** McKenna General Engineering, Inc. ("Borrower") promises to pay to California United Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Six Hundred Thousand & 00/100 Dollars ($1,600,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 1, 2017. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning November 1, 2016, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the highest variable rate of interest, per annum, published daily as the prime rate in the Money Rates Section of the Western Edition of The Wall Street Journal (the "Prime Rate"). In the event that such a rate is no longer published, then the Prime Rate shall mean the variable rate of interest, per annum, most recently announced by Bank of America, at its headquarters office as its Prime Rate, with the understanding that Bank of America's Prime Rate is one of its base rates and merely serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest or best rate at which Bank of America calculates interest or extends credit (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 3.500% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index, resulting in an initial rate of 5.250%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.   Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: California United Bank, Note Department, 2400 E Katella Ave Ste 200 Anaheim, CA 92806-6000.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any

**PROMISSORY NOTE**
**(Continued)**

Loan No: ▌▌▌202-1                                                                                                    Page 2

Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL EVENTS OF DEFAULT REGARDING ADVERSE CHANGE IN GUARANTOR'S FINANCIAL CONDITION.** A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the Collateral as described in the Commercial Security Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, executed by Grantor in favor of Lender.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Timothy M. McKenna, President; or Jason J. Caufield, Vice President; or Courtney Penteado, Controller. Each Advance under the line of credit must be requested by 1:00 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**NOTE IMAGING.** This Note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Note may, on behalf of Borrower, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law. The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its behalf, may control and transfer such authoritative copy as

- 53 -                                                                                                    **EXHIBIT 14**

**PROMISSORY NOTE**
**(Continued)**

| Loan No: ▆▆▆202-1 | | Page 3 |

permitted by such law.

**REQUIRED DEPOSIT ACCOUNTS.** Borrower agrees to maintain its principal deposit relationship with Lender, including but not limited to a demand deposit account.

**BUSINESS LOAN AGREEMENT.** Reference is made to the Business Loan Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, ("Business Loan Agreement") for additional terms and conditions. Capitalized terms defined herein shall have the meanings given to them in the Business Loan Agreement. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Business Loan Agreement are true, complete and accurate in all respects as of the date hereof.

**GUARANTY.** This Note is supported by four (4) Guaranties, dated as of September 26, 2012, as these Guaranties may be amended, modified, supplemented, restated, or replaced from time to time, executed by Guarantors in favor of Lender.

**SMALL BUSINESS JOBS ACT CERTIFICATION.** As required by Section 4107(d)(2) of the Small Business Jobs Act of 2010, Borrower hereby certifies to Lender that the principals of Borrower and its affiliates (as defined by Section 4107(d)(2) of the Small Business Act of 2010), have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911)).

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
    Timothy M. McKenna, President of McKenna
    General Engineering, Inc.

LaserPro, Ver. 18.3.10.005  Copr. D+H USA Corporation 1997, 2018.  All Rights Reserved.  - CA  N\ADT\WIN\CFI\LPL\D20.FC  TR-8763  PR-70

**EXHIBIT 14**

Exhibit "2"
Page 60

## AMENDMENT NUMBER SIX TO BUSINESS LOAN AGREEMENT

| Borrower: | McKenna General Engineering, Inc.<br>1632 Railroad St<br>Corona, CA 92880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA 90017-3449 |
|---|---|---|---|

THIS AMENDMENT NUMBER SIX TO BUSINESS LOAN AGREEMENT (this "Amendment"), dated as of October 11, 2017, is entered into between McKenna General Engineering, Inc., a California corporation, ("Borrower") and California United Bank, a California banking corporation ("Lender"), in light of the following facts:

RECITALS:

WHEREAS, Borrower and Lender have previously entered into that certain Business Loan Agreement, dated as of September 26, 2012, (as amended by this Amendment and as it may be further amended, supplemented or otherwise modified from time to time, the "Agreement").

WHEREAS, Borrower and Lender have agreed to amend the Agreement pursuant to this Amendment.

TERMS OF AGREEMENT:

NOW, THEREFORE, the parties agree as follows:

1. RECITALS. Each of the Recitals set forth above are true and correct and is incorporated by reference and made a part hereof.

2. DEFINITIONS. All terms which are defined in the Agreement shall have the same definition when used herein unless a different definition is ascribed to such term under this Amendment, in which case, the definition contained herein shall govern.

3. AMENDMENTS. The Agreement is amended as follows:

(a) The section entitled ADVANCE AUTHORITY is deleted in its entirety and is replaced with a new section to read as follows:

ADVANCE AUTHORITY. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Timothy M. McKenna, President or Courtney A. Penteado, Secretary. Each Advance under the line of credit must be requested by 1:00 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00

(b) Change in Guaranties. The subsection entitled Guaranties is deleted in its entirety and replaced with a new subsection to read as follows:

Guaranties. Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| Timothy M. McKenna | Unlimited |
| McKenna Family Trust | Unlimited |

4. CONDITIONS PRECEDENT. Each of the following is a condition precedent to the effectiveness of this Amendment:

(a) Lender shall have received fully executed originals of this Amendment and the documents listed in the Notice of Final Agreement.

5. LIMITED EFFECT. Except for the specific amendment contained in this Amendment, the Agreement shall remain unchanged and in full force and effect.

6. REPRESENTATIONS AND WARRANTIES. Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

7. COUNTERPARTS; EFFECTIVENESS. This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original. All such counterparts, taken together, shall constitute but one and the same Amendment. This Amendment shall become effective upon the execution of this Amendment by each of the parties hereto.

IN WITNESS WHEREOF, Lender and Borrower have executed this Amendment.

## AMENDMENT NUMBER SIX TO BUSINESS LOAN AGREEMENT

| Loan No: ████202-1 | (Continued) | Page 2 |

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy M. McKenna, President of McKenna
General Engineering, Inc.

By: _____
Courtney A. Penteado, Secretary of McKenna
General Engineering, Inc.

LENDER:

CALIFORNIA UNITED BANK

X _____
Eric Dole, Senior Vice-President

K. Brian HORTON, Pres.

LaserPro, Ver. 17.1.10.015  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - CA  N:\CFWIN\CFILPL\G60.FC  TR-10258  PR-79

**EXHIBIT 15**

Exhibit "2"
Page 62

## CHANGE IN TERMS AGREEMENT

| Borrower: | McKenna General Engineering, Inc.<br>1632 Railroad St<br>Corona, CA  92880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA  90017-3449 |
|---|---|---|---|

**Principal Amount:  $1,600,000.00**                              **Date of Agreement:  October 11, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**  Borrower is indebted to Lender in the original principal amount of One Million & 00/100 Dollars ($1,000,000.00) (the "Loan"), as evidenced by a promissory note (the "Original Note"), dated as of September 26, 2012, executed by Borrower to the order of Lender, as amended and restated from time to time.

Borrower acknowledges that as of the date of this Agreement the outstanding principal balance due under the Note is $1,600,000.00 (the "Principal Balance").

**DESCRIPTION OF COLLATERAL.**  Borrower acknowledges that the Note is secured by the Collateral as described in the Commercial Security Agreement, dated September 26, 2012, as may be amended, modified, supplemented, restated, or replaced from time to time, executed by Grantor in favor of Lender.

**DESCRIPTION OF CHANGE IN TERMS.**  Notwithstanding anything contained in this Agreement to the contrary, the effective date of this Agreement is, and the changes made to the loan terms, as set forth below, are effective as of  October 11, 2017.

1)  The maturity date of the loan will be extended from October 1, 2017 to January 1, 2018.

2)  The guaranties of Jason John Caufield and Caufield Revocable Trust are hereby released.

3)  The **LINE OF CREDIT** section of the Note is deleted in its entirety and is replaced with a new section as follows:

**LINE OF CREDIT.**  This Note evidences a revolving line of credit.  Advances under this Note may be requested orally by Borrower or as provided in this paragraph.  All oral requests shall be confirmed in writing on the day of the request.  All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above.  The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives written notice from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Timothy M. McKenna, President or Courtney A. Penteado, Secretary. Each Advance under the line of credit must be requested by 1:00 PM Pacific Standard Time, subject to a minimum Advance of $1,000.00 with subsequent Advances in increments of at least $1,000.00.**  Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender.  The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.  Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with lender, including any agreement made in connection with the signing of this Note;  (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**BUSINESS LOAN AGREEMENT.**  Reference is made to the Business Loan Agreement, dated as of September 26, 2012, as it may be amended, modified, supplemented, restated, or replaced from time to time, ("Business Loan Agreement") for additional terms and conditions.  Capitalized terms defined herein shall have the meanings given to them in the Business Loan Agreement.  Borrower hereby affirms to Lender that all of Borrower's representations and warranties set forth in the Business Loan Agreement are true, complete and accurate in all respects as of the date hereof.

**GUARANTY.**  This Note is supported by three (3) Guaranties, dated as of September 26, 2012, as these Guaranties may be amended, modified, supplemented, restated, or replaced from time to time, executed by Guarantors in favor of Lender.

**CONTINUING VALIDITY.**  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy  M.  McKenna,  President  of  McKenna
General Engineering, Inc.

By: _____
Courtney  A.  Penteado,  Secretary  of  McKenna
General Engineering, Inc.

LaserPro, Ver. 17.1.10.015  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - CA  N:\CP\WIN\CFI\LPL\D200.FC  TR-10251  PR-74

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Borrower: | McKenna General Engineering, Inc.<br>1632 Railroad St<br>Corona, CA  92880-2502 | Lender: | California United Bank<br>818 West Seventh St Ste 220<br>Los Angeles, CA  90017-3449 |
|---|---|---|---|

**LOAN TYPE.**  This is a Variable Rate Nondisclosable Revolving Line of Credit Loan to a Corporation for $1,600,000.00 due on January 1, 2018.  This is a secured renewal loan.

**PRIMARY PURPOSE OF LOAN.**  The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.**  The specific purpose of this loan is:  to extend and remove Jason Caufield and Caufield Revocable Trust as Guarantors on Loan #10801202-1; originally to finance Borrower's short-term working capital requirements.

**DISBURSEMENT INSTRUCTIONS.**  Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied.  Please disburse the loan proceeds of $1,600,000.00 as follows:

| | |
|---|---|
| **Other Disbursements:** | $1,600,000.00 |
| $1,600,000.00 Balance of Loan #10801202-1 | |
| | |
| **Note Principal:** | $1,600,000.00 |

**CHARGES PAID IN CASH.**  Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| **Prepaid Finance Charges Paid in Cash:** | $7,599.05 |
| $7,599.05  Interest Due on October 1, 2017 | |
| **Other Charges Paid in Cash:** | $700.00 |
| $700.00  Loan Documentation Fee | |
| | |
| **Total Charges Paid in Cash:** | $8,299.05 |

**AUTOMATIC PAYMENTS.**  Borrower hereby authorizes Lender to deduct automatically from Borrower's demand deposit - checking account, numbered 874249900, or any successor or replacement account thereof, the amount of any loan payment and any fees, charges or other costs of the Loan (the "Automatic Payments").  If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment.  At any time and for any reason, Borrower or Lender may voluntarily terminate the Automatic Payments.

**FINANCIAL CONDITION.**  BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER.  THIS AUTHORIZATION IS DATED OCTOBER 11, 2017.

BORROWER:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy  M.  McKenna,  President  of  McKenna
General Engineering, Inc.

By: _____
Courtney  A.  Penteado,  Secretary  of  McKenna
General Engineering, Inc.

LaserPro, Ver. 17.1.10.015  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - CA  N:\CFX\LPL\G3.FC  TR-10255  PR-75

**EXHIBIT 16**

Exhibit "2"
Page 64

Exhibit "3"

# COMMERCIAL SECURITY AGREEMENT

| Grantor: | McKenna General Engineering, Inc.<br>20330 Temescal Canyon Rd<br>Corona, CA 92881-4944 | Lender: | California United Bank<br>15821 Ventura Blvd Ste 100<br>Encino, CA 91436-5203 |
|---|---|---|---|

**THIS COMMERCIAL SECURITY AGREEMENT** dated September 26, 2012, is made and executed between McKenna General Engineering, Inc. ("Grantor") and California United Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all patents, all trademarks, all software, and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the

- 21 -

**EXHIBIT 3**

Exhibit "3"
Page 65

**COMMERCIAL SECURITY AGREEMENT**

Loan No: ████202-1                  **(Continued)**                                    Page 2

---

Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: ███202-1                                                                                                                                   Page 3

---

or other endorsements as Lender may require.  If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1,000.00, whether or not such casualty or loss is covered by insurance.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral.  If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration.  If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor.  Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.**  Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid.  If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender.  The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due.  Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor.  The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.**  Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following:  (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy;  (4)  the property insured;  (5)  the then current value on the basis of which insurance has been obtained and the manner of determining that value; and  (6)  the expiration date of the policy.  In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.**  Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.  At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property.  Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.  Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default.  Lender may file a copy of this Agreement as a financing statement.  If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.**  Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral.  Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts.  At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness.  If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care.  Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will, (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Agreement also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.**  Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.**  Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.**  Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.**  The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement

- 23 -

**EXHIBIT 3**

Exhibit "3"
Page 67

| Loan No: ⬛⬛⬛202-1 | **COMMERCIAL SECURITY AGREEMENT**<br>(Continued) | Page 4 |
|---|---|---|

of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**Adverse Change in Guarantor's Financial Condition.** A material adverse change occurs in Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Guaranty is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Grantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature,

- 24 -

**EXHIBIT 3**

Exhibit "3"
Page 68

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: ████202-1                                                                                                                    Page 5

arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Grantor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. To the extent permitted by applicable law, all parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**EXHIBIT 3**

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: �—202-1                                                                                              Page 6

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means McKenna General Engineering, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means McKenna General Engineering, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means California United Bank, its successors and assigns.

**Note.** The word "Note" means Borrower's promissory notes or credit agreements, if any, evidencing Borrower's Indebtedness to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory notes or credit agreements.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED SEPTEMBER 26, 2012.

GRANTOR:

MCKENNA GENERAL ENGINEERING, INC.

By: _____
Timothy M. McKenna, President of McKenna
General Engineering, Inc.

LASER PRO Lending, Ver. 12.2.0.003  Copr. Harland Financial Solutions, Inc. 1997, 2012.  All Rights Reserved.  - CA  N\CFI\WIN\CFI\LPL\E40.FC  TR-3121  PR-45

**EXHIBIT 3**

Exhibit "3"
Page 70

Exhibit "4"

## UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Anita Wolman
818 257-7787

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Ana Acob
15821 Ventura Boulevard, Suite 100
Encino, CA 91436
USA

**DOCUMENT NUMBER:** 34832410002
**FILING NUMBER:** 12-7331562909
**FILING DATE:** 10/03/2012 17:27
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| OR | 1a. ORGANIZATION'S NAME MCKENNA GENERAL ENGINEERING, INC. | | | |
|----|----|----|----|----|
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS 20330 TEMESCAL CANYON RD | CITY CORONA | STATE CA | POSTAL CODE 92881-4944 | COUNTRY USA |
|----|----|----|----|----|

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION CA | 1g. ORGANIZATIONAL ID#, if any C2624480 ☐NONE |
|----|----|----|----|----|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| OR | 2a. ORGANIZATION'S NAME | | | |
|----|----|----|----|----|
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|----|----|----|----|----|

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any ☐NONE |
|----|----|----|----|----|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| OR | 3a. ORGANIZATION'S NAME CALIFORNIA UNITED BANK | | | |
|----|----|----|----|----|
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS 15821 VENTURA BLVD STE 100 | CITY ENCINO | STATE CA | POSTAL CODE 91436-5203 | COUNTRY USA |
|----|----|----|----|----|

**4. This FINANCING STATEMENT covers the following collateral:**

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all patents, all trademarks, all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on

**5. ALT DESIGNATION:** ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

| ☐6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2 |
|----|----|

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

Page 2

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME |
|---|
| MCKENNA GENERAL ENGINEERING, INC. |

| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|---|
| | | | |

**10. MISCELLANEOUS:**

DOCUMENT NUMBER: 34832410002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME |
|---|
| |

| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| 12a. ORGANIZATION'S NAME |
|---|
| |

| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.**

**14. Description of real estate:**

**16. Additional collateral description:**

electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property. Notice: Pursuant to an agreement between Debtor and Secured Party, Debtor has agreed not to further encumber the Collateral described herein.

**15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**17. Check only if applicable and check only one box.**
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18. Check only if applicable and check only one box.**
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

FILING OFFICE COPY

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Gisella Melendez
800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 61318320002
FILING NUMBER: 17-75852037
FILING DATE: 05/12/2017 09:16

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 12-7331562309 | |

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | CALIFORNIA UNITED BANK | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
CA-0-58678044-53298596

FILING OFFICE COPY

# Exhibit "5"

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | McKenna General Engineering, Inc. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California (State) |
| Case number | 6:18-bk-18036-SY |

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Pacific Western Bank, a California state-chartered bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

A. Kenneth Hennesay, Jr., Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
Name

1900     Main Street, Fifth Floor
Number     Street

Irvine          CA          92614-7321
City          State          ZIP Code

Contact phone     (949) 553-1313

Contact email     khennesay@allenmatkins.com

**Where should payments to the creditor be sent?** (if different)

Name _____

Number     Street

City     State     ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____
                                                                                                              M M / D D / Y Y Y Y

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Official Form 410     Proof of Claim     page 1

American LegalNet, Inc.
www.FormsWorkFlow.com


Exhibit "5"
Page 74

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___202-1___

**7. How much is the claim?** $ ___1,031,157.24___ . **Does this amount include interest or other charges?**

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

___Business loan___

**9. Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☒ Other. Describe: ___Personal property described in Commercial Security Agreement dated September 26, 2012___

**Basis for perfection:** ___UCC-1 Financing Statement___

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ ___2,295,273.70___

**Amount of the claim that is secured:** $ ___1,031,157.24___

**Amount of the claim that is unsecured:** $ ___0.00___ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ ___0.00___

**Annual Interest Rate** (when case was filed) ___11.75___ %

☐ Fixed

☒ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

Official Form 410                   **Proof of Claim**                   page 2



American LegalNet, Inc.
www.FormsWorkFlow.com

Exhibit "5"
Page 75

| 12.Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( _____ ) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    05/16/2019
                    MM / DD / YYYY

Signature

Kimberlee von Disterlo
Senior Vice President
PACIFIC WESTERN BANK, a California state-chartered bank

**Print the name of the person who is completing and signing this claim:**

| Name | Kimberlee von Disterlo | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Senior Vice President | | |
| Company | Pacific Western Bank, a California state-chartered bank | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 50    West Hillcrest Drive | | |
| | Number    Street | | |
| | Thousand Oaks | California    91360 | |
| | City | State    ZIP Code | |
| Contact phone | (805) 413-0124 | Email    kvondisterlo@pacificwesternbank.com | |

American LegalNet, Inc.
www.FormsWorkFlow.com

Exhibit "5"
Page 76

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

### ATTACHMENT TO PROOF OF CLAIM

#### Case No: 6:18-bk-18036-SY

**Debtor:**    **McKenna General Engineering, Inc. ("Debtor")**

**Claimant:**    **Pacific Western Bank, a state-chartered bank ("Pacific Western")**

Pacific Western asserts the following claim against Debtor's bankruptcy estate:

**I.    Basis for Claim.**

    **A.    The Loan.**

Pacific Western, who is successor by merger to California United Bank ("**Original Lender**"), is the current owner and holder of that certain Loan (the "**Loan**") made by Original Lender to McKenna General Engineering, Inc. ("**Borrower**") pursuant to a Business Loan Agreement made and executed between them dated September 26, 2012 (the "**Loan Agreement**").  A true and correct copy of the Loan Agreement (redacted in accordance with Federal Rule of Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as **Exhibit "1**."

The Loan is evidenced by that certain Promissory Note in the original principal amount of $1,000,000.00 executed by Borrower of even date with the Loan Agreement (the "**Note**").  A true and correct copy of the Note (redacted in accordance with Federal Rule of Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as **Exhibit "2**."

To secure the obligations under the Loan and the Note and as part of the same transaction, Debtor executed in favor of Pacific Western that certain Commercial Security Agreement of even date with the Note (the "**Security Agreement**"), by which Debtor granted to Pacific Western a security interest in all of the "Collateral" as defined therein. A true and correct copy of the Security Agreement (redacted in accordance with Federal

1    Rule of Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as

2    **Exhibit "3."**

3        On or about October 3, 2012 Pacific Western filed its UCC-1 Financing Statement

4    with the Office of the Secretary of State of California, perfecting is security interest in the

5    Collateral.  Pacific Western filed a Continuation of the UCC-1 Financing Statement on

6    May 12, 2017.  True and correct copies of the UCC-1 Financing Statement  and

7    Continuation are attached hereto collectively and incorporated herein as **Exhibit "4."**

8        On November 13, 2012, Borrower and Original Lender entered into that certain

9    "Amendment Number One to Business Loan Agreement" ("**Amendment One**").  A true

10   and correct copy of Amendment One (redacted in accordance with Federal Rule of

11   Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as **Exhibit "5**."

12       On August 22, 2013, Borrower and Original Lender entered into that certain

13   "Amendment Number Two to Business Loan Agreement" ("**Amendment Two**").  A true

14   and correct copy of Amendment Two (redacted in accordance with Federal Rule of

15   Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as **Exhibit "6**."

16       The Loan, as amended by Amendment One and Amendment Two, is evidenced by

17   an amended and restated Promissory Note in the original principal amount of

18   $1,000,000.00 executed by Borrower of even date with Amendment Two (the "**First**

19   **Amended Note**").  A true and correct copy of the First Amended Note (redacted in

20   accordance with Federal Rule of Bankruptcy Procedure 9037(a)) is attached hereto and

21   incorporated herein as **Exhibit "7**."

22       On August 5, 2014, Borrower and Original Lender entered into that certain

23   "Amendment Number Three to Business Loan Agreement" ("**Amendment Three**").  A

24   true and correct copy of Amendment Three (redacted in accordance with Federal Rule of

25   Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as **Exhibit "8**."

26       The Loan, as amended by Amendment Three, is evidenced by an amended and

27   restated Promissory Note in the original principal amount of $1,300,000.00 executed by

28   Borrower of even date with Amendment Three (the "**Second Amended Note**").  A true

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1219941.01/OC

-5-

Exhibit "5"
Page 78

1    and correct copy of the Second Amended Note (redacted in accordance with Federal Rule

2    of Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as

3    **Exhibit "9**."

4         On July 27, 2015, Borrower and Original Lender entered into that certain

5    "Amendment Number Four to Business Loan Agreement" ("**Amendment Four**").  A true

6    and correct copy of Amendment Four (redacted in accordance with Federal Rule of

7    Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as

8    **Exhibit "10**."

9         The Loan, as amended by Amendment Four, is evidenced by an amended and

10   restated Promissory Note in the original principal amount of $1,600,000.00 executed by

11   Borrower of even date with Amendment Four (the "**Third Amended Note**").  A true and

12   correct copy of the Third Amended Note (redacted in accordance with Federal Rule of

13   Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as

14   **Exhibit "11**."

15        Borrower executed a further amended and restated Promissory Note on July 12,

16   2016 (the "**Fourth Amended Note**").  A true and correct copy of the Fourth Amended

17   Note (redacted in accordance with Federal Rule of Bankruptcy Procedure 9037(a)) is

18   attached hereto and incorporated herein as **Exhibit "12**."

19        On October 20, 2016, Borrower and Original Lender entered into that certain

20   "Amendment Number Five to Business Loan Agreement" ("**Amendment Five**").  A true

21   and correct copy of Amendment Five (redacted in accordance with Federal Rule of

22   Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as

23   **Exhibit "13**."

24        The Loan, as amended by Amendment Five, is evidenced by an amended and

25   restated Promissory Note in the original principal amount of $1,600,000.00 executed by

26   Borrower of even date with Amendment Five (the "**Fifth Amended Note**").  A true and

27   correct copy of the Fifth Amended Note (redacted in accordance with Federal Rule of

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1219941.01/OC

1   Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as

2   **Exhibit "14**."

3        On October 11, 2017, Borrower and Original Lender entered into that certain

4   "Amendment Number Six to Business Loan Agreement" ("**Amendment Six**").  A true and

5   correct copy of Amendment Six (redacted in accordance with Federal Rule of Bankruptcy

6   Procedure 9037(a)) is attached hereto and incorporated herein as **Exhibit "15**."

7        In connection with Amendment Six, Borrower executed a Change In Terms

8   Agreement, a true and correct copy of which (redacted in accordance with Federal Rule of

9   Bankruptcy Procedure 9037(a)) is attached hereto and incorporated herein as

10  **Exhibit "16**."

11       The documents set forth in Exhibits 1 through 16 hereof, and all other documents

12  evidencing the Loan, are referred to hereinafter collectively as the "**Loan Documents**."

13       **B.    Debtor's Defaults Under the Loan Documents and Guaranties.**

14       Borrower failed to pay the Loan upon its maturity on January 1, 2018.

15  Accordingly, on March 22, 2018, Pacific Western filed an action against Borrower and

16  Debtor in the Superior Court for the State of California, County of Los Angeles, Case

17  No: LC107024 (the "**Collection Action**").

18       In the Collection Action, Pacific Western obtained a Right to Attach Order and

19  Order for Issuance of Writ of Attachment, entered on May 24, 2018 (the "**Attachment**

20  **Order**").  A true and correct copy of the Attachment Order is attached hereto and

21  incorporated herein as **Exhibit "17**."

22       In the Collection Action, Pacific Western, Debtor, and other interested parties

23  entered into that certain Stipulation for Sale of Properties and Allocation of Net Proceeds,

24  which was approved by order of the court in the Collection Action entered on August 23,

25  2018 (the "**Proceeds Order**").  A true and correct copy of the Proceeds Order is attached

26  hereto as **Exhibit "18."**  The Proceeds Order provides, among other things, for the

27  Debtor's receivables and application of the proceeds collected to satisfaction of the Loan.

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1219941.01/OC

-7-

Exhibit "5"
Page 80

**II.** **Amount of Claim.**

As of September 21, 2018 ("**Petition Date**"), the outstanding Loan balance and amount due under the Loan Documents (the "**Indebtedness**") was $1,031,157.24 consisting of:  (i) $950,098.16 in outstanding principal; and (ii) $81,059.08 in accrued and outstanding interest calculated at the default rate of 11.25% per annum from and after February 14, 2018, 11.50% per annum from and after March 22, 2018, and 11.75% from and after June 14, 2018.  Interest continues to accrue on a per diem basis at the default rate of $323.29.  Additionally, certain attorneys' fees and expenses and other costs were incurred but unpaid as of the Petition Date, and continue to accrue in accordance with the Loan Documents.

**III.** **Estimate of Value of the Property and Secured Claim.**

Debtor's bankruptcy Schedule A/B (Doc. 10) estimates that the total aggregate value of all of the Debtor's personal property is $2,295,273.70 (with $2,081,409.46 of that value comprised of accounts receivable) and that the amount of Pacific Western's claim secured by the Debtor's personal property is $950,098.16.  Pacific Western does not admit that Debtor's estimate of value of its personal property is accurate, and reserves its rights with respect to such value.  Based on the Loan Documents, Attachment Order, and Proceeds Order, Pacific Western asserts a secured claim in the amount equal to the value of the Collateral, up to the full amount of the Indebtedness.

Pacific Western reserves the right to amend this proof of claim or otherwise assert a secured claim in amount reflecting the value of any Collateral as determined by the Court or any changes in value which may occur during the pendency of the bankruptcy case.

**IV.** **Reservation of Rights.**

Pacific Western reserves the right to amend, modify, or supplement this Proof of Claim in any respect.  Each and every document attached to this Proof of Claim is incorporated by and is hereby made a part of this Proof of Claim.  By filing this Proof of Claim, Pacific Western intends to provide notice to the Debtor:  (a) of any and all claims set forth in the exhibits attached hereto and the documents incorporated herein and therein;

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1219941.01/OC

-8-

Exhibit "5"
Page 81

1  (b) that Pacific Western asserts any and all of its rights and remedies it has at law or under

2  the operative documents; and (c) nothing in this Proof of Claim is intended to limit Pacific

3  Western's rights against any third party or any rights it has at law or in equity.  This Proof

4  of Claim is not intended to be, and shall not be constructed as:  (a) an election of remedies;

5  (b) a waiver of any right to the determination of any issue or matter by a jury; (c) a waiver

6  of any past, present, or future defaults; (d) a waiver of any right to any security or any

7  other right or rights with respect to any claim it has or may have against Debtor or any

8  other person or persons; or (e) a waiver or limitation of any rights at law or equity,

9  remedies, claims or interests of Pacific Western.

10        All notices regarding this Proof of Claim should be sent to counsel for Pacific

11  Western at the following address:  Allen Matkins Leck Gamble Mallory & Natsis LLP,

12  Attention A. Kenneth Hennesay, Jr., 1900 Main Street, Fifth Floor, Irvine, California

13  92614 7321, or to facsimile number (949) 553-8354, or to Mr. Hennesay's email address:

14  khennesay@allenmatkins.com.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1219941.01/OC

-9-

Exhibit "5"
Page 82

EXHIBITS 1 THROUGH 16
HAVE BEEN OMITTED

AT-125

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State bar number, and address):*
Alan M. Mirman, Esq., SBN 66883
Mirman, Bubman & Nahmias, LLP
21860 Burbank Boulevard, Suite 360
Woodland Hills, CA 91367

TELEPHONE NO.: (818) 451-4600       FAX NO. (Optional): (818) 451-4620
E-MAIL ADDRESS (Optional): amirman@mbnlawyers.com
ATTORNEY FOR (Name): Plaintiff, PACIFIC WESTERN BANK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 Sylmar Ave.
MAILING ADDRESS: 623 Sylmar Ave.
CITY AND ZIP CODE: Van Nuys, CA 91401
BRANCH NAME: Northwest District

PLAINTIFF: PACIFIC WESTERN BANK

DEFENDANT: MCKENNA GENERAL ENGINEERING, INC., et al.

*FOR COURT USE ONLY*

**FILED**
Superior Court of California
County of Los Angeles

MAY 2 4 2018

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Ani Dastaryan

Rec'd NWD
MAY 2_ RECD

**EX PARTE**
[X] RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF
    WRIT OF ATTACHMENT (RESIDENT)
[ ] ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT
    (RESIDENT)

CASE NUMBER:
LC107024

successor by merger to California United Bank

1. The application and supporting declaration or affidavit of plaintiff *(name):* PACIFIC WESTERN BANK, a California state-chartered bank,
for an ex parte [X] right to attach order and order for issuance of writ of attachment [ ] order for issuance of an additional
writ of attachment   has been considered by the court.

**FINDINGS**

2. THE COURT FINDS
   a. Defendant *(specify name):* TIMOTHY M. MCKENNA           is a [X] natural person
      [ ] partnership   [ ] unincorporated association   [ ] corporation   [ ] other *(specify):*
   b. The claim upon which the application is based is one upon which an attachment may be issued under
      [X] Code of Civil Procedure section 483.010   [ ] Welfare and Institutions Code section 15657.01.
   c. Plaintiff has established the probable validity of the claim upon which the attachment is based.
   d. The attachment is not sought for a purpose other than recovery on the claim upon which the application is based.
   e. The amount to be secured by the attachment is greater than zero.
   f. The affidavit or declaration accompanying the application shows that the property sought to be attached, or the portions thereof
      to be specified in the writ, are not exempt from attachment.
   g. The portion of the property sought to be attached described in item 3b, is not exempt from
      attachment.
   h. An undertaking in the amount of: $      10,000.00 is required before a writ shall issue, and plaintiff
      [ ] has [X] has not filed an undertaking in that amount.
   i. Great or irreparable injury will result to the plaintiff if issuance of the order is delayed until the matter can be heard on notice,
      based on the following:
      (1) [X] There is a danger that the property sought to be attached would be
          (a) [X] concealed.                    (b) [X] substantially impaired in value.
          (c) [X] made unavailable to levy by other than concealment or impairment in value.
      (2) [ ] Defendant has failed to pay the debt underlying the requested attachment and is insolvent as defined in Code of Civil
          Procedure section 485.010(b)(2), as set forth in the affidavit or declaration filed in support of this application, and that
          specifies the defendant's known undisputed debts and the basis for plaintiff's determination that the defendant's debts
          are undisputed.
      (3) [ ] A bulk sales notice was recorded and published pursuant to division 6 of the Commercial Code with respect
          to a bulk transfer by the defendant.
      (4) [ ] An escrow has been opened pursuant to the provisions of Business and Professions Code section 24074 with
          respect to the sale by the defendant of a liquor license. The liquor license number is:
      (5) [X] Other circumstances *(specify):* Defendants' financial condition is deteriorating as evidenced by numerous
          defaults under the loan documents and their disposition of assets.
   j. [ ] A Right to Attach Order was issued on *(date):*                                          pursuant to
      [ ] Code of Civil Procedure section 484.090 (on notice) [ ] Code of Civil Procedure section 485.220 (ex parte)
   k. [ ] other *(specify):*

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
AT-125 [Rev. July 1, 2010]

CEB | Essential
ceb.com | Forms

**EX PARTE RIGHT TO ATTACH ORDER AND ORDER FOR**
**ISSUANCE OF WRIT OF ATTACHMENT (RESIDENT) (Attachment)**

Code of Civil Procedure,
§§ 482.030, 485.010 et seq.;
Welfare & Institutions Code, § 15657.01
www.courtinfo.ca.gov

PACIFIC WESTERN BANK

- 59 -

**EXHIBIT 17**

Exhibit "5"
Page 84

AT-125

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PACIFIC WESTERN BANK v. MCKENNA, et al. | LC107024 |

**ORDER**

3. THE COURT ORDERS

~~a. Plaintiff has a right to attach property of defendant *(name):* TIMOTHY M. MCKENNA~~
in the amount of: $    1,415,338.62

b. The clerk shall issue    [X] a writ of attachment    ☐ an additional writ of attachment    in the amount stated in item 3a
☐ forthwith    [X] upon the filing of an undertaking in the amount of: $    10,000.00
(1) ☐ for the property covered by a bulk sales notice with respect to a bulk transfer by defendant or the proceeds of the
sale of such property, described as follows *(specify):*

(2) ☐ for plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold. The license number
is *(specify):*
(3) ☐ for any property of a defendant who is not a natural person for which a method of levy is provided.
(4) [X] for property of a defendant who is a natural person subject to attachment under Code of Civil Procedure
section 487.010 *(specify):*

Please see Exhibit "A" attached hereto.

c. [X] Defendant shall transfer to the levying officer possession of
(1) [X] any documentary evidence in defendant's possession of title to any property described in item 3b.
(2) [X] any documentary evidence in defendant's possession of debt owed to defendant described in item 3b.
(3) [X] the following property in defendant's possession *(specify):*
(a) all proceeds of disposition of MGE equipment or inventory, including but not limited to the auction proceeds held
by Ritchie Bros. Auctioneer ; (b) all proceeds of disposition of real property in which Timothy McKenna and/or the
McKenna Family Trust have any interest, including but not limited to property of Sitework Development Company,
LLC, 102 N. Howard, Inc., and MCJ Corporation which are entities owned or partially owned by Timothy McKenna;
(c) all collections of MGE accounts receivable; and (d) all other cash in the possession, custody or control of Timothy
McKenna and/or the McKenna Family Trust, except that which is necessary for basic and ordinary living expenses of
Timothy McKenna.

> **NOTICE TO DEFENDANT: FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST**
> **AND PUNISHMENT FOR CONTEMPT OF COURT.**

d. ☐ Other *(specify):*

e. Total number of boxes checked in item 3: _____7_____

Date: 5-24-18

PAUL A. BACIGALUPO
(JUDICIAL OFFICER)

Page 2 of 2

AT-125 [Rev. July 1, 2010]    **EX PARTE RIGHT TO ATTACH ORDER AND ORDER FOR**
CEB Essential    **ISSUANCE OF WRIT OF ATTACHMENT (RESIDENT) (Attachment)**
ceb.com Forms                        PACIFIC WESTERN BANK

**EXHIBIT 17**

Exhibit "5"
Page 85

EXHIBIT "A"

Right to Attach Order and Order for Issuance of Writ of Attachment

3.c.(2) Property of a Defendant who is a natural person that is subject to attachment under Code of Civil Procedure ("CCP") Section 487.010 described as follows (specify):

1. Real Property [CCP Section 487.010(c) (1)] as follows:

    1059 S. Summer Breeze Lane, Anaheim, CA 92808

        See attached legal description.

2. Money and deposit accounts [CCP Section 487.010(c) (7), including, but not limited to:

    Any and all accounts, including but not limited to money market and checking accounts, at any financial institution held in the name of Defendants, or any of them.

3. Accounts receivable, Chattel Paper, General Intangibles arising out of Defendants' business [CCP Section 487.0910(c) (2)], including but not limited to the following:

4. Defendants' membership interest in the limited liability company, Sitework Development Company, LLC, which is owned by the McKenna Family Trust and ZZYZZX Gift Trust, of which Timothy McKenna is a Trustee. Timothy McKenna is the manager of Sitework Development Company, LLC, and his membership interest is a general intangible.

5. Any other non-exempt property subject to attachment in possession of Defendants or being held by third parties for the benefit of Defendants pursuant to CCP Section 487.010(c).

{00509684}1

- 61 -

**EXHIBIT 17**

# SureTec Insurance Company

In The _____ Superior _____ Court

County of _____ Los Angeles _____

State of _____ California _____

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

MAY 2 4 2018

Sherri R. Carter, Executive Officer/Clerk

By: Ani Dastaryan, Deputy

PACIFIC WESTERN BANK, a California state-chartered
bank, successor by merger to California United Bank

    Plaintiff(s),

v.

MCKENNA GENERAL ENGINEERING, INC., et al.

    Defendants.

COPY

Case No. LC107024 _____

**UNDERTAKING UNDER
SECTION** 489.210 **C.C.P.**

SureTec Insurance Company
5555 Garden Grove Blvd, Suite 275
Westminster, CA 92683

**WHEREAS,** the above named PACIFIC WESTERN BANK, a California state-chartered bank, successor by merger to California United Bank , as Principal,

desires to give an undertaking for _____ TEMPORARY PROTECTIVE ORDER and/or WRIT OF ATTACHMENT _____ as provided in

Section _____ 489.210 _____ C.C.P.

**NOW, THEREFORE,** the Surety, does hereby obligate itself, jointly and severally, to _____

_____ TIMOTHY M. MCKENNA _____ under said

statutory obligations in the sum of _____ TEN THOUSAND AND NO/100 _____

_____ Dollars ($ _____ 10,000.00 _____ )

**IN WITNESS WHEREOF,** The corporate seal and name of the said Surety Company is hereto affixed and attested by

OSCAR GALLEGOS _____ who declares under penalty of perjury that he is its duly authorized Attorney-in-Fact acting under an

unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

Executed at _____ SAN BERNARDINO _____, California on _____ May 22, 2018 _____

Bond No. _____ 3395914 _____

The premium charge for this bond
is $ 200.00 _____ per annum.

**SURETEC INSURANCE COMPANY**

OSCAR GALLEGOS      Attorney-in-Fact

## CIVIL BOND

**EXHIBIT 17**

Exhibit "5"
Page 87

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 23 2018

Sherri R. Carter, Executive Officer/Clerk of Court

By: Joseph Skorich, Deputy

1

2

3

4

5

6

7
**SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES,**

8
**NORTHWEST DISTRICT, VAN NUYS COURTHOUSE EAST**

9

10

11  PACIFIC WESTERN BANK,                 CASE NO: LC107024
    a California state-chartered bank,
12  successor by merger to California     Assigned for All Purposes
    United Bank,                          to The Honorable Virginia
13                                        Keeny, Department NW W
14          Plaintiff,
                                          **STIPULATION FOR SALE OF**
15  vs.                                   **PROPERTIES AND ALLOCATION**
                                          **OF NET SALE PROCEEDS; AND**
16  MCKENNA GENERAL ENGINEERING, INC.,    **ORDER THEREON**
    a California  corporation;
17  TIMOTHY M. MCKENNA, individually      [No Hearing Required]
    and as a Trustee of the MCKENNA
18  FAMILY TRUST;
    CATHERINE K. MCKENNA, as a Trustee
19  of the MCKENNA FAMILY TRUST; and
    DOES 1 through 50, inclusive,
20
            Defendants.
21

22

23      This Stipulation for Sale of Properties and Allocation of Net

24  Sale Proceeds is entered into by and among the following:

25    • Plaintiff Pacific Western Bank, a California state-chartered

26      bank ("PWB"), successor by merger to California United Bank

27      ("CUB," sometimes referred to collectively with PWB as "Bank."

28  {00522240}                        1
    _____
    **STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE**
    **PROCEEDS; AND ORDER THEREON**

- Defendant McKenna General Engineering, Inc., a California
  corporation ("MGE");
- Defendant Timothy M. McKenna, individually and as Trustee of
  the McKenna Family Trust ("Trust");
- Defendant Catherine McKenna, individually and as Trustee of
  the Trust, and also as Third Party Claimant; and
- Third Party Claimant Patterson Law Firm, APC;

This Stipulation is based on the following Recitals:

## RECITALS

A.    On or about September 26, 2012, MGE executed and delivered
to CUB a Promissory Note ("Note") for the sum of $1,000,000.00, plus
interest, costs and fees. The principal amount of the Note was
increased as CUB lent additional funds to MGE. The most recent such
amendment was set forth in a Change in Terms Agreement in the amount
of $1,600,000.00 on or about October 11, 2017 (the "PWB Loan").

B.    MGE failed to pay the PWB Loan in full when it matured on
January 1, 2018.

C.    Bank thereafter filed this lawsuit on March 22, 2018, and
on or about May 24, 2018 obtained issuance by the Court of Right to
Attach Orders and Writs of Attachment against Timothy McKenna and the
McKenna Family Trust (referred to as "Trust"). The Writs of
Attachment and Right to Attach Orders have been served and recorded,
and PWB has obtained liens against the assets of *Timothy McKenna and
Catherine McKenna* and the Trust as described in the Writs of
Attachment.

D.    Catherine McKenna and Patterson Law Firm APC, her counsel
in the Family Law action bearing case number 17D002387, pending

(00522240)                              2

STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
PROCEEDS; AND ORDER THEREON

**EXHIBIT 18**

1   between Catherine McKenna and Timothy McKenna in the Superior Court
2   of the State of California, County of Orange, Lamoreaux Justice
3   Center (the "Family Law Action") have each filed and served a Third
4   Party Claim. The Third Party Claims seek release of funds in a
5   certain account at Chase Bank, identified herein by an account number
6   ending in 2805 ("Chase Account"), to which they assert an interest
7   based upon a ruling entered in the Family Law Action on April 12,
8   2018.

9       E.   The parties to this Stipulation each assert that they have
10  a superior claim and right to the funds in the Chase Account.

11      F.   In reliance upon the terms set forth in the Stipulation
12  below, PWB refrained from petitioning for a hearing on the Third
13  Party Claims pursuant to statute, and from filing opposition papers
14  and an undertaking as to the Third Party Claims.

15      G.   The parties hereto have agreed to resolve all disputes
16  between them relating to the Third Party Claims, and to set forth
17  their agreement as to the sale of certain real property as to which
18  the Trust has an interest through its equity ownership in the
19  entity/ies which own such real property, and the disposition of the
20  net proceeds from the sale of such real property, as set forth below.

21      H.   Patterson Law firm has filed an OSC re contempt on June
22  15, 2018, which was personally served upon Tim McKenna, an
23  individual, on June 28, 2018, in Case No. 17D002387. On June 28,
24  2018, Tim McKenna invoked his Fifth Amendment right on the record in
25  Case No. 17D002387.

26      I.   By entering into this Stipulation, Tim McKenna does not
27  waive, or intend to waive, his 5th Amendment right to remain silent,

28
{00522240}                           3

STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
PROCEEDS; AND ORDER THEREON

1    in this case, as well in Case No. 17D002387.

2    **THEREFORE, THE PARTIES STIPULATE AS FOLLOWS, WITH THE APPROVAL OF**

3    **THEIR COUNSEL OF RECORD:**

4    1.    Each of the foregoing Recitals are true and correct and

5    incorporated by reference as though set forth at length.

6    2.    The Parties further agree that one-half of the $11,615.92

7    originating from Chase account ending in 2805 shall be released to

8    Joseph Robert Terrazas III, as and for earned attorney's fees and

9    costs for Tim McKenna.   The Parties further agree that the other one-

10   half of the $11,615.92 shall be released to Patterson Law Firm, APC.

11   These fees shall be released and provided to Joseph Robert Terrazas

12   III and Patterson Law Firm, APC, respectively, upon execution of this

13   stipulation by all parties.

14   3.    The real property described below (sometimes collectively

15   referred to as the "Properties") shall promptly be listed for sale

16   and thereafter sold, as expeditiously as feasible, to a bona fide,

17   arms-length purchaser, with cooperation from all interested parties:

18   • 1632 Railroad Street, Corona California 92880, APN: 118-360-049

19      ("Railroad Property"). The Railroad Property is vested in MCJ

20      Corporation, a California corporation, of which Timothy McKenna

21      is the President, and authorized to execute documentation for

22      the sale of the Railroad Property;

23   • 102 North Howard Street, Corona, California 92879, APN: 117-

24      080-015 ("Howard Property"). The Howard Property is vested in

25      102 N. Howard, Inc., a California corporation, of which Timothy

26      McKenna   is   the   President,   and   authorized   to   execute

27      documentation for the sale of the Howard Property.

28

{00522240}                          4

**STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE**
**PROCEEDS; AND ORDER THEREON**

4.   All parties shall cooperate in the listing and sale of the Properties, and the execution of documentation reasonably required to accomplish this purpose, including but not limited to the expungement or removal of any all Notices of Action Pending or any other cloud on title recorded by or on behalf of Catherine McKenna.

5.   The net proceeds to which Timothy McKenna, Catherine McKenna, or the McKenna Trust(s) may be entitled from the sale of the Properties (collectively the "Net Proceeds") will be disbursed from escrow directly to PWB, and held in a blocked account (the "Account") at PWB. Net Proceeds shall mean the gross sale proceeds, minus ordinary and customary expenses such as broker's commissions, escrow fees and transfer taxes, together with an allocation for income taxes, not exceeding fifteen percent (15%) of the estimated taxable gain on sale after deduction of the parties' basis in the property, for which the Trust, Timothy McKenna and/or Catherine McKenna are anticipated to be responsible.

6.   Net Proceeds shall be held in the Account, without interest, in order to allow a period of time, through December 28, 2018, during which the receivables of McKenna General Engineering, Inc. and other collateral for the PWB loan may be collected and applied to the loan.

7.   The Net Proceeds shall not be subject to any lien or claim of any Defendant or Third Party Claimant, and all such liens and claims are waived, including but not limited to any Family Law Attorney Real Property Lien (FLARPL), unless and until the PWB Loan has been paid in full, in which case such lien or claim would apply only to Net Proceeds in excess of the amount payable or paid to PWB on account of the PWB Loan.

(00522240)                        5

**STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
PROCEEDS; AND ORDER THEREON**

**EXHIBIT 18**

Exhibit "5"
Page 92

8.  During the time that the Net Proceeds are held in the Account, PWB's duties shall be limited to those set forth in this Stipulation and in its Deposit Account Agreement & Disclosure that governs accounts at PWB. PWB shall not be deemed or have the obligations of a custodian or an escrow holder.

9.  Interest on the PWB Loan shall cease to accrue, as to the amount deposited into the Account, from the date of deposit of Net Proceeds into the Account, through December 28, 2018.

10. On December 28, 2018, PWB shall apply the Net Proceeds in the "Account" to reduce the outstanding balance on the PWB Loan. If upon application of Net Proceeds to the PWB Loan, the amount applied to the PWB Loan exceeds the balance remaining on the PWB Loan, then PWB shall issue a check for such excess proceeds payable as mutually directed in writing by all parties and approved by counsel, or as directed by final Court Order.

11. If an outstanding balance remains on the PWB Loan on December 28, 2018 after application of the Net Proceeds as described above, then Catherine McKenna will promptly execute and cause to be recorded the necessary document(s) to expunge and remove the lis pendens recorded on the residential real property located at 1059 S. Summer Breeze Avenue, Anaheim, California 92808, APN: 354-401-16 ("Summer Breeze Property") and both Timothy McKenna and Catherine McKenna cooperate in the prompt listing and sale of the Summer Breeze Property, in order to apply net proceeds to the balance due and owing on the PWB Loan. Such net sale proceeds of the Summer Breeze Property shall be deemed to be, and shall be treated as, Net Proceeds to be

{00522240}                              6

STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
PROCEEDS; AND ORDER THEREON

**EXHIBIT 18**

1   immediately applied to the PWB Loan. Net Proceeds shall mean the

2   gross sale proceeds, minus ordinary and customary expenses such as

3   broker's commissions, escrow fees, income taxes (as described in

4   paragraph 5 above) and transfer taxes.

5     12. Whether by revocation of the Family Trust, by operation of law

6   or otherwise, in the event that the Properties or either of them, or

7   the Trust's interests therein, are transferred into the personal

8   names of Timothy and/or Catherine, then Timothy and/or Catherine, as

9   such transferee, agrees in his/her individual capacity to hold

10   his/her interest in the Properties pursuant to this Stipulation as

11   successor-in-interest to the Trust. Upon such transfer, Timothy and

12   Catherine agree to execute such additional stipulations, orders,

13   declarations, or pleadings necessary to render this Stipulation

14   effective as to the Properties and the successor-in-interest to the

15   Trust.

16     13. Catherine has informed the parties hereto that prior to the

17   date of this Stipulation, she exercised a right to revoke the Trust.

18   The effectiveness of such revocation is unclear, as Timothy and

19   Catherine are in the midst of a dissolution of marriage proceeding

20   and a final property settlement has not been reached or approved by

21   the family court. Further, as of the date of this Stipulation, the

22   Trust's interest in the Properties has not been transferred.

23   Therefore, at such time, if any, as the Trust's interest in the

24   Properties is transferred to Catherine and/or Timothy, Catherine

25   and/or Timothy in her or his capacity as successor-in-interest to the

26   Trust, agrees to be bound by this Stipulation.

27     14. By entering into this Stipulation, Tim McKenna does not waive,

28

{00522240}                              7

**STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
PROCEEDS; AND ORDER THEREON**

1   or intend to waive, his 5th amendment right to remain silent, in this

2   case, as well in Case No. 17D002387.

3   15. None of the parties to this Stipulation have heretofore

4   transferred any of their interest in the Properties or either of

5   them, or in any entity on title to the Properties or either of them.

6   16. This Stipulation and each and every paragraph and every part

7   thereof has been carefully read and considered by the parties, and

8   the parties fully and completely understand and are cognizant of all

9   the terms and conditions and the effect of each and all the terms and

10  conditions contained in this Stipulation.

11  17.  This Stipulation may be executed in counterparts by facsimile

12  or electronic signature as if an original, all of which counterparts

13  when taken together shall constitute the stipulation of the parties.

14  18.  The terms and conditions set forth in this Stipulation

15  constitute the complete statement of this Stipulation as among the

16  Parties hereto, relating to the subject matter of this Stipulation,

17  superseding all previous negotiations and understandings, and may not

18  be contradicted by evidence of any prior or contemporaneous

19  Stipulation.

20  19.  This Stipulation is given voluntarily, free of undue influence,

21  coercion, duress, menace or fraud of any kind.  No party, nor any

22  officer, agent, employee, representative or attorney of or for any

23  party has made any statement or representation to any other party

24  regarding any fact relied upon in entering this Stipulation, and no

25  party is relying upon any statement, representation or promise of any

26  other party, nor of any officer, agent, employee, representative or

27  attorney of or for any party, in executing this Stipulation or in

28

{00522240}                                    8

**STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
PROCEEDS; AND ORDER THEREON**

1  making the settlement provided herein, except as expressly stated in

2  this Stipulation. Each party has been represented by counsel and

3  advised regarding the matters set forth herein.

4

5  Dated: August _____, 2018 _____
                             CATHERINE K. MCKENNA, Trustee of the
6                            McKenna Family Trust, and Third Party
                             Claimant
7

8  Dated: August _____, 2018 _____
                             CATHERINE K. MCKENNA, as an individual
9                            as purported Successor-in-Interest to
                             the McKenna Family Trust
10

11 Dated: August _____, 2018 _____
                             TIMOTHY M. MCKENNA, individually and as
12                           Trustee of the McKenna Family Trust
13

14 Dated: August _____, 2018 MCKENNA GENERAL ENGINEERING, INC.

15                           By: _____
                             Name: Timothy M. McKenna
16                           Title: President
17

18 Dated: August _____, 2018 PATTERSON LAW FIRM, Third Party Claimant

19                           By: _____
                             Name: Steve Patterson
20                           Title:
21

22 Dated: August 16, 2018    PACIFIC WESTERN BANK
23                           _____
                             Name: Kim Von Disterlo
24                           Title: SVP
25

26

27

28
   (00522240)                         9
          STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
                       PROCEEDS; AND ORDER THEREON

                                            Exhibit "5"
                                            Page 96

1  making the settlement provided herein, except as expressly stated in

2  this Stipulation. Each party has been represented by counsel and

3  advised regarding the matters set forth herein.

4
5  Dated:  August __16__, 2018    _Catherine K. McKenna_
          CATHERINE K. MCKENNA, Trustee of the
6                                 McKenna Family Trust, and Third Party
                                  Claimant
7
8  Dated:  August __16__, 2018    _Catherine K. McKenna_
          CATHERINE K. MCKENNA, as an individual
9                                 as purported Successor-in-Interest to
                                  the McKenna Family Trust
10
11 Dated:  August ____, 2018
                                  _____
12                                TIMOTHY M. MCKENNA, individually and as
                                  Trustee of the McKenna Family Trust
13
14 Dated:  August ____, 2018      MCKENNA GENERAL ENGINEERING, INC.

15                                By: _____
                                  Name: Timothy M. McKenna
16                                Title: President
17
18 Dated:  August __16__, 2018    PATTERSON LAW FIRM, Third Party Claimant

19                                By: _____
                                  Name: Steve Patterson
20                                Title: _CEO_
21
22 Dated:  August ____, 2018      PACIFIC WESTERN BANK

23                                _____
24                                Name:
                                  Title:
25

26

27

28
   (00522240)                     9
   ─────────────────────────────────────────────────────────
   STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
              PROCEEDS; AND ORDER THEREON

1    APPROVED AS TO FORM AND CONTENT:

2    Dated: August ____, 2018        PATTERSON LAW FIRM, APC

3                                    _____

4                                    By:  Ilian Alchehayed, Esq.
                                     Attorney for Defendant,
5                                    CATHERINE K. MCKENNA as Trustee and as
                                     purported Successor-in-Interest to the
6                                    McKenna Family Trust

7

8    Dated: August 15, 2018          HOFFMAN LEGAL CORPORATION

9                                    _____
                                     By:  Paul Hoffman, Esq.
10                                   Attorney for Defendants,
                                     TIMOTHY M. MCKENNA, individually and as
11                                   Trustee of the McKenna Family Trust,
                                     and MCKENNA GENERAL ENGINEERING, INC.

12

13   Dated: August ____, 2018        MIRMAN, BUBMAN & NAHMIAS, LLP

14                                   _____

15                                   By:  Alan M. Mirman, Esq.
                                     Attorney for Plaintiff,
16                                   PACIFIC WESTERN BANK

17

18

19

20

21

22

23

24

25

26

27

28   {00522240}                      10
     _____
        STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
                      PROCEEDS; AND ORDER THEREON

1    APPROVED AS TO FORM AND CONTENT:

2    Dated:  August  *16*, 2018        PATTERSON LAW FIRM, APC

3

4                                      By:  Ilian Alchehayed, Esq.
                                       Attorney for Defendant,
5                                      CATHERINE K. MCKENNA as Trustee and as
                                       purported Successor-in-Interest to the
6                                      McKenna Family Trust

7

8    Dated:  August ____, 2018         HOFFMAN LEGAL CORPORATION

9                                      By:  Paul Hoffman, Esq.
                                       Attorney for Defendants,
10                                     TIMOTHY M. MCKENNA, individually and as
                                       Trustee of the McKenna Family Trust,
11                                     and MCKENNA GENERAL ENGINEERING, INC.

12

13   Dated:  August  *16*, 2018        MIRMAN, BUBMAN & NAHMIAS, LLP

14                                     By:  Alan M. Mirman, Esq.
15                                     Attorney for Plaintiff,
                                       PACIFIC WESTERN BANK

16

17

18

19

20

21

22

23

24

25

26

27

28
     {00522240}                          10
     STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
                   PROCEEDS; AND ORDER THEREON

1

## ORDER

2 The Court having considered the above Stipulation For Sale of

3 Properties and Allocation of Net Sale Proceeds, and good cause

4 appearing therefor,

5 **IT IS ORDERED** that the terms and conditions of the Stipulation are

6 approved, and the terms of the Stipulation are hereby incorporated

7 by this reference.

8

9 Dated: _8-23-18_

*VIRGINIA KEENY*

10 THE HONORABLE VIRGINIA KEENY
JUDGE OF THE SUPERIOR COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00522240}                          11

**STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE
PROCEEDS; AND ORDER THEREON**

(SPACE BELOW FOR FILING STAMP ONLY)

## PROOF OF SERVICE

LOS ANGELES COUNTY )
                                    ) ss
STATE OF CALIFORNIA )

    I am employed in the County of Los Angeles, State of California, in the office of a member of the bar of this court at whose direction the service was made. I am over the age of 18 and not a party to the within action. My business address is 21860 Burbank Boulevard, Suite 360, Woodland Hills, California 91367.

    On **August 17, 2018**, I served a true and correct copy of the document described as **STIPULATION FOR SALE OF PROPERTIES AND ALLOCATION OF NET SALE PROCEEDS; AND ORDER THEREON** on the interested parties named below, as follows:

### SEE ATTACHED SERVICE LIST

[X]  (BY MAIL) I am familiar with the ordinary business practice of the law firm of MIRMAN, BUBMAN & NAHMIAS, LLP for collection and processing of correspondence for mailing with the United States Postal Service at the aforementioned place of business and that the above-entitled document was placed in a sealed envelope and deposited for collection and mailing on the date stated above, following such ordinary practices, and in such manner as to cause it to be deposited with the United States Postal Service that same day, with postage thereon fully prepaid, in the ordinary course of business, addressed as indicated above.

[ ]  (BY FACSIMILE TRANSMISSION) Based on the agreement of the parties to accept service by facsimile transmission, I faxed the document(s) to the person(s) via facsimile machine number (818) 451-4620 to the person(s) at the fax number(s) listed on the service list on August 17, 2018. No error was reported by the facsimile machine that I used.

[X]  (BY E-MAIL) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission. I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful..

[ ]  (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

[ ]  (BY OVERNIGHT DELIVERY, CCP 1013(c,d) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[X]  (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 17, 2018, at Woodland Hills, California.

ANA I. ACOSTA

{00504873}

PROOF OF SERVICE

**EXHIBIT 18**

Exhibit "5"
Page 101

<u>Service List</u>
*Pacific Western Bank v. McKenna, et al.*

1

2

3  Paul A. Hoffman, Esq.
   Sandra M. Becker, Esq.
4  HOFFMAN LEGAL CORPORATION
   27405 Puerta Real, Suite 250
5  Mission Viejo, CA 92691
   Telephone: (949) 600-8889
6  Facsimile: (949) 297-3767
   Email: pahoffman@hoffmanlegal.net
7  Attorneys for Defendants, McKENNA GENERAL
   ENGINGEERING, INC., a California coporation and
8  TIMOTHY M. McKENNA, individually and as a Trustee of the
9  McKENNA FAMILY TRUST

10 Steven R. Patterson, Esq.
   Ilian Alchehayed, Esq.
11 Patterson Law Firm, APC
   Attorneys at Law
12 1800 E. Imperial Highway, Suite 110
13 Brea, CA 92821
   Email: steven@oclawpro.com
14        Ilian@oclawpro.com
15 Attorneys for Defendant, CATHERINE K. McKENNA, as
   Trustee of the McKENNA FAMILY TRUST

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

{00504873}

- 77 -

**EXHIBIT 18**

Exhibit "5"
Page 102

Exhibit "6"

| OAttorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| A. Kenneth Hennesay, Jr. (SBN 187531)<br>Allen Matkins Leck Gamble Mallory & Natsis LLP<br>1900 Main Street, Fifth Floor<br>Irvine, California 92614-7321<br>Tel: (949) 553-1313 Fax: (949) 553-8354<br>Email: khennesay@allenmatkins.com | **FILED & ENTERED**<br><br>MAY 15 2019<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY nbolte      DEPUTY CLERK |
| ☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA –Santa Ana DIVISION**

</div>

| In re:<br><br>Tim M. McKenna<br><br><br><br><br><br><br><br><div align="right">Debtor(s).</div> | CASE NO.: 8:18-bk-13588-SC<br><br>CHAPTER: 7<br><br><div align="center">**ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (PERSONAL PROPERTY)**</div><br>DATE: May 2, 2019<br>TIME:   10:00 a.m.<br>COURTROOM:  5C<br>PLACE: 411 West Fourth Street, Santa Ana, CA 92701 |
|---|---|
| **Movant:  Pacific Western Bank** | |

1.  The Motion was:          ☐ Opposed    ☒ Unopposed    ☐ Settled by stipulation

2.  The Motion affects the following personal property (Property):

    ☐ Vehicle (*year, manufacturer, type and model*):

        *Vehicle identification number*:
        *Location of vehicle (if known)*:

    ☐ Equipment (*manufacturer, type, and characteristics*):

        *Serial number(s)*:
        *Location (if known)*:

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 1                          **F 4001-1.RFS.PP.ORDER**

Exhibit "6"
Page 103

☒ Other personal property (*type, identifying information, and location*):
Bank account deposits with Movant in account number XXXXXXX7998.

☐ See Exhibit _____ attached to the Motion.

3. The Motion is granted under:

   a. ☒ 11 U.S.C. § 362 (d)(1)

   b. ☐ 11 U.S.C. § 362 (d)(2)

4. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b. ☐ Modified or conditioned as set for the in Exhibit _____ to this order.

   c. ☐ Annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ Movant may enforce its remedies to repossess or otherwise obtain possession and dispose of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not repossess the Property before (*date*) _____.

7. ☐ The stay remains in effect subject to the terms and conditions set forth in the Adequate Protection Agreement to this order.

8. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order.  The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency.  Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated or modified as to the co-debtor, as to the same terms and conditions.

10. ☐ The 14-day stay provided by FRBP 4001(a)(3) is waived.

11. ☐ This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. ☐ This order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

13. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

14. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 2                          **F 4001-1.RFS.PP.ORDER**

Exhibit "6"
Page 104

15. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

a. ☐ without further notice.

b. ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

16. ☐ Other (*specify*):

### 

Date: May 15, 2019

Scott C. Clarkson
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                                Page 3                                        **F 4001-1.RFS.PP.ORDER**

Exhibit "6"
Page 105

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **MOTION TO APPROVE AGREEMENT REGARDING COLLECTION OF RECEIVABLES AND PARTIAL SUBORDINATION OF LIEN WITH PACIFIC WESTERN BANK; DECLARATION OF ROBERT S. WHITMORE IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 23, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **October 23, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 23, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> **VIA PERSONAL DELIVERY**
> **PRESIDING JUDGE'S COPY**
> Bankruptcy Judge Honorable Scott H. Yun
> U. S. Bankruptcy Court – Central District
> 3420 Twelfth Street, Suite 345 / Courtroom 302
> Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 23, 2019 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

4825-8362-5898, v. 1

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: continued:

- **CREDITOR SANTA MARGARITA WATER DISTRICT:** Caroline Djang caroline.djang@bbklaw.com, julie.urquhart@bbklaw.com; sansanee.wells@bbklaw.com; paul.nordlund@bbklaw.com
- **INTERESTED PARTY COURTESY NEF:** Jeremy Faith Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com; David@MarguliesFaithLaw.com; Victoria@MarguliesFaithlaw.com
- **INTERESTED PARTY MARC C FORSYTHE:** Marc C Forsythe kmurphy@goeforlaw.com, mforsythe@goeforlaw.com; goeforecf@gmail.com
- **ATTORNEY FOR TRUSTEE ROBERT WHITMORE (TR):** D Edward Hays ehays@marshackhays.com, 8649808420@filings.docketbird.com
- **CREDITOR PACIFIC WESTERN BANK:** Kenneth Hennesay    khennesay@allenmatkins.com, ncampos@allenmatkins.com
- **CREDITOR DEVELOPERS SURETY AND INDEMNITY COMPANY, AN AMTRUST GROUP INSURANCE COMPANY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **INTERESTED PARTY COURTESY NEF:** Michael Y Jung on behalf of Interested Party Courtesy NEF jung@luch.com, kbrown@luch.com, kimberley@luch.com
- **INTERESTED PARTY COURTESY NEF:** Leslie K Kaufman on behalf of Interested Party Courtesy NEF kaufman_kaufman.bankruptcy@yahoo.com
- **INTERESTED PARTY COURTESY NEF:** Noreen A Madoyan on behalf of Interested Party Courtesy NEF Noreen@MarguliesFaithLaw.com, Helen@MarguliesFaithlaw.com; Victoria@MarguliesFaithlaw.com; David@MarguliesFaithLaw.com
- **ATTORNEY FOR TRUSTEE ROBERT WHITMORE (TR):** Tinho Mang tmang@marshackhays.com
- **CREDITOR LAW OFFICES OF MICHELLE J. SUKHOV, INC.:** Michelle J Nelson mjslaw@hotmail.com
- **CREDITOR PACIFIC WESTERN BANK:** Scott H Noskin snoskin@mbnlawyers.com, aacosta@mbnlawyers.com
- **CREDITOR PACCAR FINANCIAL CORP.:** Raymond A Policar policarlaw@att.net
- **CREDITOR WELLS FARGO EQUIPMENT FINANCE, INC.:** Richard A Solomon richard@sgswlaw.com
- **DEBTOR MCKENNA GENERAL ENGINEERING, INC.:** Michael G Spector mgspector@aol.com, mgslawoffice@aol.com
- **INTERESTED PARTY COURTESY NEF:** Meghann A Triplett on behalf of Interested Party Courtesy NEF Meghann@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com; Victoria@MarguliesFaithlaw.com; David@MarguliesFaithLaw.com
- **UNITED STATES TRUSTEE (RS):** United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov
- **TRUSTEE FOR BANKRUPTCY ESTATE OF MCKENNA GENERAL ENGINEERING, INC.**: Robert Whitmore (TR) rswtrustee@yahoo.com, rwhitmore@ecf.epiqsystems.com

**2. SERVED BY UNITED STATES MAIL**: continued:

| DEBTOR | SECURED CREDITOR / POC ADDRESS | SECURED CREDITOR |
|---|---|---|
| MCKENNA GENERAL ENGINEERING, INC. 20330 TEMESCAL CANYON RD CORONA, CA 92881-4944 | PACIFIC WESTERN BANK 50 W. HILLCREST DRIVE THOUSAND OAKS, CA 91360-4204 | PACIFIC WESTERN BANK 5900 LA PLACE COURT, STE. 200 CARLSBAD, CA 92008-8832 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4825-8362-5898, v. 1